# EXHIBIT B

| | Chicago Police Department | **Special Order  S04-13-09** |
|---|---|---|
| | **INVESTIGATORY STOP SYSTEM** | |

| **ISSUE DATE:** | 10 July 2017 | **EFFECTIVE DATE:** | 10 July 2017 |
|---|---|---|---|
| **RESCINDS:** | 10 June 2016 Version | | |
| **INDEX CATEGORY:** | 04 - Preliminary Investigations | | |
| **CALEA:** | | | |

I. **PURPOSE**

This directive:

A. *continues* the Investigatory Stop System.

B. *continues to ensure* compliance with the rights guaranteed to the public under the United States Constitution, the State of Illinois Constitution, and the law.

C. *continues to delineate* the authority and circumstances necessary for conducting an Investigatory Stop.

D. *revises* the use of the Investigatory Stop System for the documentation of Investigatory Stops, Protective Pat Downs or other searches resulting from stops, *for documenting probable cause stops when no other document captures the reason for the detention*, and the enforcement of the Gang and Narcotics-Related Loitering Ordinances.

E. *discontinues the use of the Investigatory Stop Pocket Guide (CPD-11.913)*.

F. *discontinues the use of the hard copy Investigatory Stop Report (CPD-11.910 Rev. 4/16) and introduces the use of the hard copy Investigatory Stop Report (*CPD-11.910 *Rev.7/17)*

G. *continues* the use of:

   1. Investigatory Stop Database;

   2. Investigatory Stop Receipt (CPD-11.912); and

   3. Investigatory Stop Report Deficiency Notification (CPD-11.914).

H. delineates responsibilities and procedures for:

   1. entering and maintaining Investigatory Stop Reports into the Investigatory Stop Database.

   2. completing hard copy Investigatory Stop Reports.

   3. accessing information from the Investigatory Stop Database.

I. maintains the requirement for sworn members who complete the hard copy version of the Investigatory Stop Report to enter the data documented on the hard copy into the Investigatory Stop Database.

J. continues the requirement for sworn members to document, in the appropriate field, location of occurrence by using the appropriate Incident Reporting Guide (CPD-63.451) location codes.

K. *continues* management responsibility for field supervisors approving Investigatory Stop Reports including review, training, and accountability for proper use and entry of Investigatory Stop Reports by their subordinates.

L. *revises executive officer responsibilities concerning monthly internal audits.*

M. satisfies CALEA Law Enforcement Standard Chapter 1.

## II. DEFINITIONS

For the purposes of this directive, the following definitions apply:

A. Investigatory Stop -The temporary detention and questioning of a person in the vicinity where the person was stopped based on Reasonable Articulable Suspicion that the person is committing, is about to commit, or has committed a criminal offense. The suspect may be detained only for the length of time necessary to confirm or dispel the suspicion of criminal activity. The temporary detention and questioning of a person for the purpose of enforcement of the Gang and Narcotics-Related Loitering Ordinances is an Investigatory Stop.

An Investigatory Stop is not a voluntary contact. A voluntary contact is a consensual encounter between an officer and a person during which the person must feel free to leave the officer's presence. An officer may approach any person at any time for any reason on any basis. However, absent reasonable suspicion or probable cause, that person must be free to walk away at any time. An officer's ability to articulate that no factors existed that would make a reasonable person perceive they were not free to leave is important. The following are some factors the court may consider to determine whether or not a consensual encounter has elevated to an Investigatory Stop or an arrest:

1. Threatening presence of several officers;
2. Display of a weapon by an officer;
3. Use of language or tone of voice indicating that compliance with the officer's request might be compelled;
4. Officer blocks a person's path; or
5. Choice to end the encounter is not available to the person.

B. Protective Pat Down -A limited search during an Investigatory Stop in which the sworn member conducts a pat down of the outer clothing of a person for weapons for the protection of the sworn member or others in the area. If, during a Protective Pat Down of the outer clothing, the sworn member touches an object which the sworn member reasonably believes is a weapon, the sworn member may reach into that area of the clothing and retrieve the object. A Protective Pat Down is not a general exploratory search for evidence of criminal activity.

C. Reasonable Articulable Suspicion -Reasonable Articulable Suspicion is an objective legal standard that is less than probable cause but more substantial than a hunch or general suspicion. Reasonable Articulable Suspicion depends on the totality of the circumstances which the sworn member observes and the reasonable inferences that are drawn based on the sworn member's training and experience. Reasonable Articulable Suspicion can result from a combination of particular facts, which may appear innocuous in and of themselves, but taken together amount to reasonable suspicion.

Reasonable Articulable Suspicion should be founded on specific and objective facts or observations about how a suspect behaves, what the subject is seen or heard doing, and the circumstances or situation in regard to the suspect that is either witnessed or known by the officer. Accordingly, Reasonable Articulable Suspicion must be described with reference to facts or observations about a particular suspect's actions or the particular circumstances that an officer encounters. The physical characteristics of a suspect are never, by themselves, sufficient. Instead, those characteristics must be combined with other factors, including a specific, non-general description matching the suspect or the observed behaviors of the suspect.

1. For Investigatory Stops, a sworn member must possess specific and articulable facts which, combined with rational inferences from these facts, reasonably warrant a belief that the suspect is committing, is about to commit, or has committed a criminal offense.

2. For a Protective Pat Down, a sworn member must possess specific and articulable facts, combined with rational inferences from these facts, that the suspect is armed and dangerous or reasonably suspects that the person presents a danger of attack to the sworn member or others in the area.

NOTE: An Investigatory Stop and a Protective Pat Down are two distinct actions-both require independent, Reasonable Articulable Suspicion (i.e., to stop a person there must be reasonable suspicion of criminal activity, and to stop a person and perform a Protective Pat Down of the person, there must be reasonable suspicion of criminal activity and reasonable suspicion that the person is armed and dangerous or presents a danger of attack).

D. Probable Cause -*Probable cause exists where the police have knowledge of facts that would lead a reasonable person to believe that a crime has occurred and that the subject has committed it. This differs from Reasonable Articulable Suspicion in that the facts supporting RAS do not need to meet probable cause requirements, but they must justify more than a mere hunch. The facts should not be viewed with analytical hindsight but instead should be considered from the perspective of a reasonable officer at the time that situation confronted him or her.*

E. Plain Touch Doctrine -When a sworn member is conducting a lawful Protective Pat Down of a suspect's outer clothing for weapons and encounters an object that, based upon their training and experience, the sworn member believes that the object is contraband, the sworn member may seize the item without a warrant. The object may not be manipulated in order to determine the identity of the object.

### III. POLICY

A. The Investigatory Stop System is one of the ways the Chicago Police Department, as part of and empowered by the community, ensures that we protect the public, preserve the rights of all members of the community, and enforce the law impartially. Adherence to this policy allows the Department to serve all citizens equally with fairness, dignity, and respect, and to uphold our pledge to not use racial profiling and other bias-based policing.

B. Department members are responsible for ensuring public safety by deterring and responding to crime. They are also responsible for upholding the rights guaranteed to the public under the United States Constitution, the State of Illinois Constitution, and the law. Safeguarding the liberties of the public and preventing crime are not mutually exclusive; each can be achieved by fostering trust and confidence between Department members and the public. Members will comport with the policy and procedures of this order to ensure appropriate conduct when interacting with members of the public.

C. Sworn members who conduct an Investigatory Stop are required to complete an Investigatory Stop Report.

D. The reasons for completing the Investigatory Stop Report is to ensure:

1. sworn members document the facts and circumstances of:

    a. an Investigatory Stop, including a statement of the facts establishing Reasonable Articulable Suspicion to stop an individual;

    b. *a Probable Cause stop when no other document captures the reason for the detention;*

    c. a Protective Pat Down or other search, including a statement of the facts establishing Reasonable Articulable Suspicion to pat down an individual for potential weapons;

2. appropriate Investigatory Stop, *Probable Cause to stop when no other document captures the reason for detention*, Protective Pat Down, or other search information is entered and retained within the Investigatory Stop Database; and

3. supervisors review the facts and circumstances of Investigatory Stops, *Probable Cause stops*, Protective Pat Downs, or other searches.

E. Department members will not engage in racial profiling or other bias-based policing when conducting Investigatory Stops as delineated in the Department directive entitled "Prohibition Regarding Racial Profiling and Other Bias-Based Policing."

F.  Department members interacting with the public will use Legitimacy and Procedural Justice principles. The goal is to strengthen the police-community relationship through contact, which ultimately improves officer safety while reducing crime and disorder.

## IV. ILLINOIS STATE LAW

A.  725 ILCS 5/107-14 delineates the authority for conducting an Investigatory Stop. The statute reads as follows:

"Temporary questioning without arrest. A peace officer, after having identified himself as a peace officer, may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense as defined in Section 102-15 of this Code, and may demand the name and address of the person and an explanation of their actions. Such detention and temporary questioning will be conducted in the vicinity of where the person was stopped."

B.  725 ILCS 5/108-1.01 delineates the authority for conducting a Protective Pat Down during an Investigatory Stop. The statute reads as follows:

"Search during temporary questioning. When a peace officer has stopped a person for temporary questioning pursuant to Section 107-14 of this Code and reasonably suspects that he or another is in danger of attack, he may search the person for weapons. If the officer discovers a weapon, he may take it until the completion of the questioning, at which time he shall either return the weapon, if lawfully possessed, or arrest the person so questioned."

**NOTE:** In this context the word "search" refers to a Protective Pat Down.

## V. GUIDELINES FOR INVESTIGATORY STOPS

Pursuant to Illinois statutory law and U.S. Supreme Court rulings:

A.  An officer may conduct an Investigatory Stop if it is based on specific and articulable facts which, combined with rational inferences from these facts, give rise to Reasonable Articulable Suspicion that criminal activity is afoot. The sole purpose of the temporary detention is to prove or disprove those suspicions.

B.  During an Investigatory Stop, subjects may be asked to identify themselves and to provide an explanation for their actions; however, a failure to do so is not, in and of itself, an arrestable offense or grounds for further detention, and a subject may choose not to answer any of the officer's questions.

C.  Police are not required to give Miranda warnings when conducting on-the-scene questioning during the fact-gathering process.

## VI. AUTHORITY TO PERFORM A PROTECTIVE PAT DOWN DURING AN INVESTIGATORY STOP

A.  Pursuant to Terry v. Ohio and People v. Galvin, authority to perform a Protective Pat Down is limited to the following:

1.  When an officer has detained a subject based upon Reasonable Articulable Suspicion that criminal activity is afoot and, during that detention, develops additional Reasonable Articulable Suspicion that the subject is armed and dangerous or reasonably suspects that the person presents a danger of attack to the officer or another, the officer may conduct a Protective Pat Down of the outer clothing of the subject for hard objects that could be used as weapons. The Protective Pat Down is only for the purpose of officer and citizen safety; it is not to search for evidence.

2.  During a Protective Pat Down of the outer clothing of the subject, the officer may not go into the pockets of the subject or reach underneath the outer surface of the garments. If during the Protective Pat Down of the outer clothing, the officer touches an object which the officer believes is a weapon, the officer may reach into that area of the clothing and retrieve the object.

> **NOTE:** Protective Pat Downs will be conducted by a member who is the same gender as the person that is the subject of the Investigatory Stop. If a member of the same gender is not immediately available, officer and public safety is compromised, and it is imperative that an immediate search be conducted, members will not endanger themselves or the public to comply with this requirement. Members will exercise caution when patting down outer garments of persons of the opposite sex.

B. Pursuant to Minnesota v. Dickerson and People v. Mitchell, the Plain Touch Doctrine allows officers to seize contraband during a Protective Pat Down after satisfying the following requirements:

1. When conducting a lawful Investigatory Stop and the officer is performing a Protective Pat Down, if the officer plainly feels an item that, based upon that officer's training and experience, the officer believes to be contraband, the officer may seize that item and lawfully charge the person with it.

2. The Plain Touch Doctrine requires officers to satisfy the following three-part test:

   a. a lawful Investigatory Stop,

   b. a lawful Protective Pat Down, and

   c. the officer by touch must be able to immediately recognize the item to be contraband without any manipulation of the item.

## VII. GENERAL INFORMATION

A. The Investigatory Stop System is an investigative tool consisting of information obtained in the field and entered into the Investigatory Stop Database.

B. The Investigatory Stop Database

   1. The Investigatory Stop Database will only be used to document:

      a. Investigatory Stops, *Probable Cause stops when no other document captures the reason for the detention*, Protective Pat Downs or other searches; and

      b. enforcement of the Gang and Narcotics-Related Loitering Ordinances consistent with the Department directive entitled "Gang and Narcotics-Related Enforcement."

   2. The Investigatory Stop Database contains:

      a. information concerning the individual temporarily detained for the Investigatory Stop.

      b. narrative sections that include a statement of facts to establish Reasonable Articulable Suspicion in order to justify an Investigatory Stop of an individual and, if applicable, to justify a Protective Pat Down.

      > **NOTE:** Sworn members are required to complete the narrative field in the Investigatory Stop Database.

   3. Sworn members will complete hard copy Investigatory Stop Reports only when the electronic Investigatory Stop Database is unavailable and after approval is obtained by their immediate supervisor.

   4. Sworn members are responsible for entering all Investigatory Stop Reports created during their tours of duty into the electronic system as soon as possible but no later than the end of their tours of duty consistent with Item VIII-B.

   5. Supervisors will review all Investigatory Stop Reports, electronic and hard copy, created by subordinates and either approve or return it for correction or other action before the end of their tours of duty consistent with Item VIII-C-1 of this directive.

   6. Procedures for units that routinely do not have access to the Investigatory Stop Database

a. Sworn members will complete and submit hard copies of the appropriate Investigatory Stop Report for approval as soon as possible but no later than the end of their tours of duty;

b. Supervisors will review all hard copy Investigatory Stop Reports created by subordinates and either approve or return it for correction or other action before the end of their tours of duty consistent with Item VIII-C-1 of this directive; and

c. Commanding officers of these units will determine the method of data entry and ensure the information is entered into the Investigatory Stop Database consistent with Item VIII-B-2 of this directive within a reasonable period of time.

C. Access

1. All Investigatory Stop Database information will be accessible to any sworn Department member and select civilian members, e.g., Department statistician, for one year after the initial Investigatory Stop Report was generated.

2. Pursuant to supervisory approval, personnel assigned to the following bureaus will be allowed access to Investigatory Stop information for three years based upon reasonable, articulated investigative need:

    a. Bureau of Detectives;

    b. Bureau of Organized Crime;

    c. Bureau of Internal Affairs.

    **NOTE:** The bureau chiefs will establish appropriate record keeping relevant to access and approval.

3. Other Department members who require access beyond this policy will submit a To-From-Subject Report through the chain of command to the Director, Information Services Division, articulating the investigative need for access. If necessary, the Director, Information Services Division, will consult with the Office of Legal Affairs regarding the requested access.

4. After three years, personal identification data contained within the Investigatory Stop Database will be deleted pursuant to Information Services Division practice and record-retention requirements, statutory or judicial. Therefore, no member will have access to personally identifying data from those Investigatory Stop Reports.

    **NOTE:** The aggregate data from an Investigatory Stop event, such as the date, time, and address of occurrence, in addition to the descriptive racial and demographic data, will be retained by Information Services Division.

**VIII. PROCEDURES**

A. *Investigatory Stop/Probable Cause Stop When No Other Document Captures the Reason for the Detention*

1. Sworn members who conduct an Investigatory Stop, *Probable Cause stop when no other document captures the reason for the detention*, and, if applicable, a Protective Pat Down or other search in a public place, are required to submit an Investigatory Stop Report into the Investigatory Stop Database. All of the factors that support Reasonable Articulable Suspicion in order to temporarily detain an individual for investigation, *Probable Cause when a stop is made and no other document captures the reason for detention*, and, if applicable, all of the factors that support Reasonable Articulable Suspicion in order to perform a Protective Pat Down will be documented in the narrative portions of the database.

> **NOTE:** For purposes of this directive, "public place" means any place to which the public or a substantial group of the public has access and includes, but is not limited to, streets, highways, parks, and the common areas of schools, hospitals, apartment buildings, office buildings, transport facilities, and stores.

2. In addition, Investigatory Stop Reports will be submitted for all Investigatory Stops and Protective Pat Downs **that lead to** an arrest, Personal Service Citation, Administrative Notice of Violation (ANOV), Curfew Violation Report, School Absentee Report, or other enforcement action.

3. Upon the completion of an Investigatory Stop that involves a Protective Pat Down or any other search, sworn members are required to provide the subject of the stop a completed Investigatory Stop Receipt. The Investigatory Stop Receipt will include the event number, the reason for the stop, and the sworn member's name and star number.

    > **EXCEPTION:** An Investigatory Stop Receipt will not be provided if the subject of the stop is arrested.

4. The following examples illustrate instances when Investigatory Stop Reports, Investigatory Stop Receipts, and other Department reports are required, and are intended to serve as guidelines that can be applied in various circumstances.

    a. An officer performs a traffic stop on a vehicle after observing the vehicle run a stop sign. The officer issues the driver a Personal Service Citation for failure to stop at a stop sign, and completes and affixes a Traffic Stop Statistical Study sticker to the appropriate copy of the Personal Service Citation consistent with the Department directive "Illinois Traffic and Pedestrian Stop Statistical Study." An Investigatory Stop Report will not be completed.

    b. An officer performs a traffic stop on a vehicle after observing the vehicle run a stop sign. During the traffic stop, the officer observes various factors that develop Reasonable Articulable Suspicion that the driver may be "armed and dangerous" or "presents a danger of attack." The officer conducts a Protective Pat Down on the driver and the vehicle for weapons. No weapons are discovered. The officer issues the driver a Personal Service Citation for failure to stop at a stop sign. Due to the performance of a Protective Pat Down, the officer completes an Investigatory Stop Report and provides a completed Investigatory Stop Receipt to the driver. The officer documents on the Investigatory Stop Report the reason for the stop was a traffic violation, failure to stop at stop sign, and the Reasonable Articulable Suspicion to justify the Protective Pat Down of the driver and the vehicle. When completing the Investigatory Stop Receipt, the officer writes "failure to stop at a stop sign" as the reason for the stop. Additionally, the officer completes and affixes a Traffic Stop Statistical Study sticker to the appropriate copy of the Personal Service Citation consistent with the Department directive "Illinois Traffic and Pedestrian Stop Statistical Study."

c. An officer performs a traffic stop on a vehicle after observing the vehicle run a stop sign. During the stop, the officer receives a flash message that provides a description of a wanted offender and vehicle for a theft that just occurred in the area of the traffic stop. The driver and the vehicle match the description. The officer conducts an investigation for the theft by questioning the driver regarding his whereabouts at the time of the theft. The officer determines that he does not have probable cause to arrest. The officer issues the driver a Personal Service Citation for failure to stop at a stop sign and completes an Investigatory Stop Report. The officer documents on the Investigatory Stop Report the initial reason for the stop was a traffic violation, failure to stop at a stop sign, and the officer's Reasonable Articulable Suspicion that the driver committed a theft. Additionally, the officer completes and affixes a Traffic Stop Statistical Study sticker to the appropriate copy of the Personal Service Citation consistent with the Department directive "[Illinois Traffic and Pedestrian Stop Statistical Study](#)."

d. An officer performs a traffic stop on a vehicle after observing the vehicle run a stop sign. The officer issues a verbal warning to the driver for failure to stop at a stop sign, and completes an Illinois Traffic Stop Statistical Study - Driver Information Card consistent with the Department directive entitled "[Illinois Traffic and Pedestrian Stop Statistical Study](#)." An Investigatory Stop Report will not be completed.

e. An officer responds to a call of shots fired. Upon the officer's arrival on the scene, the officer observes several people in the area. The officer approaches and questions people in the area as to whether or not they heard or saw anything pertaining to the shots fired call. After further investigation by the officer, the officer determines the incident is not bona fide. An Investigatory Stop Report will not be completed.

f. *<u>An officer observes a man smoking a cigarette on a Chicago Transit Authority platform. The officer detains the individual to ascertain if the man fits the parameters of issuing an Administrative Notice of Violation (ANOV). During the detention and interview, it is learned that the man just lost a family member. The officer decides not to issue an ANOV or arrest the individual. Since there is no other form to document the detention, the officer will document the detention on an Investigatory Stop Report.</u>*

5. If an arrest is made based on an Investigatory Stop, an Investigatory Stop Report will be completed in addition to the Arrest Report. Members will indicate in the Investigatory Stop Report that an arrest is related to the Investigatory Stop by checking the appropriate box.

6. During an Investigatory Stop, the sworn member may only temporarily restrict a person's freedom of movement as long as reasonably necessary to dispel or confirm the member's Reasonable Articulable Suspicion of criminal activity. The subject cannot continue to be detained solely for the purpose of obtaining the results of a name check of the subject or for the completion of required documentation when Reasonable Articulable Suspicion no longer exists.

7. **Failure to provide identification during an Investigatory Stop, in and of itself, is not grounds for arrest or further detention.** If, at the conclusion of an Investigatory Stop, the individual is unable or refuses to provide identification and there is no probable cause to arrest, the sworn member will:

    a. enter "John Doe" or "Jane Doe," as appropriate, in the name field;

    b. provide as much of the stop information as possible;

    c. indicate the refusal in the narrative field; and

    d. describe the reason for the stop and/or the circumstances of the stop in as much detail as possible, including a description of any unusual clothing, manner, or behavior.

8. When Investigatory Stop Reports are submitted for more than one person in a group, members will cross-reference the report numbers in the appropriate fields of the database.

B. Data Entry

1. Sworn members will submit an electronic Investigatory Stop Report as soon as possible but no later than the end of their tours of duty by selecting "Automated Investigatory Reports" from the CLEAR menu.

2. If electronic access to the CLEAR application is not available, after receiving approval from a supervisor, sworn members will:

   a. complete the hard copy Investigatory Stop Report;

   b. accurately enter the Investigatory Stop Report into the Investigatory Stop Database by selecting "Automated Investigatory Reports" from the CLEAR menu if electronic access to the CLEAR application becomes available before the end of their tours of duty.

   **NOTE:** **The information entered into the Investigatory Stop Database must directly correspond with the information initially documented on the hard copy.**

   c. select "yes" in the Investigatory Stop Database that a hard copy Investigatory Stop Report was completed.

   d. record the ISR number generated by the Investigatory Stop Database onto the hard copy Investigatory Stop Report.

   e. **forward the completed, hard copy Investigatory Stop Report to their supervisor for approval.**

3. If electronic access to the CLEAR application continues to be unavailable and is restored after the sworn member's tour of duty has ended, unit executive officers will determine the method of data entry and ensure that the Investigatory Stop Report is entered into the Investigatory Stop Database consistent with Item VIII-B-2 of this directive within a reasonable period of time.

   **NOTE:** For units without executive officers, the unit commanding officer will designate a supervisor to perform these duties.

C. Supervisory Responsibilities

1. Reviewing supervisors will:

   a. approve or reject all submitted Investigatory Stop Reports by the end of their tours of duty.

   b. review and ensure Investigatory Stop Reports are properly completed and conform to Department policy.

      (1) Supervisors are responsible for ensuring that members properly document in the narrative sections of all (electronic and hard copy) Investigatory Stop Reports:

         (a) the Reasonable Articulable Suspicion that justifies the Investigatory Stop and, if performed, Protective Pat Down; or

         (b) *the Probable Cause that led to the stop if no other document captures the reason for the detention and, if performed, Protective Pat Down; and*

(c) if applicable, the basis and reasons that led to any search of a person or his/her effects that was beyond a Protective Pat Down.

(2) When both a hard copy and an electronic Investigatory Stop Report are created, supervisors will confirm the hard copy matches the electronic entry.

c. for properly prepared Investigatory Stop Reports, indicate approval in the automated system or by signing the Investigatory Stop Report in the appropriate field.

d. for rejected Investigatory Stop Reports:

(1) personally inform the preparing sworn member of the reason for the disapproval or rejection;

(2) complete an Investigatory Stop Report Deficiency Notification for rejections based on the following:

(a) Failure to document justification for an Investigatory Stop, Protective Pat Down, or other search;

(b) Improper justification for an Investigatory Stop, Protective Pat Down, or other search;

(c) Submitted hard copy of the Investigatory Stop Report does not match the electronic version submitted in the Investigatory Stop Database; and

(d) Investigatory Stop Report submitted in error. Officer's actions did not require the submission of an Investigatory Stop Report.

**NOTE:** When completing the Investigatory Stop Report Deficiency Notification, supervisors will include the action that was taken to address the deficiency, such as reviewing the policy with the member, recommending training, initiating progressive discipline where warranted, etc. Forward the completed Investigatory Stop Report Deficiency Notification to the Commanding Officer of the Integrity Section, Crime Control Strategies.

(3) document rejections based on deficiencies, such as typographic errors, incomplete fields, etc., and the corrective action taken in the comments section within the Investigatory Stop Database. Instruct the preparing sworn member to address the error and resubmit the Investigatory Stop Report by the conclusion of the sworn member's tour of duty.

**NOTE:** If an Investigatory Stop Report Deficiency Notification is required, state in the comments section that an Investigatory Stop Report Deficiency Notification will be submitted.

(4) instruct the preparing sworn member to address the error and resubmit the Investigatory Stop Report by the conclusion of the member's tour of duty.

**EXCEPTION:** Instruct the member not to resubmit the Investigatory Stop Report if an interview with the member reveals that the Investigatory Stop, Protective Pat Down, or other search was not justified or that the Investigatory Stop Report should not have been completed. The Investigatory Stop Report will remain in rejected status for clearance by the Integrity Section of Crime Control Strategies.

(5)     verify submission of the corrected Investigatory Stop Report and approve as appropriate.

        e.      forward all hard copy Investigatory Stop Reports to the district review officer or member designated by the unit commanding officer for records retention.

    2.  District review officers or members designated by unit commanding officers will, on a daily basis, forward all hard copy Investigatory Stop Reports, via the Police Documents Section, to the Records Inquiry Section (Unit 163), Records Division, for records retention.

    3.  Executive officers will:

        a.      ensure supervisors are properly reviewing and approving all submitted Investigatory Stop Reports.

        b.      ensure the submission of Investigatory Stop Reports into the CLEAR system is monitored in order to ensure that the review and approval process is timely.

        c.      ensure all approved hard copy Investigatory Stop Reports are forwarded, via the Police Documents Section, to the Records Inquiry Section (Unit 163), Records Division, for records retention.

        d.      conduct monthly internal audits of Investigatory Stop Reports to ensure compliance with this directive and submit a report of their findings to the commanding officer. *If ten or less Investigatory Stop Reports are completed during the audit period, the executive officer will submit a negative report.*

        e.      take appropriate action if any deficiencies are noted. If supervisory approvals do not conform to Department policy, the executive officer will take appropriate action (reviewing the policy with the member, recommending training, initiating progressive discipline where warranted, etc.). Additionally, the executive officer will forward and document the action taken in a To-From Subject Report to the Commanding Officer, Integrity Section, *Inspections Division*.

        **NOTE:**       In units without executive officers, the unit's exempt commanding officer will designate a supervisor to perform these duties. *These duties do not apply to administrative units.*

    4.  On a daily basis, commanding officers and executive officers will be accountable for the proper implementation of this directive.

## IX.   OTHER RESPONSIBILITIES

A.  The Information Services Division is responsible for the maintenance and integrity of the Investigatory Stop Database.

B.  Consistent with Local Records Commission requirements, the Director, Records Division, will ensure that hard copy Investigatory Stop Reports are destroyed and that information in the Investigatory Stop Database is purged consistent with this directive.

C.  The Commander, Inspections Division, will ensure audits of the Investigatory Stop System will be conducted.

D.  Bureau chiefs that have members who have access to the Investigatory Stop System beyond one year will ensure access is consistent with articulated investigative need and that supervisory authorization for access is maintained within unit files.

E.  The Integrity Section, *Inspections Division*, will conduct random audits of the Investigatory Stop System on a continual basis.

## X.    RETENTION

A. Pursuant to 705 ILCS 405/1-7, entitled "Confidentiality of Law Enforcement Records," juvenile Investigatory Stop Reports will be filed and retained separately from adult Investigatory Stop Reports.

B. The Director, Records Division, will dispose of both electronic and hard copy Investigatory Stop Reports consistent with this and other applicable Department directives, applicable court orders, and the law.

C. All Investigatory Stop Reports, electronic and hard copy, will be retained for a period of six months after the completion of the Illinois Traffic Stop Statistical Study (TSSS).

D. Six months after the completion of the TSSS:

 1. all hard copy Investigatory Stop Reports three years and older will be purged.

 2. all personal identifying information entered into the electronic database three years and older will be purged.

E. All hard copy Investigatory Stop Reports and personal identifying information contained within the database generated after the TSSS retention period and beyond will be retained for a period of three years from the date the Investigatory Stop Report was generated.

**NOTE:** Pursuant to a court order entered in Hall, et al. v. City of Chicago, et al., 12 C 6834, the Chicago Police Department and its members are ordered to preserve all data in the Investigatory Stop System and to preserve ALL hard copies of Investigatory Stop Reports until further notice.

(Items indicated by *italics/double underline* were added or revised.)

Eddie T. Johnson
Superintendent of Police

17-067 DK