**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MICHAEL WILLIAMS, *et al.*, | Case No. 22-cv-3773 |
| Plaintiffs, | |
| v. | Judge Ronald A. Guzman |
| CITY OF CHICAGO, *et al.*, | Magistrate Judge Young B. Kim |
| Defendants. | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO THE**
**<u>INDIVIDUAL OFFICER DEFENDANTS' MOTION TO DISMISS</u>**

Elizabeth Mazur
Hughes Socol Piers Resnick & Dym
70 W. Madison Street, Suite 4000
Chicago, IL 60602
(312) 580-0100
emazur@hsplegal.com

Daniel Massoglia
First Defense Legal Aid
601 S. California Avenue
Chicago, Illinois 60612
(708) 797-3066
daniel@first-defense.org

Jonathan Manes
Alexa Van Brunt
MacArthur Justice Center
160 E. Grand Avenue, 6th Floor
Chicago, Illinois 60615
(312) 503-0012
jonathan.manes@macarthurjustice.org

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ......................................................................................... 1

SUMMARY OF FACTUAL ALLEGATIONS ................................................................ 1

    A. Michael Williams ........................................................................................................ 1

    B. Danny Ortiz .................................................................................................................. 3

    C. Derick Scruggs ............................................................................................................ 4

    D. ShotSpotter Alerts are Untested, Frequently Inaccurate, and Do Not Provide Reliable Evidence ........................................................................................................................ 5

LEGAL STANDARD .......................................................................................................... 6

ARGUMENT ......................................................................................................................... 7

I.  PLAINTIFF WILLIAMS AMPLY PLEADS HIS CLAIMS AGAINST THE DEFENDANT OFFICERS ...................................................................................................................... 7

    A. Mr. Williams Was Seized in Violation of the Fourth Amendment Because Defendant Officers Lacked Probable Cause ........................................................................ 7

        1. Defendants Overlook Plaintiffs Factual Allegations. ............................................. 7

        2. Mr. Williams's Fourth Amendment Claims Are Not Duplicative ......................... 9

        3. Defendants Are Responsible For Mr. Williams's Unconstitutional Seizure. ....... 11

    B. Mr. Williams Adequately Pleads Malicious Prosecution Claims. ................................... 12

        1. Commencement of Criminal Charges .................................................................... 12

        2. Malice. .................................................................................................................... 14

        3. Lack of Probable Cause. ......................................................................................... 15

        4. Dismissal in a Manner Indicative of Innocence ..................................................... 16

        5. Plaintiff Williams Fourth Amendment § 1983 Malicious Prosecution Claim Survives Too. .......................................................................................................... 18

    C. Mr. Williams Adequately Pleads Supervisory Liability, Failure to Intervene, and Conspiracy Claims. ............................................................................................................. 19

        1. Mr. Williams Adequately Pleads Personal Involvement By Supervisory Defendants Costello and Dougherty. ...................................................................... 19

        2. Mr. Williams Adequately Pleads Failure to Intervene ........................................... 20

        3. Mr. Williams Adequately Pleads Conspiracy Claims ............................................ 21

    D. Mr. Williams Has Properly Alleged Claims Against All of the Named Defendant Officers. ................................................................................................................................ 23

II.  PLAINTIFF ORTIZ HAS PROPERLY PLEADED ALL OF HIS CLAIMS ...................... 25

    A. Plaintiff Ortiz Was Stopped Without Reasonable Suspicion In Violation Of The Fourth Amendment ........................................................................................................................ 25

B. Plaintiff Ortiz Has Adequately Pleaded Failure to Intervene. ........................................... 27

C. Plaintiff Ortiz Has Adequately Pleaded Conspiracy Claims. ........................................... 29

III. PLAINTIFF SCRUGGS HAS PROPERLY PLEADED ALL OF HIS CLAIMS. ............... 29

A. Defendants Concede that Plaintiff Scruggs Was Subject to Two Unconstitutional *Terry* Stops; He Likewise Has a Fourth Amendment Claim Because the First Stop Escalated to the Level of an Arrest. ................................................................................................. 30

B. Plaintiff Scruggs Has Adequately Pleaded Failure to Intervene. ...................................... 32

C. Plaintiff Scruggs Adequately Pleads Conspiracy Claims. ................................................ 32

D. Plaintiff Scruggs Has Adequately Pleaded False Imprisonment/False Arrest. ................. 33

IV. PLAINTIFFS' CLAIMS ARE NOT BARRED BY QUALIFIED IMMUNITY ................. 34

CONCLUSION ................................................................................................................. 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adcock v. Brakegate, Ltd.*,
  164 Ill. 2d 54 (1994) ..................................................................................................33

*Alarm Detection Sys., Inc. v. Vill. of Schaumburg*,
  930 F.3d 812 (7th Cir. 2019) .....................................................................................21

*Alexander v. United States*,
  721 F.3d 418 (7th Cir. 2013) .....................................................................................12

*Alioto v. Town of Lisbon*,
  651 F.3d 715 (7th Cir. 2011) .....................................................................................10

*Allen v. Berger*,
  336 Ill. App. 3d 675 (1st Dist. 2002) ........................................................................13

*Alvarado v. Litscher*,
  267 F.3d 648 (7th Cir. 2001) .....................................................................................34

*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011)...................................................................................................18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).....................................................................................................6

*Baker v. City of Chicago*,
  483 F. Supp. 3d 543 (N.D. Ill. 2020) .........................................................................20

*Barnhouse v. City of Muncie*,
  499 F. Supp. 3d 578 ...................................................................................................20

*Bartholet v. Reishauer A.G. (Zurich)*,
  953 F.2d 1073 (7th Cir. 1992) ...................................................................................23

*Beaman v. Freesmeyer*,
  2021 IL 125617, *reh'g denied* (Sept. 27, 2021) ......................................................16

*Beaman v. Souk*,
  No. 10-cv-1019, 2011 WL 832506 (C.D. Ill. 2011) ..................................................20

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007).....................................................................................................6

*Boyle v. Torres*,
    756 F. Supp. 2d 983 (N.D. Ill. 2010) ................................................................13

*Brokaw v. Mercer*,
    235 F.3d 1000 (7th Cir. 2000) .........................................................................29

*Brown v. City of Chicago*,
    No. 18 C 7064, 2022 WL 4602714 (N.D. Ill. Sept. 30, 2022)..........................17

*Campbell v. City of Chicago*,
    No. 17-cv-4467, 2018 WL 4352614 (N.D. Ill. Sept. 12, 2018)................27, 28, 32

*Dobiecki v. Palacios*,
    829 F. Supp. 229 (N.D. Ill. 1993) .............................................................16, 17, 18

*Douglas v. Alfasigma USA, Inc.*,
    No. 19-cv-2272, 2021 WL 2473790 (N.D. Ill. June 17, 2021)..........................23

*Flint v. City of Milwaukee*,
    91 F. Supp. 3d 1032 (E.D. Wis. 2015).............................................................28

*Florida v. Harris*,
    568 U.S. 237 (2013).................................................................................27, 35

*Freeman v. Brown*,
    No. 11 CV 05899, 2012 WL 3777074 (N.D. Ill. Aug. 29, 2012) .......................14

*Gardley v. City of Chicago*,
    No. 20 C 5149, 2022 WL 6757610 (N.D. Ill. Oct. 11, 2022)............................17

*Gates v. Towery*,
    331 F. Supp. 2d 666 (N.D. Ill. 2004) ..........................................................14, 29

*George v. City of Chicago*,
    No. 1:20-CV-06911, 2022 WL 832675 (N.D. Ill. Mar. 21, 2022) ......................19

*Gibson v. City of Chicago*,
    No. 19-cv-4152, 2020 WL 4349855 (N.D. Ill. July 29, 2020) ..........................22

*Gray v. City of Chicago*,
    No. 18 C 2624, 2019 WL 3554239 (N.D. Ill. Aug. 1, 2019)............................25

*Haliw v. City of South Elgin*,
    No. 19 C 01515, 2020 WL 1304697 (N.D. Ill. March 18, 2020) ......................22

*Hyung Seok Koh v. Graf*,
    No. 11-CV-02605, 2013 WL 5348326 (N.D. Ill. Sept. 24, 2013) .............20, 23, 25

*Jones v. City of Chicago*,
856 F.2d 985 (7th Cir. 1988) ...........................................................................11

*Jones v. York*,
34 F.4th 550 (7th Cir. 2022) ...........................................................................10

*Jordan v. City of Chicago*,
No. 20-CV-4012, 2021 WL 1962385 (N.D. Ill. May 17, 2021)...........................17

*Klein v. Town of Schererville*,
No. 22-1842, 2023 WL 119633 (7th Cir. Jan. 6, 2023)....................................7

*Lewis v. City of Chicago*,
914 F.3d 472 (7th Cir. 2019) ...........................................................................10

*Lietzow v. Vill. of Huntley*,
No. 17 C 5291, 2018 WL 6248911, at *5 (N.D. Ill. Nov. 29, 2018).....................20

*Logan v. Catepillar, Inc.*,
246 F.3d 912 (7th Cir. 2001) ......................................................................12, 13

*Lopez v. Vidljinovic*,
No. 1:12-CV-5751, 2016 WL 4429639 (N.D. Ill. Aug. 22, 2016) .........................19

*Manuel v. City of Joliet, Ill.*,
580 U.S. 357 (2017).........................................................................................9, 11

*Martinez v. Wexford Health Servs., Inc.*,
No. 3:18-CV-50164, 2021 WL 1546429 (N.D. Ill. Apr. 20, 2021).......................24

*Matz v. Klotka*,
769 F.3d 517 (7th Cir. 2014) ......................................................................30, 31

*Meerbrey v. Marshall Field & Co.*,
139 Ill.2d 455 (1990) ......................................................................................33

*Mission Measurement Corp. v. Blackbaud, Inc.*,
287 F. Supp. 3d 691 (N.D. Ill. 2017) ..............................................................22

*Mwangangi v. Nielsen*,
48 F.4th 816 (7th Cir. 2022) ...........................................................................21

*Pearson v. Callahan*,
555 U.S. 223 (2009)........................................................................................34

*Phillips v. City of Chicago*,
No. 18-cv-0316, 2021 WL 1614503 (N.D. Ill. Apr. 26, 2021).............................7

*Phillips v. Prudential Ins. Co. of Am.*,
    714 F.3d 1017 (7th Cir. 2013) ...................................................................................13

*Prokop v. Hileman*,
    588 F. Supp. 3d 825 (N.D. Ill. 2022) .......................................................................15

*Rabe v. United Air Lines, Inc.*,
    636 F.3d 866 (7th Cir. 2011) ...................................................................................10

*Rainsberger v. Benner*,
    913 F.3d 640 (7th Cir. 2019) ...........................................................................7, 8, 11

*Ramos v. City of Chicago*,
    716 F.3d 1013 (7th Cir. 2013) .................................................................................31

*Reed v. City of Chicago*,
    77 F.3d 1049 (7th Cir 1996) ....................................................................................14

*Robles v. City of Chicago*,
    354 F. Supp. 3d 873 (N.D. Ill. 2019) .......................................................................24

*Rodgers v. Peoples Gas, Light & Coke Co.*,
    315 Ill. App. 3d 340 (1st Dist. 2000) ..................................................................14, 15

*S.J. v. Persps. Charter Sch.*,
    685 F. Supp. 2d 847 (N.D. Ill. 2010) .......................................................................15

*Santiago v. Walls*,
    599 F.3d 749 (7th Cir. 2010) .....................................................................................7

*Sibley v. Dart*,
    No. 17-cv-6298, 2019 WL 670270 (N.D. Ill. 2019) .................................................24

*Sneed v. Rybicki*,
    146 F.3d 478 (7th Cir. 1998) ...................................................................................14

*Sopron v. Cassidy*,
    No. 19-cv-8254, 2022 WL 971563 (N.D. Ill. Mar. 31, 2022) .................................24

*Starks v. City of Waukegan*,
    946 F. Supp. 2d 780 (N.D. Ill. 2013) ...........................................................12, 14, 17

*Tamayo v. Blagojevich*,
    526 F.3d 1074 (7th Cir. 2008) ...................................................................................7

*Thompson v. Clark*,
    --- U.S ---, 142 S. Ct. 1332 (2022) ....................................................................10, 18

*Thompson v. Village of Monee*,
    No. 12-cv-5020, 2013 WL 3337801 (N.D. Ill. 2013) ............................................28

*Tillman v. Burge*,
    813 F. Supp. 2d 946 (N.D. Ill. 2011) ....................................................................22

*Treece v. Village of Naperville*,
    903 F. Supp. 1251 (N.D. Ill. 1995) ........................................................................17

*United States Sec. & Exch. Comm'n v. Winemaster*,
    529 F. Supp. 3d 880 (N.D. Ill. 2021) ....................................................................23

*United States v. Bohman*,
    683 F.3d 861 (7th Cir. 2012) ........................................................................27, 35

*United States v. Rickmon*,
    952 F.3d 876 (7th Cir. 2020) ....................................................................27, 32, 35

*Walker v. City of Chicago*,
    559 F. Supp. 3d 747 (N.D. Ill. 2021) ....................................................................22

*Walker v. Thompson*,
    288 F.3d 1005 (7th Cir. 2002) ..............................................................................29

*Wallace v. City of Zion*,
    No. 11 CV 2859, 2011 WL 3205495 (N.D. Ill. July 28, 2011) ............................14

*Walton v. Diamond*,
    No. 12-cv-4493, 2013 WL 1337334 (N.D. Ill. Mar. 29, 2013) ............................22

*Washington v. Summerville*,
    127 F.3d 552 (7th Cir. 1997) ................................................................................14

*Wilbon v. Plovanich*,
    67 F. Supp. 3d 927 (N.D. Ill. 2014) ......................................................................19

*Williams v. City of Chicago*,
    733 F.3d 749 (7th Cir. 2013) ................................................................................15

## Other Authorities

Fed. R. Civ. P. 8(a)(2) ......................................................................................................6

## PRELIMINARY STATEMENT

The Individual Officer Defendants have moved pursuant to Rule 12(b)(6) to dismiss the damages claims asserted by Plaintiffs Michael Williams, Derick Scruggs, and Daniel Ortiz. ECF No 54 ("Def. Mot."). Defendants' arguments for dismissal willfully misread the First Amended Complaint ("FAC"), fail to grapple with controlling authority, and ask the Court to assume that the Defendant Officers had lawful justification for the clearly unconstitutional conduct alleged in the Complaint. These arguments cannot be reconciled with the FAC and improperly ask the Court to draw inferences *against* the Plaintiffs on a motion to dismiss. Plaintiffs' detailed allegations show that the Defendant Officers violated Plaintiffs' rights under the Constitution and state law and that Defendants are not entitled to qualified immunity. The motion should be denied.

## SUMMARY OF FACTUAL ALLEGATIONS

### A. Michael Williams

On the night of May 31, 2020, the City of Chicago was in turmoil amidst uprisings following the murder of George Floyd. FAC ¶ 226. While driving in his car, Michael Williams, a 64-year old grandfather, encountered a young man who asked him for a ride home, and Mr. Williams agreed. *Id.* ¶¶ 229–31. While Mr. Williams was driving the young man home, another car pulled alongside Mr. Williams and someone inside that car shot Mr. Williams's passenger in the head. *Id.* ¶¶ 234–37. Terrified, Mr. Williams immediately sped off and then drove to the nearest hospital emergency room to get assistance for his passenger. *Id.* ¶¶ 238–39. Mr. Williams brought the passenger to the emergency room and gave his name and information to security but was not permitted to stay at the hospital due to Covid protocols in effect at the time. *Id.* ¶ 240. The young man later died from the gunshot injury. *Id.* ¶ 241.

Mr. Williams subsequently explained all of this to the Williams Defendant Officers. *Id.* ¶¶ 275–79. Mr. Williams's account (that someone outside of his car shot the passenger) was

consistent with the evidence Defendant Officers had already obtained, and Defendant Officers had no reason to disbelieve it. For example, video from the scene of the shooting corroborated Mr. Williams's account. FAC ¶¶ 266–69. That video showed a dark sedan creeping forward past Mr. Williams's car into the sidewalk before suddenly speeding away to make a left turn through a red light. *Id.* ¶ 266. In addition, the Defendant Officers learned from the Cook County Medical Examiner that there was no evidence of close-range gun fire on the victim's body, which effectively excluded Mr. Williams as the shooter. *Id.* ¶ 271. Forensic testing also showed no traces of gunshot residue on the passenger seat headrest of Mr. Williams's car. *Id.* ¶ 272.

During the investigation, investigators obtained a ShotSpotter report corresponding to the shooting. The Defendant Officers repeatedly misused and lied about his report, claiming that it could pinpoint the "exact" location of a gunshot and claiming to have evidence that "the shots had come from inside [Mr. Williams's] vehicle." *Id.* ¶¶ 253, 294–295.

In fact, the ShotSpotter report did *not* show that the shots were fired inside Mr. Williams's car, and the ShotSpotter report could not and did not purport to pinpoint the "exact location" of the gunshot. *Id.* ¶¶ 251–53. The report indicated that the shot occurred somewhere within an 82-foot radius of a particular point near the location of Mr. Williams vehicle; it contained an explicit disclaimer that the location was "approximate and should be deemed as such." *Id.* ¶¶ 253–55.

Yet, Defendant Potter falsely wrote in his "Probable Cause Statement for Judicial Determination" that "the investigation revealed that the gunshot had come from within the vehicle." *Id.* ¶¶ 294–95. There was no evidence that the gunshot had come from inside Mr. Williams's vehicle. *Id.* ¶ 295. Defendant Evangelides subsequently gave false testimony to the grand jury about the meaning of the ShotSpotter evidence and that false testimony was essential to the grand jury's finding of a true bill of indictment. *Id.* ¶¶ 300, 307.

Mr. Williams spent 11 months jailed in deplorable conditions as a result of Defendants' baseless accusations of murder, which they knew to be untrue. *Id.* ¶¶ 309–344. He developed bleeding growths on his backside that went untreated and a tremor in his dominant hand that continues to this day, and he suffered two bouts with COVID. *Id.* ¶¶ 9, 333–39, 347. More than nine months into his ordeal, the State's Attorney withdrew the ShotSpotter evidence that had been the centerpiece of Defendants' false assertions of probable cause. *Id.* ¶ 304. Six weeks later, the prosecution conceded in open court that, after reviewing the evidence, there was "insufficient evidence to proceed with the prosecution." *Id.* ¶ 305. Mr. Williams regained his freedom on July 23, 2011, upon the State's motion to dismiss the charges against him. *Id.* ¶ 305.

### B.    Danny Ortiz

The afternoon of April 19, 2021, Daniel Ortiz was out with a friend finishing his family's laundry. *Id.* ¶¶ 349–350. He was standing in the parking lot outside the laundromat when Defendant Powar charged aggressively toward him shouting questions about a shooting. *Id.* ¶ 362. Within moments, Defendant Officers Harsimran Powar and Michael Matias had physically restrained Mr. Ortiz. *Id.* ¶¶ 364–65.

Defendants Powar and Matias targeted and detained Mr. Ortiz solely because a ShotSpotter alert had dispatched them to a location near the laundromat, outside the neighboring Family Dollar store. *Id.* ¶369. Based on the ShotSpotter alert alone, the officers falsely and unreasonably suspected Mr. Ortiz of a shooting. *Id.* ¶¶ 369–70, 377. But the officers never found any evidence to corroborate that a shot had even been fired. *Id.* ¶¶ 379–82. When Defendant Officers actually investigated the scene—well after they had detained Mr. Ortiz as a supposed shooter—they spoke with employees at the laundromat and Family Dollar, none of whom had heard any gunshots. *Id.* ¶ 372. Powar reviewed Family Dollar security footage, and commented that "no one on camera was acting like there had been a gunshot." *Id.* ¶ 373.

Defendant Officers eventually searched Mr. Ortiz's car and found marijuana and a bottle of prescription drugs, which they used to charged him with pretextual misdemeanor and felony offenses. *Id.* ¶ 383. Defendant Officers also impounded Mr. Ortiz's car. As a result of the ordeal, Mr. Ortiz spent the night in lockup and was transferred to the Cook County Jail before the charges against him were dismissed. *Id.* ¶¶ 391, 393, 397, 399. He later recovered his car, which suffered damage while in City custody. *Id.* ¶¶ 401–404.

### C.    Derick Scruggs

On July 18, 2022, Derick Scruggs was working his regular shift as an armed private security guard at an AutoZone in the Englewood neighborhood on the South Side of Chicago. *Id.* ¶ 411. Defendant Officers Fidel Legorreta and Theodore Andrews responded to a ShotSpotter alert of a supposed single gunshot at 8:08 p.m. in the vicinity of the AutoZone. They arrived approximately 12 minutes after the alert was sent. *Id.* ¶¶ 413–14. Mr. Scruggs was standing outside chatting with two AutoZone employees. *Id.* ¶ 415. The officers targeted Mr. Scruggs for an investigatory stop, pulling their vehicle in front of Mr. Scruggs, approaching him aggressively, positioning themselves on either side of him, and asking him pointed questions about a supposed gunshot reported by ShotSpotter in that area. *Id.* ¶¶ 413–17. The officers had no reason to suspect Mr. Scruggs of firing a gun except for the ShotSpotter alert. *Id.* ¶ 442.

After detaining Mr. Scruggs, Officer Legorreta took Mr. Scruggs's licensed firearm from him. They began fabricating false evidence to retroactively justify the illegal stop and their continuing detention of Mr. Scruggs. Officer Legorreta claimed, falsely, that a bullet was "missing" from Mr. Scruggs's gun; in fact a full complement of 18 rounds was clearly visible to him in the magazine. *Id.* ¶ 456. Defendants Legoretta and Andrews falsely stated that the gun was "hot here a little bit" to suggest the gun had recently been fired; in fact, all 18 rounds were clearly present, a single gunshot would not make a gun warmer in the moment, let alone 15 minutes after

a supposed shot was fired, and Mr. Scruggs was carrying the firearm inside his waistband on a 90-degree day—the obvious explanation for the metal's temperature. *Id.* ¶¶ 425–34.

Despite no evidence linking him to a gun crime, Officers Legorreta and Andrews handcuffed Mr. Scruggs, placed him in the back of a police cruiser, and conducted a humiliating, invasive search of his body. *Id.* ¶¶ 451–53. Eventually, after Mr. Scruggs was handcuffed for 20 minutes, Officer Legorreta was told by a Sergeant that there was no basis to continue to hold him—even when considering the evidence that was entirely fabricated by the arresting officers. *Id.* ¶ 456.

Defendant Officers never found any corroboration that there had actually been a gunshot that evening. Instead, a report broadcast over police scanners that night announced that the loud noise that triggered the ShotSpotter had come from a car, not a gun. *Id.* ¶¶ 460–61. Despite this, Officers Legorreta and Andrews *returned* to the AutoZone the next evening to, in their own words, "continue the investigation" of the ShotSpotter alert, at which time they again illegally detained Mr. Scruggs. *Id.* ¶¶ 462–63. At that time, the Defendant Officers found a pretext to arrest Mr. Scruggs: he did not have his Professional Employee Registration Card ("PERC") on his person while working as a licensed armed security guard, a misdemeanor offense that had not been used to arrest anyone in Chicago since 2015. *Id.* ¶ 492.

### D. ShotSpotter Alerts are Untested, Frequently Inaccurate, and Do Not Provide Reliable Evidence.

ShotSpotter is a noise detection system deployed in Chicago that purports to identify the sound of gunfire and determine its location. *Id.* ¶¶ 44–62. Every time the system triggers an alert of a gunshot or possible gunshot, CPD officers are dispatched on a Priority 1 call to investigate the incident as if it were a shooting in progress. *Id.* ¶ 147. The system, however, has never been tested to determine how frequently it triggers alerts to loud noises that are not gunfire but just the ordinary cacophony of engine backfires, firecrackers, construction noises that are part of city life. *Id.* ¶¶ 69,

105, 111–14, 129. Despite the fact that ShotSpotter has been sold to police departments nationwide for more than 20 years, there has never been an empirical test to determine how often the system sends police out on false alerts to chase non-existent gunfire. *Id.* ¶¶ 69, 105. In practice, the Chicago Office of Inspector General determined that only 9.1% of ShotSpotter alerts lead police to find *any* evidence of *any* kind of gun incident—let alone recent shots fired—when they investigate the location of the alert. *Id.* ¶ 116.

Even a ShotSpotter alert that corresponds to a genuine gunfire incident is of limited informational value. ShotSpotter itself cautions that an alert only purports to provide the approximate location of the noise to within a radius of 82 feet. *Id.* ¶ 131. When an officer arrives to the location of a ShotSpotter alert, at least several minutes have passed, often much longer. *Id.* ShotSpotter provides no information about who was at the location at the time the supposed gunshots were heard, what they looked like, or where they may have gone. *Id.* It is on the basis of these kinds of alerts that Michael Williams was falsely accused of murder and Derick Scruggs and Danny Ortiz were unlawfully detained while going about their days. *Id.* ¶¶ 166, 225, 442.

## LEGAL STANDARD

To state a claim upon which relief can be granted, the plaintiff's complaint need only contain "a short and plain statement of the claim showing that [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff need not make "detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, the complaint must contain "only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). At this stage, the Court must "tak[e] all well-pleaded allegations of the complaint as true and view[] them in the light most favorable to the plaintiff,"

*Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010), drawing "all possible inferences" in plaintiff's favor, *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

## ARGUMENT

I. **PLAINTIFF WILLIAMS AMPLY PLEADS HIS CLAIMS AGAINST THE DEFENDANT OFFICERS.**

### A. **Mr. Williams Was Seized in Violation of the Fourth Amendment Because Defendant Officers Lacked Probable Cause.**

Defendants argue that Mr. Williams's Fourth Amendment claims should be dismissed for failure to state a claim. Def. Mot. at 9–10. In advancing this argument, Defendants overlook the most significant allegations in the FAC and draw inferences about others in their favor. When read in full and applying the correct standard, the FAC sufficiently alleges that Mr. Williams was arrested and charged without probable cause.

#### 1. **Defendants Overlook Plaintiffs Factual Allegations.**

It is well-established that "[a]n officer violates the Fourth Amendment if he intentionally or recklessly includes false statements in a warrant application and those false statements were material to a finding of probable cause." *Rainsberger v. Benner*, 913 F.3d 640, 647 (7th Cir. 2019) (citing *Hart v. Mannina*, 798 F.3d 578, 591 (7th Cir. 2015)). "An officer similarly violates the Fourth Amendment if he intentionally or recklessly withholds material information from a probable cause affidavit." *Id.* (citing *Whitlock v. Brown*, 596 F.3d 406, 410–11 (7th Cir. 2010)); *see also Klein v. Town of Schererville*, No. 22-1842, 2023 WL 119633, at *2 (7th Cir. Jan. 6, 2023) ("A statement or omission is reckless if the officer had obvious reasons to doubt the accuracy of the information in the affidavit.") (quotation marks omitted); *Phillips v. City of Chicago*, No. 18-cv-0316, 2021 WL 1614503, at *6 (N.D. Ill. Apr. 26, 2021) (probable cause was deficient when an officer "relied solely on uncorroborated information from an informant whose reliability was

not established or even mentioned"). Defendants ignore this controlling caselaw, and in fact cite no case whatsoever in support of their position. Def. Mot. at 9.

Mr. Williams was detained without probable cause on the basis of knowingly false allegations made by the Defendant Officers. *See Rainsberger*, 913 F.3d at 647. The Defendant Officers' investigation produced no evidence establishing probable cause against Mr. Williams and ample evidence corroborating his account that a person in a car in the next lane shot his passenger through his open window. For instance, the video evidence showed a car in the next lane peeling off through a red light, FAC ¶¶ 266–69, just as Mr. Williams had described it, and the forensic evidence showed the fatal gunshot was not fired at close range, *id.* ¶¶ 271–72. Despite this, Defendants seized upon a ShotSpotter alert that did not even purport to show the precise location of the gunshot—and which encompassed the location of neighboring car—and used it to declare, falsely, that it provided the "exact location" of the shot inside Mr. Williams's car. *Id.* ¶¶ 253, 284, 294–95. In the Probable Cause Statement for Judicial Determination, Defendant Potter wrote, falsely, "that the investigation revealed that the gunshot had come from within the vehicle." *Id.* ¶ 295. There was no such evidence. Defendant Evangelides likewise gave false testimony to the grand jury about ShotSpotter, which was essential to obtain the indictment. *Id.* ¶¶ 300, 307.

Defendants claim that Mr. Williams's allegations are not "plausible" and that Mr. Williams has somehow pled himself out of court because the ShotSpotter alert in this instance was consistent with Mr. Williams's account. Def. Mot. at 9. This argument misreads the allegations supporting Mr. Williams's damages claims. Defendants helpfully acknowledge that the ShotSpotter report did not actually show that the shot came from inside the car, *see* Def. Mot. at 9, but they simply ignore the Complaint's detailed allegation that the Defendant Officers *misused* the report and *lied* about what it said by claiming repeatedly—including in their final police report and interrogation of Mr.

8

Williams—that it provided an "exact" location inside Mr. Williams's car, FAC ¶¶ 253, 284, and by providing false testimony to that effect to the court and grand jury on that basis, *id.* ¶¶ 294, 300.

Defendants also claim, without any basis, that the Defendant Officers must have had some other evidence, beyond the ShotSpotter alert, to arrest and prosecute Plaintiff. Def. Mot. at 9 & n.5. By this argument, the Defendants ask the Court to draw factual inferences in *their* favor and to use that inference to draw a conclusion that Plaintiff's claims are implausible. Of course, the Court cannot draw such an inference at the pleading stage. This argument also ignores Plaintiff's allegations that there was *no* other evidence implicating him in the crime, and that the Defendants lied about the ShotSpotter report, including at the probable cause hearing and grand jury.

### 2. Mr. Williams's Fourth Amendment Claims Are Not Duplicative.

Defendants also assert that Mr. Williams's Fourth Amendment Claims in Counts IV, V, and VI should be dismissed because they are "duplicative" of other claims. Def. Mot. at 9–10. This argument must be rejected.

Count IV concerns Mr. Williams's false arrest, an event that occurred on August 28, 2020. FAC ¶¶ 274–89. Count V concerns Mr. Williams's detention pursuant to legal process, which commenced with Mr. Williams's August 30, 2020, probable cause hearing and extended to July 23, 2021, when the state dismissed charges and Mr. Williams was released from custody. *Id.* ¶¶ 298–308. This claim is distinct from Mr. Williams's false arrest claim. *See Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 366–67 (2017) ("[P]retrial detention can violate the Fourth Amendment not only when it precedes, but also when it follows, the start of legal process in a criminal case."). As the Supreme Court held in the seminal *Manuel* case, the institution of legal proceedings does not extinguish a Fourth Amendment claim where, as here, a judge's probable-cause determination is predicated on a police officer's false statements. *Id.*

Count VI concerns the same period of detention as Count V but is based on a Fourth Amendment malicious prosecution theory. As Defendants note, the Supreme Court recently characterized this claim as interchangeable with a claim for unlawful detention pursuant to legal process. *See Thompson v. Clark*, --- U.S ---, 142 S. Ct. 1332, 1337 (2022) ("He brought a Fourth Amendment claim under § 1983 for malicious prosecution, sometimes referred to as a claim for unreasonable seizure pursuant to legal process. This Court's precedents recognize such a claim."). However, the statement in *Thompson* is dicta, and these types of claims are not necessarily seen as equivalent in the Supreme Court or the Seventh Circuit. *Manuel* "expressly declined to determine 'whether (and, if so, how) [petitioner's Fourth Amendment claim] should resemble the malicious prosecution tort.'" *Thompson*, 142 S. Ct. at 1346 (Alito, J. dissenting) (alteration in original) (quoting *Manuel*, 580 U.S. at 372 n.10). Pre-*Thompson,* the Seventh Circuit had characterized the Fourth Amendment claim under *Manuel* as "jettison[ing] the malicious prosecution analogy." *Lewis v. City of Chicago*, 914 F.3d 472, 476 (7th Cir. 2019). And post-*Thompson*, the Seventh Circuit has suggested that there may remain a distinct constitutional malicious prosecution claim. *See Jones v. York*, 34 F.4th 550, 564 n.8 (7th Cir. 2022). While the Seventh Circuit could clarify that the claims are identical, at this stage in the law's development, Plaintiff is plainly entitled to plead both claims in the alternative and Defendants have not shown they are entitled to dismissal.[1]

---

[1] In theory, Plaintiff could have pled Counts IV, V, and VI as one unitary count for violating his Fourth Amendment rights, without pleading separate theories. *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("[W]e have stated repeatedly (and frequently) that a complaint need not plead legal theories, which can be learned during discovery."); *Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011) ("A complaint need not identify legal theories, and specifying an incorrect legal theory is not a fatal error.").

### 3. Defendants Are Responsible For Mr. Williams's Unconstitutional Seizure.

Defendants separately seek dismissal of Count V on the basis that a judge and grand jury determined probable cause, not the Defendant Officers. Def. Mot. at 10. Defendants assert in conclusory fashion that "Plaintiff makes no plausible claim that the evidence presented to the Grand Jury or to the hearing judge was fabricated or inaccurate." *Id.* at 10.

This is wrong. As detailed above, Plaintiff alleges that Defendant Potter presented false and misleading information to the court at the probable cause hearing, including by testifying that "[t]he investigation revealed that the gunshot had come from within the vehicle" when in fact forensic evidence proved the opposite—the gunshot could not have come from inside the car. FAC ¶¶ 271–273, 291, 294–96. Defendant Potter intentionally made these misleading statements to the court in order to imply Mr. Williams's guilt and advance the Defendant Officers' unfounded assertion of probable cause. *Id.* ¶ 298. Officer Potter's false Probable Cause Statement and misleading testimony were the basis for the judge's finding of probable cause. *Id.* ¶ 299. Thereafter, Defendant Evangelides falsely testified at the grand jury about the meaning of the ShotSpotter evidence. That testimony was essential to the grand jury's issuance of the indictment. *Id.* ¶¶ 300, 307.

These allegations support Mr. Williams's claim that he was unlawfully detained pursuant to legal process. *See Manuel*, 580 U.S. at 366–67 (pretrial detention violates the Fourth Amendment where court's probable cause determination is predicated on an officer's false statement); *Rainsberger*, 913 F.3d at 647 (officer violates Fourth Amendment if he makes materially false statements or omissions in probable cause affidavit); *see also Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1988) ("[A] prosecutor's decision to charge, a grand jury's decision to indict, a prosecutor's decision not to drop charges but to proceed to trial—none of these

decisions will shield a police officer who deliberately supplied misleading information that influenced the decision."). Defendants' argument fails.

### B. Mr. Williams Adequately Pleads Malicious Prosecution Claims.

Defendants also seek dismissal of Plaintiff's Section 1983 and state law malicious prosecution claims (Counts VI and X, respectively), advancing four arguments in support: (1) that Plaintiff has failed to adequately plead that Defendants commenced or continued the criminal proceedings against him; (2) that Plaintiff has failed to adequately plead malice; (3) that Plaintiff has not adequately alleged lack of probable cause; and (4) that Plaintiff has not adequately alleged that the murder charges were dismissed in a manner indicative of innocence. Def. Mot. at 9–15. Each of these arguments lacks merit. Plaintiff also disagrees with Defendants' claim that the elements of a Fourth Amendment malicious prosecution claim are identical to the Illinois tort.

#### 1. Commencement of Criminal Charges.

To be liable for malicious prosecution "the defendant must have initiated the criminal proceeding or 'his participation in it must have been of so active and positive a character as to amount to advice and cooperation.'" *Logan v. Catepillar, Inc.*, 246 F.3d 912, 922 (7th Cir. 2001). Cases stress that this standard does not focus on who makes the decision to prosecute, who signs an affidavit, or who leads the investigation, but "[r]ather, liability extends to all persons who played a significant role in causing the prosecution of the plaintiff, provided all of the elements of the tort are present." *Starks v. City of Waukegan*, 946 F. Supp. 2d 780, 794–95 (N.D. Ill. 2013), *on reconsideration in part* (Aug. 16, 2013) (quoting *Rodgers v. Peoples Gas, Light & Coke Co.*, 315 Ill. App. 3d 340, 348–49 (1st Dist. 2000); *see also Alexander v. United States*, 721 F.3d 418, 423 (7th Cir. 2013) (defendant "causes" an action to be commenced "even if that person does not conduct the prosecution personally").

12

The FAC alleges that the Defendant Officers made false statements about evidence in their reports, *see* FAC ¶¶ 253, 289, 295, in testimony before the probable court hearing judge, *Id.* ¶¶ 295, 298, and in testimony before the grand jury that returned an indictment against Mr. Williams, *Id.* ¶ 300. Defendants' false statements to the grand jury were essential to its finding of a true bill. *Id.* ¶¶ 300, 307. Although the officers did not themselves personally act as prosecutors, the complaint alleges that they sought and obtained approval to formally file first degree murder charges against Mr. Williams, *Id.* ¶¶ 291, 293, so that they clearly played an "active and positive" role in Mr. Williams's prosecution. *Logan*, 246 F.3d at 922.

Although the FAC does not contain allegations about communications the Defendant Officers had with prosecutors in connection with seeking murder charges, Plaintiff further alleges the following in response to Defendant's motion to dismiss: On August 29, 2020, the Defendant Officers asked Cook County prosecutors to approve first degree murder charges against Mr. Williams. On information and belief, the Defendant Officers made false and misleading statements to prosecutors about evidence in the case, and prosecutors approved charges based on those false and misleading statements.[2]

These allegations sufficiently plead that the Defendant Officers commenced criminal proceedings against Mr. Williams. *See Allen v. Berger*, 336 Ill. App. 3d 675, 678 (1st Dist. 2002) ("[W]hen a person makes a knowingly false report to a prosecuting officer, the resulting prosecution is attributable to that person"); *Boyle v. Torres*, 756 F. Supp. 2d 983, 1000 (N.D. Ill. 2010) ("In making knowingly false statements to the CPD Officers, Moore and Torres would have satisfied the "commencement" requirement for a malicious prosecution claim."); *see also Wallace*

---

[2] At the motion to dismiss stage, the Court must also consider these additional factual allegations, so long as the additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted).

*v. City of Zion*, No. 11 CV 2859, 2011 WL 3205495, at *5 (N.D. Ill. July 28, 2011); *Rodgers*, 315

Ill. App. 3d at 346; *Starks*, 946 F. Supp. 2d at 794–95; *Freeman v. Brown*, No. 11 CV 05899, 2012

WL 3777074, at *6 (N.D. Ill. Aug. 29, 2012).

The cases that Defendants rely in support of their argument are inapposite—these cases,

each well over 20 years old, do not involve allegations that law enforcement provided false

information to prosecuting authorities to obtain criminal charges. For instance, in *Sneed v. Rybicki*,

146 F.3d 478, 481—82 (7th Cir. 1998), the plaintiff merely alleged that he was arrested without

probable cause and eventually convicted. But Mr. Williams's allegations go well beyond the mere

absence of probable cause—they hold that the Defendant Officers knowingly provided false

information in order to supply probable cause that did not otherwise exist. *See supra* at 1–3, 7–9;

*cf. Reed v. City of Chicago*, 77 F.3d 1049, 1054 (7th Cir 1996) ("There is no allegation that the

detectives covered up exculpatory evidence or testified untruthfully. These omissions are fatal to

Reed's complaint."); *Washington v. Summerville*, 127 F.3d 552, 559 (7th Cir. 1997)

("Washington's attempts to distinguish his case from [*Reed*] are in vain."). Mr. Williams has

adequately pled that Defendant Officers commenced the legal proceedings against him.

### 2. Malice.

Next, Defendants assert, in a wholly conclusory fashion, that Plaintiff has not plausibly

alleged that they acted with malice. Def. Mot. at 13–14. This argument is so perfunctory and

underdeveloped that it should be deemed waived. *Gates v. Towery*, 331 F. Supp. 2d 666, 673 (N.D.

Ill. 2004) ("Any arguments that are unsupported or underdeveloped are deemed waived") (citing

*United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir.1991)).

In any event, Plaintiff's allegations are sufficient on the issue of malice. Malice is defined

as prosecution "for any reason other than to bring a party to justice." *Rodgers*, 315 Ill. App. 3d at

349. Malice can be inferred from the absence of probable cause. *Id.* As explained in detail above,

*supra* 1–3, 7–9, Plaintiff has pled that the Defendants lacked probable cause to initiate criminal proceedings. In addition to lacking probable cause, Defendants lied about the ShotSpotter evidence, FAC ¶¶ 253, 284–285, 298–300, ignored evidence that would lead them to the real perpetrator, *Id.* ¶¶ 249, 266–67, intentionally ignored clear evidence of Mr. Williams's innocence, *Id.* ¶¶ 269–273, tried to force Mr. Williams to falsely confess to a murder that he did not commit, *Id.* ¶¶ 282–86, and "engaged in tunnel vision to target Mr. Williams," *Id.* ¶ 297. These allegations plainly support a finding of malice. *See, e.g.*, *Williams v. City of Chicago*, 733 F.3d 749, 760–61 (7th Cir. 2013) (evidence that officers lacked probable cause and lied about evidence during criminal proceeding supported an inference of malice).

In connection with their malice argument, Defendants also casually invoke the Illinois Tort Immunity Act (TIA), which limits liability to "willful and wanton conduct." Def. Mot. at 13–14. But the TIA is an affirmative defense that defendants bear the burden of pleading and proving. *S.J. v. Persps. Charter Sch.*, 685 F. Supp. 2d 847, 858 (N.D. Ill. 2010). Plaintiff need not plead around this affirmative defense. *Prokop v. Hileman*, 588 F. Supp. 3d 825, 839–40 (N.D. Ill. 2022). By invoking this defense at the pleading stage, Defendants ask the Court to draw inferences about Defendants' mental state in their favor and conclude as a matter of law that their conduct was not "willful and wanton." Defendants offer no argument or analysis to support this position, especially at the pleading stage and given the facts Plaintiff alleges. The Court should reject this argument.

### 3. Lack of Probable Cause.

Defendants next ask the Court to find as a matter of law that probable cause existed to charge Mr. Williams with first degree murder. They cite no law in support of this position, and again ask this Court to make such a finding by improperly drawing inferences in their favor. *See* Def. Mot. at 14 ("The most reasonable conclusion after a reading of Plaintiff's complaint is that the Defendant Officers followed the evidence in this case and that evidence led to an honest and

reasonable belief that Plaintiff was the shooter."). It would be legal error for the Court to draw such an inference at the pleading stage. And for all the reasons stated above, *supra* 1–3, 7–9, the charges against Mr. Williams were not supported by probable cause.

### 4.    Dismissal in a Manner Indicative of Innocence.

Defendants contend that Plaintiff has not alleged that the murder charges were dismissed in a manner indicative of innocence. This argument also fails. Under well-established Illinois case law, "a criminal proceeding has been terminated in favor of the accused when a prosecutor formally abandons the proceeding via a *nolle prosequi*, unless the abandonment is for reasons not indicative of the innocence of the accused." *Beaman v. Freesmeyer*, 2021 IL 125617, ¶ 109, *reh'g denied* (Sept. 27, 2021) (citing *Swick v. Liautaud*, 169 Ill.2d 502, 513 (1996). A nolle is "indicative of innocence" where surrounding circumstances show that a prosecutor lacks reasonable grounds to pursue the criminal charge. *Id.*[3]

This requirement is easily satisfied here. As Mr. Williams alleges, after his attorneys forced prosecutors to take a close look at the ShotSpotter evidence, the State dramatically changed course, opting to withdraw ShotSpotter evidence from the case completely. FAC ¶¶ 302–04. At the next court date, the prosecutor moved for dismissal of charges, nolle prosequi. *Id.* ¶ 305. In connection with that action, the prosecutor stated:

> We have since conducted a thorough reevaluation of the evidence in this case. All the video that was collected by the Chicago Police Department, statements taken, circumstantial evidence, we requested some additional forensic testing during our analysis, and after that review, Judge, it was our determination that we have insufficient evidence to proceed with the prosecution of Mr. Williams.

---

[3] Plaintiff is not required to plead that the nolle was entered because the State believed him to be factually innocent. *See Dobiecki v. Palacios*, 829 F. Supp. 229, 235 (N.D. Ill. 1993) ("any dismissal for lack of proof is generally considered indicative of innocence"). Defendants' argument implies that such a requirement exists, but they cite no authority for that proposition.

*Id.* ¶ 305. The State clearly admitted that there was insufficient evidence to proceed with criminal charges against Mr. Williams. Upon further questioning by the court, the State also admitted that ShotSpotter evidence had been used to secure the indictment against Mr. Williams. *Id.* ¶ 307. This admission supports an inference that charges never would have been brought in the first place if Defendant Evangelides (the only witness to testify before the grand jury, *Id.* ¶ 300, had given truthful information about the ShotSpotter evidence.

Thus, the prosecutors' admissions about its inability to prove guilt are more than sufficient to support a finding that the charges were dismissed in a manner indicative of Mr. Williams innocence. *See Gardley v. City of Chicago*, No. 20 C 5149, 2022 WL 6757610, at *9 (N.D. Ill. Oct. 11, 2022); *Brown v. City of Chicago*, No. 18 C 7064, 2022 WL 4602714, at *32 (N.D. Ill. Sept. 30, 2022); *Jordan v. City of Chicago*, No. 20-CV-4012, 2021 WL 1962385, at *6 (N.D. Ill. May 17, 2021); *see also Starks*, 946 F. Supp. 2d at 794.

Defendants' reliance on *Treece v. Village of Naperville*, 903 F. Supp. 1251, 1258 (N.D. Ill. 1995) is misplaced. As an initial matter, the proposition for which Defendants cite *Treece* (that it is "well-established the dismissal of charges based on the exclusion of evidence is not indicative of innocence") is untrue. Neither *Treece* nor any other case establishes such a broad proposition, and the caselaw says the opposite. *See Dobiecki v. Palacios*, 829 F. Supp. 229, 235 (N.D. Ill. 1993) ("particular circumstances of each case must be considered to determine whether the dismissal following suppression of evidence should be considered indicative of innocence"). Further, dismissal following suppression of evidence on technical grounds (for example, that the police obtained evidence during an unlawful search) might not be indicative of innocence, but exclusion of evidence on the basis that it is not reliable evidence of guilt is a wholly different matter. *Id.* at 235 ("If the circumstances show that unreliable evidence has been suppressed and the prosecution

then abandons the case because of lack of sufficient reliable evidence, that would be a circumstance where the dismissal is indicative of innocence . . . .").

Here, the ShotSpotter evidence was not excluded on technical grounds. The State abandoned the evidence when Mr. Williams's defense attorneys questioned its legitimacy, forcing prosecutors to confront its unreliability. FAC ¶¶ 302, 304. Following that decision, the State conceded to the Court that it lacked a basis to proceed with prosecution. These allegations support a finding that the *nolle* was indicative of Mr. Williams's innocence. *Dobiecki*, 829 F. Supp. at 235.

### 5. Plaintiff Williams Fourth Amendment § 1983 Malicious Prosecution Claim Survives Too.

Defendants argue that Plaintiff's Fourth Amendment malicious prosecution claim should be dismissed because it rises and falls on the same elements as Plaintiff's state law malicious prosecution claims. Defendants are incorrect. If the elements of a Fourth Amendment malicious prosecution claim are distinct from a *Manuel* claim, *see supra* 10, they also differ from Illinois tort law. For starters, as Defendants concede, "[t]o demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction." *Thompson v. Clark*, 142 S. Ct. 1332, 1335 (2022). A Fourth Amendment malicious prosecution claim also does not require a finding of intent or subjective malice separate from the absence of probable cause because the Supreme Court has "almost uniformly rejected invitations to probe subjective intent" in Fourth Amendment cases. *Ashcroft v. al-Kidd*, 563 U.S. 731, 737 (2011). Because the elements of the constitutional malicious prosecution claims are, if anything, less stringent than those under Illinois law, there is no question that Plaintiff has sufficiently pled all elements of the Fourth Amendment claim. Even if the constitutional claim were identical to the Illinois claim, Plaintiff has stated a claim. *See supra* 12–18.

### C. Mr. Williams Adequately Pleads Supervisory Liability, Failure to Intervene, and Conspiracy Claims.

Defendants next argue that Plaintiff has not properly pleaded supervisory liability, failure to intervene, and conspiracy.

#### 1. Mr. Williams Adequately Pleads Personal Involvement By Supervisory Defendants Costello and Dougherty.

Defendants Costello and Dougherty argue that they are entitled to dismissal because Mr. Williams does not plead their personal involvement in the violation of his constitutional rights. This argument lacks merit. Plaintiff alleges that Defendant Officers sought approval to charge Mr. Williams with first degree murder without probable cause, and that Defendant Costello gave them approval to proceed. FAC ¶¶ 291, 293. Similarly, Plaintiff alleges that Defendant Dougherty approved Defendant Officers' decision to arrest Plaintiff without probable cause. *Id.* ¶ 288. Contrary to Defendants' assertions, these actions constitute personal involvement. *See George v. City of Chicago*, No. 1:20-CV-06911, 2022 WL 832675, at *6 n.2 (N.D. Ill. Mar. 21, 2022).

Defendants' reliance on *Wilbon v. Plovanich*, 67 F. Supp. 3d 927, 943–44 (N.D. Ill. 2014) and *Lopez v. Vidljinovic*, No. 1:12-CV-5751, 2016 WL 4429639, at *2 (N.D. Ill. Aug. 22, 2016) is misplaced. Both involved dismissal of claims against supervisory defendants at summary judgment, after the parties developed factual records, and which were distinct from the pled facts here. In *Wilbon*, the record established that the defendants were not present for the events at issue and merely "processed paperwork" in connection with those events. *Wilbon*, 67 F. Supp. 3d at 943–44. In *Lopez*, the summary judgment record revealed that the defendant at issue was not present and had no knowledge of the alleged excessive force. *Lopez*, 2015 WL 442639, at *3.

At the pleading stage, Costello and Dougherty are not entitled to an inference, in their favor and in contradiction of the pled facts, that they had no knowledge of their supervisees' misdeeds.

19

### 2.    Mr. Williams Adequately Pleads Failure to Intervene.

Defendants advance three arguments in support of their position that Mr. Williams's failure to intervene claim (Count IX) should be dismissed, none of which have merit.

First, Defendants argue that this claim fails because it does not sufficiently detail the specific ways in which each individual defendant had an opportunity to intervene. Def. Mot. at 23. Defendants liken this case to *Barnhouse v. City of Muncie*, 499 F. Supp. 3d 578, 598 and *Beaman v. Souk*, No. 10-cv-1019, 2011 WL 832506, at *12 (C.D. Ill. 2011), where the failure to intervene claims were based solely on conclusory allegations. Contrary to Defendants' assertions, the allegations in this case are more specific. See FAC ¶¶ 36, 243–45, 247, 253, 274, 277, 279–289, 291–95, 300 (alleging how the Williams Defendant Officers each "participated in the investigation of Mr. Williams's case and contributed to this arrest and detention on false charges of murder," including detailing specific actions taken by specific officers). Nor do plaintiffs need to describe how each individual defendant had an opportunity to intervene. *Lietzow v. Vill. of Huntley*, No. 17 C 5291, 2018 WL 6248911, at *5 (N.D. Ill. Nov. 29, 2018) (plaintiff "need not allege specifically and explicitly how the Officers failed to intervene, so long as the narrative suggests that they could have acted to intervene but failed to do so"). The FAC is sufficient to put Defendants on notice of the claims against them; courts have denied motions to dismiss failure to intervene claims that allege similar levels of detail. *See, e.g.*, *id.*; *Baker v. City of Chicago*, 483 F. Supp. 3d 543, 559 (N.D. Ill. 2020); *Hyung Seok Koh v. Graf*, No. 11-CV-02605, 2013 WL 5348326, at *12 (N.D. Ill. Sept. 24, 2013).

Second, Defendants argue that Mr. Williams's failure to intervene claim fails because it does not specifically state which constitutional right was violated. Def. Mot. at 22. This facile argument ignores that all of Mr. Williams's constitutional claims are Fourth Amendment claims.

20

The complaint details how the Defendant Officers' actions gave rise to the unconstitutional arrest and prosecution. Defendants cannot seriously contend that the FAC does not given them notice.

Finally, Defendants invoke Judge Easterbrook's concurrence in *Mwangangi v. Nielsen*, 48 F.4th 816 (7th Cir. 2022), questioning whether there should be a § 1983 cause of action for failure to intervene. But the concurrence suggests *overturning* existing law, not applying it. *Id.* at 834. It plainly does not support dismissal of Mr. Williams's failure to intervene claim at the pleading stage.

### 3. Mr. Williams Adequately Pleads Conspiracy Claims.

Defendants seek dismissal of Mr. Williams's federal and state conspiracy claims on three grounds: that the complaint fails to allege a conspiracy, Def. Mot. at 16–19; that the intra-corporate conspiracy doctrine bars Plaintiff's claims, *id*. at 17; and that the state law conspiracy claim is duplicative of other state law claims, *id.* at 18–19. All three arguments fail.

First, the FAC lays out in detail the role that each Defendant Officer played in the faulty investigation and false arrest of Mr. Williams. Defendants contend that the Complaint does not plead specific agreements among Defendants. *Id.* at 16, 18. But the Seventh Circuit has explained that "more often" than "direct allegations of an agreement," plaintiffs will satisfy *Twombly* where they show "circumstantial allegations of an agreement, which are claimed facts that collectively give rise to a plausible inference that an agreement existed." *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 827 (7th Cir. 2019). So too here. The FAC contains a wealth of facts about the investigation and charges case that collectively support a plausible inference that the Defendant Officers reached an agreement to deprive Mr. Williams of his constitutional rights by falsely arresting and charging him with murder.

Second, the intra-corporate conspiracy doctrine is no bar to relief. A recent decision of this Court specifically rejected the views advanced by Defendants that (1) the intra-corporate

conspiracy doctrine applies in § 1983 actions to bar claims of conspiracy among officers; and (2) that unsettled Circuit precedent on this question is a basis for dismissal on qualified immunity grounds. *See Walker v. City of Chicago*, 559 F. Supp. 3d 747, 752–53 (N.D. Ill. 2021) (Guzmán, J.) (citing authorities and denying motion to dismiss conspiracy claims). The only authority cited by Defendants, Def. Mot. at 17, has been specifically rejected by this Court. *Walker*, 559 F. Supp. 3d at 752–53 (declining to follow *Haliw v. City of South Elgin*, No. 19 C 01515, 2020 WL 1304697, *9 (N.D. Ill. March 18, 2020)).

Third, Plaintiffs' state law conspiracy claim is not duplicative of other claims in the case. Analogous state law conspiracy claims in civil rights cases have routinely been permitted to proceed in this district beyond the pleading stage. *See, e.g.*, *Gibson v. City of Chicago*, No. 19-cv-4152, 2020 WL 4349855, at *12 (N.D. Ill. July 29, 2020); *Tillman v. Burge*, 813 F. Supp. 2d 946, 976–78 (N.D. Ill. 2011). Moreover, contrary to Defendants' assertion, the conspiracy claims here do not merely replicate other claims, but rather seek to "extend liability for the underlying tort to new defendants" and are "based on new facts." *Mission Measurement Corp. v. Blackbaud, Inc.*, 287 F. Supp. 3d 691, 725 (N.D. Ill. 2017). To the extent that any individual Defendant Officer is not personally liable for the underlying torts alleged here, the conspiracy claim "function[s] . . . to extend liability in tort beyond the active wrongdoer to those who have merely planned, assisted or encouraged the wrongdoer's acts." *Walton v. Diamond*, No. 12-cv-4493, 2013 WL 1337334, at *6 (N.D. Ill. Mar. 29, 2013). Moreover, actions of particular Defendants that may not be deemed tortious in isolation are actionable when part of an agreement to commit wrongdoing. *See, e.g.*, FAC ¶¶ 291–93 (various Defendant Officers taking last-minute investigative steps in an attempt to clear the way for charges to be approved after Mr. Williams's arrest). There is no basis to dismiss Plaintiff's conspiracy claims at the pleading stage.

### D. Mr. Williams Has Properly Alleged Claims Against All of the Named Defendant Officers.

The FAC devotes well over 100 paragraphs to describe in considerable detail the Defendant Officers' faulty investigation and lies that resulted in Mr. Williams's arrest and detention on false murder charges. Yet, remarkably, Defendants contend that the Complaint fails to give Defendants adequate notice of the claims against them. Def. Mot. at 1–9. These arguments lack any merit.

First, Defendants contend that "the counts do not contain sufficient factual matter" to make out claims. *Id.* at 1–2. This argument rests on a fundamental confusion: Defendants focus solely on the Counts toward the end of the FAC and ignore the detailed allegations in the body of the document. Each Count of the FAC incorporates the preceding allegations, which is permitted by Rule 10(c) so long as the complaint as a whole puts Defendants on notice. *See United States Sec. & Exch. Comm'n v. Winemaster*, 529 F. Supp. 3d 880, 907 (N.D. Ill. 2021); *Koh*, 2013 WL 5348326, at *5 n.3; *Douglas v. Alfasigma USA, Inc.*, No. 19-cv-2272, 2021 WL 2473790, at *9 (N.D. Ill. June 17, 2021). In fact, a plaintiff could draft a complaint without specifically enumerating any separate counts setting forth particular statutes or legal rules. *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992) (enumerating counts not required by the Rules). That Plaintiff has chosen to lay out his factual allegations at length and then summarize their counts more briefly is no grounds for dismissal.[4]

Second, Defendants argue that Mr. Williams's claims should be dismissed because the FAC engages in "group pleading." Def. Mot. at 2–4. But "[t]here is no 'group pleading' doctrine,

---

[4] The speciousness of Defendants' argument is apparent even on cursory inspection. For instance, Defendants contest the adequacy of Mr. Williams's false arrest claim, stating that "Count Four merely states conclusions of law, such as that 'Williams Defendant Officers falsely detained and arrested Plaintiff,' without providing any specific actions that officers took that were unconstitutional. Compl. ¶ 568–569.'" Def. Mot. at 2. But the argument willfully ignores that Court IV incorporates the prior paragraphs of the FAC which outline in detail the actions that the Defendant Officers took. *See supra* 1–3, 7–9. The argument has no substance.

*per se*, that either permits or forbids allegations against defendants collectively." *Robles v. City of Chicago*, 354 F. Supp. 3d 873, 875 (N.D. Ill. 2019). Rather, the critical question is whether the Defendants are reasonably on notice about what they are alleged to have done. *Id.* Here, they are. The FAC outlines each Defendant Officer's personal involvement and responsibility for the constitutional violations alleged such that they have notice of the claims against them. *See* FAC ¶¶ 243–48, 251–54, 274–300. The fact that at certain points—particularly in the Counts—the FAC refers to officers collectively in order to refer back to each of their individual participation in the alleged violations set forth earlier in the complaint does not deprive the officers of notice. *See Sopron v. Cassidy*, No. 19-cv-8254, 2022 WL 971563, at *5 (N.D. Ill. Mar. 31, 2022) ("[A]t the motion-to-dismiss stage, a plaintiff may generally name those responsible for the alleged violations, including by grouping Defendants into subgroups of individuals who are alleged to have acted jointly." (quotation marks omitted)); *Martinez v. Wexford Health Servs., Inc.*, No. 3:18-CV-50164, 2021 WL 1546429, at *3 (N.D. Ill. Apr. 20, 2021); *Sibley v. Dart*, No. 17-cv-6298, 2019 WL 670270, at *4 (N.D. Ill. 2019).

Third, Defendants contend that the complaint lacks factual specificity in its claims against some officers. Def. Mot. at 3–8. This argument also misses the mark. As an initial matter, Defendants cannot seriously contend that FAC fails to make specific allegations against the detectives who led the faulty investigation. Defendants Potter and Evangelides are on notice, *see supra* 1–3, 7–9, as are the detectives and officers who actively contributed to the investigation. *Compare* Def. Mot. at 6–8 *with* FAC ¶¶ 240–51, 270–92 (describing the role that specific Defendants played in gathering evidence that did not support charges against Mr. Williams).

Fourth, contrary to Defendants' facile assertion, there is no "factual inconsistency" between paragraphs 26 and 287 of the FAC. Def. Mot. at 4. Paragraph 26 names all of the

Defendant officers who were responsible for any of Plaintiff's injuries, while paragraph 287 offers specific detail about the officers who formally arrested Mr. Williams on August 28. The FAC, read in full, properly names those responsible for Mr. Williams's unconstitutional arrest and detention.

Rule 8(a) is "not so rigid that it requires a plaintiff, without the benefit of discovery, to connect every single alleged instance of misconduct in the complaint to every single specific officer." *Koh*, 2013 WL 5348326, at *4. To the extent that this Court determines that additional facts could provide Defendants with more abundant notice, Plaintiffs contend that that is the role of discovery, not grounds for dismissal on a Rule 12(b)(6) Motion. "While a plaintiff whose complaint relies on group pleading must eventually tie particular officers to particular injuries to survive summary judgment, at the pleading stage, a plaintiff may generally name those responsible for the alleged violations, including by grouping Defendants into subgroups of individuals who are alleged to have acted jointly." *Gray v. City of Chicago*, No. 18 C 2624, 2019 WL 3554239, at *5 (N.D. Ill. Aug. 1, 2019) (internal quotation marks and citation omitted).[5]

## II.     PLAINTIFF ORTIZ HAS PROPERLY PLEADED ALL OF HIS CLAIMS.

Defendants argue that Mr. Ortiz's Fourth Amendment claims should be dismissed for failure to state a claim. Def. Mot. at 25–27. Defendants' argument, however, is nothing more than a plea for the Court to draw inferences in the Officers' favor and overlook Mr. Ortiz's allegations. The Court must again decline this invitation.

### A.     Plaintiff Ortiz Was Stopped Without Reasonable Suspicion In Violation Of The Fourth Amendment.

Officers Powar and Matias were not entitled to stop Mr. Ortiz based on the ShotSpotter alert, and they do not even attempt to argue otherwise. Instead, they ask the Court to imagine a different set of facts not found in the FAC and ask the Court to draw inferences in their favor to

---

[5] Mr. Williams concedes that his IIED claim is time-barred and no longer pursues it. *See* Def. Mot. at 24.

justify the Defendant Officers' actions. Def. Mot. at 26–27. For example, Defendants ask the Court to speculate that perhaps the "odor of cannabis" was the basis for the *Terry* stop. Def. Mot. at 26. But the Complaint does not allege any such thing and in fact makes clear that police officers discovered the cannabis in Mr. Ortiz's car well after police had already detained Mr. Ortiz illegally. FAC ¶¶ 384–87. Similarly, Defendants ask the Court to imagine that the officers stopped Mr. Ortiz for "evasive behavior," but as the FAC alleges, Mr. Ortiz was not doing anything "evasive" but merely going about his day and walking back into the laundromat from his car to finish his laundry when Officers Powar and Matias grabbed him. FAC ¶¶ 360–64.

The Complaint clearly alleges that the Defendant Officers stopped Mr. Ortiz solely because they were aggressively investigating a ShotSpotter alert and happened upon him. Defendants baldly assert that the FAC contains "no support for this accusation that the reason he was detained was the ShotSpotter alert," Def. Mot. at 26, but the FAC is in fact replete with support for that proposition. For instance, the Defendant Officers were shouting questions at Mr. Ortiz about a shooting when they stopped him, FAC ¶ 362; they told Mr. Ortiz and his friend that they were investigating shots fired and repeatedly questioned them about gunshots, *id.* ¶¶ 371, 378; an officer showed Mr. Ortiz the ShotSpotter alert that dispatched police and explicitly told him that they were there to investigate supposed gunshots, *id.* ¶ 376; Defendant Officers investigated the scene and reviewed surveillance footage specifically to look for evidence of gunshots, *id.* ¶¶ 372–73; and even after Defendant Officers found no corroboratino of gunfire after searching Mr. Ortiz, his car, and the surrounding area, Officer Matias told Officer Powar that ShotSpotter's report of supposed gunfire "had to be" Mr. Ortiz, *id.* ¶ 380. In fact, Officers Powar and Matias were so focused on Mr. Ortiz as a shooting suspect that even after Mr. Ortiz was arrested and his car impounded, Officer Powar persisted in searching his car a second time looking for a gun because

he continued to believe—based on just the ShotSpotter alert—that Mr. Ortiz must have fired a gun. *Id.* ¶ 379. The Complaint could hardly provide more corroboration of the claim that Mr. Ortiz was stopped because of the ShotSpotter alert. What Defendants ask the Court to do is to ignore the Complaint, draw inferences in favor of the Defendant Officers, and assume that they must have had some legal basis to stop Mr. Ortiz. The Court cannot do so.

Notably, Defendants do not attempt to argue that the ShotSpotter alert on its own supplied reasonable suspicion for the *Terry* stop. Because the FAC plainly alleges that the alert was the only basis for the stop, this amounts to a concession that Plaintiff has stated a Fourth Amendment claim. Indeed, as Plaintiff explained in his response to the City Defendants' motion to dismiss, ECF No. 63 at 5, ShotSpotter alerts cannot form the basis for *Terry* stops because (1) the system has never been subjected to any testing to determine the rate of false alerts, violating the threshold reliability requirement of *Florida v. Harris*, 568 U.S. 237, 245 (2013); (2) ShotSpotter alerts are at best "analogous to an anonymous tipster" and therefore can never justify a seizure without "independent[] confirm[ation]" of gunfire, *United States v. Rickmon*, 952 F.3d 876, 882 (7th Cir. 2020); and (3) the limited information they provide—*i.e.* the rough location of a noise that may or may not have been gunfire several minutes before officers arrive—is not sufficient to establish individualized suspicion, *United States v. Bohman*, 683 F.3d 861, 861 (7th Cir. 2012). Plaintiff has stated a claim for a *Terry* stop in violation of the Fourth Amendment.

### B. Plaintiff Ortiz Has Adequately Pleaded Failure to Intervene.

Mr. Ortiz has properly pleaded a failure to intervene claim against Defendants Powar and Matias. "To state a claim for failure to intervene under § 1983, a plaintiff must plead that the law enforcement officer '(1) had reason to know that a fellow officer was using excessive force or committing a constitutional violation, and (2) had a realistic opportunity to intervene to prevent the act from occurring.'" *Campbell v. City of Chicago*, No. 17-cv-4467, 2018 WL 4352614, at *5

27

(N.D. Ill. Sept. 12, 2018) (quoting *Lewis v. Downey*, 581 F. 3d 467, 472 (7th Cir. 2009). Here, Mr. Ortiz has pleaded detailed facts which support the reasonable inference that Defendants Powar and Matias had multiple opportunities to stop the other officer from escalating the violations of Mr. Ortiz's rights. For example, Defendant Matias had a reasonable opportunity to intervene when Defendant Powar "approached Mr. Ortiz aggressively and ordered [him] to respond to questions" and "pursued Mr. Ortiz, continuing to order him to answer questions and attempting to detain him, without a reasonable basis." FAC ¶¶ 362–364. Likewise, when Defendant Powar emerged from the Family Dollar after reviewing footage that showed no evidence of a recent gunshot nearby, he had the opportunity to stop Defendant Matias from continuing to seize Plaintiff Ortiz. *Id.* ¶ 373.

Defendants argue that there can be no failure to intervene claim because Defendants Powar and Matias are both the "primary actors" and "cannot fail to intervene in their own conduct." Def. Mot. at 26 (citing *Thompson v. Village of Monee*, No. 12-cv-5020, 2013 WL 3337801, at *13 (N.D. Ill. 2013)). But, of course, Powar and Matias are two different people and each one failed to intervene in the conduct of *the other*. The cases Defendant cite merely stand for the obvious propositions, not at issue here, that a person cannot be held liable for failing to intervene in their *own* conduct or if they are not present to intervene. *See Thompson*, 2013 WL 3337801 at *13 (allowing failure to intervene claims to move forward against officers at the scene); *Flint v. City of Milwaukee*, 91 F. Supp. 3d 1032, 1050 (E.D. Wis. 2015) (observing that "[w]hether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise" (quoting *Lanigan v. Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467, 478 (7th Cir.1997))). Mr. Ortiz's claims are precisely that the officers were capable of preventing one another's violations. *See Campbell*, 2018 WL 4352614, at *5 ("[A] defendant

police officer may be held to account both for his own use of excessive force on the plaintiff, as well as his failure to take reasonable steps to attempt to stop the use of excessive force used by his fellow officers." (quoting *Sanchez v. City of Chicago*, 700 F.3d 919, 925–26 (7th Cir. 2012))).

### C. Plaintiff Ortiz Has Adequately Pleaded Conspiracy Claims.

Defendant Officers devote a single sentence to Mr. Ortiz's conspiracy claim stating, in full, that it should "also be dismissed as it is vague, conclusory and lacks an underlying constitutional violation." Def. Mot. at 27. This argument is again so perfunctory that it should be deemed waived. *Gates*, 331 F. Supp. 2d at 673 (citing *Berkowitz*, 927 F.2d at 1384). Nevertheless, the FAC easily satisfies the pleading standard for conspiracy because "it is enough . . . merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002); *Brokaw v. Mercer*, 235 F.3d 1000, 1016 (7th Cir. 2000). The FAC alleges in detail how Defendants Powers and Matias committed numerous acts in furtherance of the general purpose of violating Mr. Ortiz's constitutional rights by illegally detaining him. FAC ¶¶ 414–17, 424–34, 455–56, 462–68. Moreover, for the reasons stated above, to the extent Defendants' argue supposed duplication of claims, that argument also fails. *See supra* 22.[6]

## III. PLAINTIFF SCRUGGS HAS PROPERLY PLEADED ALL OF HIS CLAIMS.

Defendants concede that Mr. Scruggs has properly pleaded his Fourth Amendment claim alleging that Defendant Officers stopped him twice without reasonable suspicion. Their arguments for dismissal of his other claims misstate or misunderstand the FAC. Def. Mot. at 27–33.

---

[6] In their argument against Mr. Ortiz's conspiracy claims Defendants do not raise points they make elsewhere invoking the intra-corporate conspiracy doctrine and the notion that conspiracy claims are "duplicative." Def. Mot. at 27. Even if they had, those arguments would fail for the reasons discussed already. *See supra* 21–22.

**A.** **Defendants Concede that Plaintiff Scruggs Was Subject to Two Unconstitutional *Terry* Stops; He Likewise Has a Fourth Amendment Claim Because the First Stop Escalated to the Level of an Arrest.**

Defendant Officers stopped Mr. Scruggs without reasonable suspicion in response to a bogus ShotSpotter alert on July 18, 2022, and Defendants Legorreta and Andrews did so again the next evening when they returned to continue the investigation of the same alert. FAC ¶ 442. Mr. Scruggs has alleged that both of these *Terry* stops violated the Fourth Amendment because they were without reasonable suspicion. *See id*. Count XVII. Defendant Officers do not move to dismiss this Count. *See* Def. Mot. at 28 (acknowledging Plaintiffs' *Terry* claim found in Count XVII and failing to contest it). Defendants thus concede that this Count can move forward.

Defendants train their fire exclusively on Plaintiff Scruggs's false arrest claim, Count XVIII. Def. Mot. at 27–31, but their arguments miss the mark. Plaintiff clarifies that in Count XVIII he is only asserting a claim that he was subject to arrest without probable cause on July 18, 2022, when the *Terry* stop prompted by the ShotSpotter alert escalated into an arrest. With respect to the encounter the next day, July 19, Plaintiff does *not* contend that his pretextual misdemeanor arrest (for not carrying his Permanent Employee Registration Card) was illegal; he only contends that the *Terry* stop that preceded that arrest was unconstitutional. Defendants' arguments seeking to dismiss claims with respect to the July 19 arrest are therefore inapt. *See id*. at 30–31 (asserting that probable cause existed for the July 19 misdemeanor arrest); *id.* at 29–30 (seeking dismissal of Defendants Keckley and Jane Doe because they were not present on July 19).

Mr. Scruggs's seizure on July 18, however, did rise to the level of an arrest, contrary to Defendants' assertion. *See* Def. Mot. at 27–28. Defendants Legoretta, Andrews, Keckley, and Doe "exceeded the bounds of a limited *Terry* detention," *Matz v. Klotka*, 769 F.3d 517, 527 (7th Cir. 2014), when they handcuffed Mr. Scruggs and placed him in the back of a police cruiser for 20 minutes, during which he was not free to leave. FAC ¶ 446

The Seventh Circuit has affirmed that "using handcuffs generally signifies an arrest, which requires probable cause and not the less demanding reasonable suspicion standard that permits only a brief and minimally intrusive detention." *Matz*, 769 F.3d at 527; *accord Ramos v. City of Chicago*, 716 F.3d 1013, 1018 (7th Cir. 2013). While in some cases, the Seventh Circuit has "recognized exceptions for concerns such as officer safety" that permitted the application of handcuffs within the scope of a *Terry* stop, those "should not be read to imply that the use of handcuffs and more intrusive measures will not be a significant factor in assessing whether officers have exceeded the bounds of a limited *Terry* detention" *Matz*, 769 F.3d at 527. Whether "hallmarks of formal arrest" such as handcuffs can be used in the context of a *Terry* stop depends on "the suspect's own behavior in resisting an officer's efforts," and "whether the surrounding circumstances would support an officer's legitimate fear for personal safety," warranting the application of such force in the context of a mere investigatory stop. *Id.* at 526.

In this case, Mr. Scruggs was entirely cooperative with police and there was no justification for applying handcuffs or placing him in the back of a squad car. After Defendants first detained him, Mr. Scruggs allowed Officer Legorreta to take his firearm without incident. FAC ¶ 423. He went inside the AutoZone with Officer Legorreta voluntarily and retrieved his wallet for Officer Legorreta to inspect. *Id.* ¶ 438. He answered questions freely and assisted Officer Legorreta by calling the AutoZone manager over to come speak with him about getting access to surveillance footage. *Id.* ¶ 439. Mr. Scruggs was on the job, in uniform, working as a security professional and contracted by AutoZone to keep its premises safe. *Id.* ¶ 484. Mr. Scruggs posed no conceivable threat. Nevertheless, Officer Legoretta placed Mr. Scruggs in handcuffs, and he did so *after* Mr. Scruggs had just spent several minutes assisting the Defendant Officers' investigation inside the

AutoZone. *Id.* ¶ 441. There was simply no justification for the application of handcuffs and other "hallmarks of formal arrest" in the context of this *Terry* stop. Mr. Scruggs was arrested.

Mr. Scruggs's arrest on July 18 was unconstitutional because it was without probable cause. Defendants do not attempt to argue that there was probable cause for an arrest that day, nor could they, having conceded that Mr. Scruggs has properly pleaded that the initial *Terry* stop was made without reasonable suspicion. *See supra* 30; *Rickmon*, 952 F.3d at 881 ("[R]easonable suspicion is a lower threshold than probable cause.") (internal quotation omitted). Plaintiff Scruggs has properly pleaded that we was arrested on July 18 in violation of the Fourth Amendment.

### B.     Plaintiff Scruggs Has Adequately Pleaded Failure to Intervene.

Defendants seek to dismiss Plaintiff Scruggs's failure to intervene claim for the same reasons they offer against Plaintiff Ortiz, including the specious notion that multiple officers cannot be held liable for failing to intervene in one another's misconduct. Def. Mot. at 31–32. The arguments fail against Defendant Scruggs too. *See supra* 27–29. Moreover, as Defendants recognize, Def. Mot. at 31, Mr. Scruggs brings claims not just against the two officers who first seized him (Legorreta and Andrews), but also the two who arrived to continue the seizure (Keckley and Jane Doe). Each one failed to intervene. For example, Defendant Andrews stood by as he observed Defendant Legoretta fabricate the claims that Mr. Scruggs's firearm was missing a round and hot. FAC ¶¶ 424–34. Defendant Keckley advised others that she knew they didn't have enough evidence to arrest Mr. Scruggs and yet she stood by while Mr. Scruggs remained handcuffed. *Id.* ¶ 455. Plaintiffs have pleaded that each Defendant Officer knew of the unconstitutional conduct, could have stopped it, but did not. *See Campbell*, 2018 WL 4352614, at *5.

### C.     Plaintiff Scruggs Adequately Pleads Conspiracy Claims.

Defendants seek to dismiss Mr. Scruggs's state and federal conspiracy counts for the same reasons they offer against Mr. Williams. Their arguments fail for the same reasons. *See supra* 21–

22 (discussing arguments that conspiracy claims are duplicative and barred by the intra-corporate conspiracy doctrine). Plaintiff Scruggs's allegations against the four Defendant Officers are detailed and evince a conspiracy, which is often established "from circumstantial evidence and inferences … coupled with commonsense," *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 66 (1994). For instance, Defendants Legorreta and Andrews both stated that Plaintiff Scruggs'ss firearm was missing a bullet and was hot in an effort to manufacture false corroboration of their suspicion, based solely on the ShotSpotter alert, that Mr. Scruggs had fired his weapon. *Id.* ¶¶ 431–34. All four Defendants agreed to continue Mr. Scruggs's detention and arrest that evening. Defendants Legoretta and Andrews decided to come back the following evening to detain Mr. Scruggs again even after being ordered by a Sergeant to release him the day before, *id.* ¶¶ 456, 463, powerfully evincing a conspiracy to violate Mr. Scruggs's rights. Defendants' rote argument, like so much of their motion, simply ignores the detailed allegations of the Complaint and should be rejected.

### D. Plaintiff Scruggs Has Adequately Pleaded False Imprisonment/False Arrest.

Plaintiff Scruggs has properly alleged state law false imprisonment and false arrest claims that parallel his federal Fourth Amendment claims and are well-pleaded for much the same reasons. FAC ¶¶ 670–676. The elements for Illinois false arrest and false imprisonment claims are the same: "that the plaintiff was restrained or arrested by the defendant, and that the defendant acted without having reasonable grounds to believe that an offense was committed by the plaintiff." *Meerbrey v. Marshall Field & Co.*, 139 Ill.2d 455, 474 (1990). Mr. Scruggs alleges these claims with respect to (1) the investigatory stop on July 18, 2022, that subsequently rose to the level of an arrest, and (2) the investigatory stop the following day, July 19, 2022, up until the point where the officers found probable cause to determine that he may have been committing a misdemeanor by working as an armed security guard without his PERC card.

Defendants do not argue that Plaintiff's allegations regarding these two incidents fail to support claims for false arrest or false imprisonment, nor do they argue that there was reasonable grounds for either period of restraint. Def. Mot. at 33. Instead, Defendants focus exclusively on the lawfulness of Plaintiff's misdemeanor arrest on July 19, which Plaintiff does *not* challenge here. *Id.* Defendants have simply made no argument that the FAC fails to state a claim that they illegally restrained Mr. Scruggs's on July 18 and 19 before the misdemeanor arrest. Mr. Scruggs's false imprisonment/false arrest claims are thus uncontested at the pleading stage.

## IV.    PLAINTIFFS' CLAIMS ARE NOT BARRED BY QUALIFIED IMMUNITY.

The Defendant Officers seek dismissal of Plaintiffs' claims on the basis that they are entitled to "qualified immunity" for relying on ShotSpotter. Def. Mot. at 33. As an initial matter, "a complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds." *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001). "[T]he plaintiff is not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity." *Id.* (quoting *Jacobs v. City of Chicago*, 215 F.3d 758, 765 n.3 (7th Cir. 2000).

Defendants, however, do not actually make a qualified immunity argument: they point to no absence of clearly established law and cite no cases in support. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (qualified immunity only protects officers whose "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"). Instead, Defendants' "qualified immunity" argument is just an effort to recast the record and seek a merits ruling that their conduct was "reasonable," despite the allegations in the FAC.

Again the Defendants would upend the motion to dismiss standard to have this Court determine that the Williams Defendant Officers used the ShotSpotter alert in a reasonable way. Def. Mot. at 34. Despite Defendants' attempt to confuse the issues, the allegations are clear: The Defendant Officers intentionally misused the ShotSpotter alert to falsely pinpoint the shot's

supposed "exact location" and falsely swear to the court and grand jury that the fatal shot came from inside Mr. Williams's car. FAC ¶¶ 8, 251–59, 262–63, 266, 284, 294, 300. Providing false and unsupported testimony to obtain probable cause is not "reasonable;" it is in fact a violation of clearly established law. *See supra* 7–8 (citing controlling precedents).

In Mr. Ortiz's and Scruggs's cases, by contrast, there was evidently no gunfire. FAC ¶¶ 382, 458–61. The officers used ShotSpotter to target Mr. Ortiz and Mr. Scruggs despite ShotSpotter's propensity to trigger false alerts to noises that are not gunfire and to lead officers to find nothing the vast majority of the time. FAC ¶¶ 44–67. This was not "reasonable" but a violation of well established law, foreclosing qualified immunity. The Seventh Circuit has put officers clearly on notice that ShotSpotter "is analogous to an anonymous tipster" and cannot serve to establish reasonable suspicion on its own. *Rickmon*, 952 F.3d at 882. Where, as in Mr. Scruggs's and Ortiz's cases, officers initiate an investigatory stop based on an uncorroborated ShotSpotter alert, they violate clearly established law and are not entitled to qualified immunity. *See* FAC ¶¶ 349–392, 410–462. Defendant Officers baldly assert that there is no precedent governing how officers may use ShotSpotter, Def. Mot. at 35, but their motion omits any mention of *Rickmon* despite the fact that Plaintiffs cite it explicitly in the Amended Complaint. FAC ¶ 130.[7] Defendants are not entitled to qualified immunity. All of the Plaintiffs' claims are well-pleaded and should proceed.

## CONCLUSION

Plaintiffs have properly pleaded their claims. Defendant Officers' scattershot motion to dismiss does not identify any causes of action for which Plaintiffs have failed to state a plausible claim for relief, except for the time-barred IIED claim. The motion should be denied.

---

[7] The holdings in *Harris*, 568 U.S. at 245, and *Bohman*, 683 F.3d at 864, are likewise clearly established governing law and also preclude qualified immunity for the Scruggs and Williams Defendant Officers.

Respectfully submitted,

/s Jonathan Manes
Jonathan Manes
Alexa Van Brunt
MacArthur Justice Center
160 E. Grand Ave., 6th Fl.
Chicago, Illinois 60615
(312) 503-0012
jonathan.manes@macarthurjustice.org

Elizabeth Mazur
Hughes Socol Piers Resnick & Dym
70 W. Madison Street, Suite 4000
Chicago, IL 60602
(312) 580-0100
emazur@hsplegal.com

Daniel Massoglia
First Defense Legal Aid
601 S. California Ave.
Chicago, Illinois 60612
(708) 797-3066
daniel@first-defense.org

*Attorneys for Plaintiffs*

Dated: February 13, 2023