IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL WILLIAMS, LUCY PARSONS LABS, DANIEL ORTIZ, and DERICK SCRUGGS, on behalf of himself and a class of similarly situated people. ) ) ) ) ) | |
| Plaintiffs, ) | Case No. 22-cv-3773 |
| ) | |
| v. ) | Judge Lindsay C. Jenkins |
| ) | Magistrate Judge Young B. Kim |
| CITY OF CHICAGO, et al. ) | |
| ) | |
| Defendants, ) | |

**PLAINTIFF'S MOTION FOR LEAVE TO SERVE A
SUPPLEMENTAL REQUEST FOR PRODUCTION
ON DEFENDANT CITY OF CHICAGO**

Plaintiff Michael Williams respectfully submits this motion for leave to serve one additional Rule 34 request for production of records upon Defendant City of Chicago. Plaintiff submits this motion pursuant to the Court's Order of May 17, 2023 (ECF No. 99) directing the parties to seek leave from the Court to serve supplemental written discovery requests. In support of this motion, Plaintiff states as follows:

**Background**

1. Plaintiff Williams brings this action because Defendant Officers falsely accused him of shooting Safarian Herring while Plaintiff gave Mr. Herring a lift home in his Toyota RAV4.

2. In fact, Mr. Williams did not shoot Mr. Herring. As Mr. Williams told the Defendant Officers, Mr. Herring was shot by an unknown gunman in a car that pulled up immediately alongside Mr. Williams's car, fired through Mr. Williams's open window, and struck Mr. Herring in the head. Am. Compl. ¶ 7. The fatal shot was fired as both cars were stopped, facing a red light heading northbound on S. Stony Island Avenue at the corner of E. 63rd Avenue.

1

3. Video footage from a City Police Observation Device ("POD") camera shows that, indeed, a vehicle pulled up in the left-turn lane immediately alongside Mr. Williams's car. *Id.* ¶ 266. The video shows that this car was a black Dodge Charger sedan. The fatal shot is fired outside of the view of the POD camera and is not captured on video. However, the video shows the moments immediately afterwards, when the black Dodge Charger peels through the red light, turning left and speeding away down E. 63rd Avenue. The video shows Mr. Williams's RAV4 accelerating straight through the red light a moment later. *Id.*



(Still image taken from POD camera looking north-east across the intersection of S. Stony Island Ave. and E. 63rd Ave.)[1]

**Plaintiff's Newly-Discovered Evidence**

4. The black Dodge Charger sedan pictured above contains the true perpetrator of crime.

---

[1] The POD video from which this image was taken was obtained by Plaintiffs in response to a prior FOIA request and was disclosed in discovery at Williams 003412. The video appears to have been inventoried as evidence by the Defendant Officers during their investigation, but Plaintiffs have not yet received disclosure of the video or other inventoried media in response to their original Requests for Production to the City.

5. During this case, Plaintiff's counsel has endeavored to learn information about the black Dodge Charger and any information about its occupants and movements. At the outset of the case, Plaintiff's counsel served discovery on the Williams Defendant Officers asking them to explain what, if anything, they did to find the occupants of the dark sedan or determine its license plate number. *See* ECF No. 77-7, at 4–5 (Defendant Evangelides's Response to Plaintiff's Interrogatory No. 6). The Defendant Officers responded only that "efforts were made to determine the license plate number of the dark sedan . . . for the purpose of identification." *Id.* at 4. However, the only such effort described in the interrogatory responses is "reviewing camera footage that may have captured the dark sedan in the vicinity of the shooting." *Id*. These "efforts . . . were met with negative results." *Id.* According to the Defendant Officers' interrogatory responses, only Defendants Evangelides and Roney recall reviewing video footage in an attempt to identify the dark sedan. None describe any other efforts to identify the car or find its occupants.

6. In response to a Freedom of Information Act ("FOIA") request to the Chicago Police Department ("CPD"), Plaintiff's counsel obtained a document on June 27, 2023, that reveals the following. *See* Exhibit A (Original Case Incident Report).

7. A little more than 30 minutes before the shooting at issue in this case, a black Dodge Charger was carjacked at gunpoint by two young men, both armed with black handguns. Ex. A, at 1, 3. The gunmen forced two victims out of the car, robbed one of them of her handbag, and fled in the vehicle. The armed carjacking happened at the BP gas station at the corner of S. Stony Island Avenue and 66th Avenue. Ex. A, at 3. That is three blocks from where Mr. Herring was later struck by a bullet that came from a black Dodge Charger.

8. The carjacked Dodge Charger is the same color, make, and model as the vehicle that pulled up next to Mr. Williams's car at the corner of S. Stony Island Avenue and E. 63rd Avenue.

9. The carjacking was reported to police at 11:17 p.m. on May 31, 2020, which is 29 minutes before the shooting in this case.

10. The lone document CPD produced in response to Plaintiff's FOIA Request is redacted but shows that the incident is assigned Records Division (RD) number JD249126. Ex. A, at 1. The report also appears to show that two detectives were assigned to the case. One of the detectives is identified as part of Unit 610, *see* Ex. A, at 3, which is the same unit listed for Defendant Evangelides in documents previously produced by the City in discovery.

**Request for Leave to Obtain Supplemental Discovery**

11. Plaintiff seeks leave to file a supplementary Rule 34 request to obtain all records concerning this carjacking incident, RD# JD249126, including materials that may be subject to FOIA exemptions. *See* ECF No. 89 ¶ 2(a) (Confidentiality Order providing for designation of materials exempted by FOIA).

12. The Court may permit supplemental discovery for good cause. *See* Rule 16(b)(4). The Court has directed that "[i]f the parties wish to serve supplemental written discovery requests, they must seek leave of court by filing a motion and attaching the proposed set of supplemental requests as an exhibit thereto." ECF No. 99.

13. The specific wording of Mr. Williams's proposed request for production is attached here as Exhibit B.

14. There is good cause to grant leave for Plaintiff to serve this supplemental Rule 34 request because CPD's records regarding the carjacking incident are likely to contain powerful

evidence that is directly relevant to Mr. Williams's claims and the Defendant Officers' potential defenses. For instance, records from the investigation of the armed carjacking are likely to include:

    a. Security footage of the black Dodge Charger and the armed assailants hijacking it at the BP gas station, which may confirm it was the same Dodge Charger from which Mr. Herring was shot.

    b. Other video footage or images of the black Dodge Charger.

    c. The license plate, VIN number, or other identifying features of the hijacked black Dodge Charger, which may match details of the Dodge Charger from which Mr. Herring was shot.

    d. Location information from a stolen-vehicle tracking system that may have been installed in the black Dodge Charger. (This is a factory-installed feature in many Dodge vehicles.)

    e. Records and images from Automated License Plate Readers showing the location and movements of the black Dodge Charger after it was carjacked on May 31, 2020 that may place it at the scene of the shooting.

    f. Information about whether, when, and where the black Dodge Charger was recovered after it was carjacked.

    g. If recovered, evidence from the black Dodge Charger, including physical or forensic evidence that may corroborate a link to the shooting of Mr. Herring.

    h. Information about whether the black Dodge Charger or the people who hijacked it were suspected of involvement in any other crimes.

    i. Information regarding any suspects or witnesses in connection with the carjacking who may be able to corroborate a link to the shooting of Mr. Herring.

    j. Records of any flash alerts, bulletins, database entries, reports, or other pieces of information concerning the carjacking that were available to Defendant Officers investigating the murder of Mr. Herring.

    k. Information about the police officers and detectives who were involved in investigating the carjacking, including whether those officers or detectives worked out of the same police district (District 3), detective area (Area 1), team, and/or units to which the Defendant Officers here were assigned.

    l. Any other information that was available to Defendant Officers that may have corroborated a link between the armed hijacking of the black Dodge Charger and the shooting of Mr. Herring from a black Dodge Charger a few blocks away soon thereafter.

15. Records from this carjacking investigation are plainly relevant and material to the issues in this case. Any information tending to show that the carjacked Dodge Charger was the vehicle that pulled up next to Mr. Williams's car would powerfully corroborate Mr. Williams's consistent account of how Mr. Herring was killed and would strongly support his innocence.

16. Defendants will undoubtedly attempt to defend this case by contending that Mr. Williams actually committed the murder of Mr. Herring. Evidence tending to further establish Mr. Williams's innocence is thus directly relevant to the issues that will be presented to the jury at trial.

17. In addition, records from the investigation of the carjacking may well show that the Defendant Officers were aware of or had ready access to information that corroborated Mr. Williams's account of how Mr. Herring was shot. Such information would help Mr. Williams establish the absence of probable cause, which is relevant to Plaintiff's malicious prosecution and Fourth Amendment claims. *See BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986) ("A police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest. Reasonable avenues of investigation must be pursued . . . ."); *Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999) ("[E]vidence that tends to negate the possibility that a suspect has committed a crime is relevant to whether the officer has probable cause.").

18. Evidence tending to corroborate Mr. Williams's account is especially probative on the question of probable cause because a prominent part of the Defendant Officers' asserted basis for arresting Mr. Williams was supposed inconsistencies between the description of events that Mr. Williams provided to them and evidence supposedly developed by the Defendant Officers during their investigation. Am. Compl. ¶ 283.

19. The records of the investigation may also reveal when information about the carjacking became available to police and Defendant Officers. Such information remains relevant

6

even if it was developed after Mr. Williams was arrested in late August 2020 because "continuation of even a lawful arrest violates the Fourth Amendment when the police discover additional facts dissipating their earlier probable cause." *BeVier*, 806 F.2d at 128; *see also Evett v. DETNTFF, Etc.*, 330 F.3d 681, 688 (5th Cir. 2003) ("[W]hile law enforcement personnel may rely on the totality of facts available to them in establishing probable cause, they also may not disregard facts tending to dissipate probable cause.") (internal citation and quotation marks omitted); *United States v. Lopez*, 482 F.3d 1067, 1073 (9th Cir. 2007) ("A person may not be arrested, or must be released from arrest, if previously established probable cause has dissipated."); *United States v. Dalton*, 918 F.3d 1117, 1128 (10th Cir. 2019) ("[P]robable cause becomes stale when new information received by the police nullifies information critical to the earlier probable cause determination.").

20. Plaintiff should also be permitted to use any relevant materials from the carjacking investigation at the depositions of the Defendant Officers. Depending on what those materials reveal, Plaintiff's counsel may wish to ask the Defendant Officers whether they had access to particular records from the carjacking investigation; whether they were assigned to the carjacking investigation or had contact with the detectives assigned to the carjacking investigation; whether they made any effort to look up Dodge Chargers involved in armed violence nearby; whether the evidence of the carjacking investigation tends to corroborate the truthfulness of Mr. Williams's account; and similar questions that would illuminate the role such information played (or could have played) in the investigation and the fact that such information vindicates Mr. Williams's innocence. These lines of questioning are highly relevant as "law enforcement officers have a duty to conduct a reasonably thorough investigation prior to arresting a suspect." *Kuehl*, 173 F.3d at

650 ("[P]robable cause does not exist when a 'minimal further investigation' would have exonerated the suspect.").

21. There is also good cause to permit Plaintiff to serve supplemental discovery because Plaintiff has acted expeditiously to make this request and it will not unduly delay the discovery process in this case. Counsel only learned of the existence of the carjacking last week, following a diligent FOIA-based investigation, and has now immediately sought leave for supplemental discovery. Moreover, Defendant City of Chicago is still engaged in the process of gathering and producing documents in response to Plaintiffs' initial Rule 34 requests. For instance, Plaintiff still awaits disclosure of much of the evidence upon which Defendant Officers relied, including inventoried videos and other media files. This supplemental request would thus be served while the parties are still very much engaged in the process of completing written discovery. Moreover, none of the Defendant Officers has yet been deposed.

22. The supplemental request is timely and is narrowly targeted to obtain information that could powerfully establish Mr. Williams' claims and undermine the Defendant Officer's defenses.

**WHEREFORE**, Mr. Williams respectfully asks the Court to grant leave to serve the supplemental Rule 34 request attached hereto as Exhibit B.

Respectfully submitted,

/s/Jonathan Manes
Jonathan Manes
Alexa Van Brunt
MacArthur Justice Center
160 E. Grand Ave, 6th Fl.
Chicago, IL 60611
(312) 503-0012
jonathan.manes@macarthurjustice.org
alexa.vanbrunt@macarthurjustice.org

Daniel Massoglia
Joseph DiCola
Dan Lastres
First Defense Legal Aid
601 S. California Ave.
Chicago, IL 60612
daniel@first-defense.org
joseph@first-defense.org
lastres@first-defense.org

Elizabeth Mazur
Hughes Socol Piers Resnick & Dym, Ltd
70 W. Madison, Suite 4000
Chicago, Illinois 60603
312.580.0100
emazur@hsplegal.com

*Counsel for the Plaintiffs*

Dated: July 3, 2023
    Chicago, IL

## CERTIFICATE OF SERVICE

    I, Jonathan Manes, an attorney, certify that on July 3, 2023, I served this Motion and accompanying exhibits on all counsel of record via the Court's CM/ECF system.

/s/ *Jonathan Manes*