**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL WILLIAMS, LUCY PARSONS LABS, DANIEL ORTIZ, and DERICK SCRUGGS, on behalf of himself and a class of similarly situated people, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 22-cv-3773 |
| v. | ) ) | Judge Lindsay C. Jenkins Magistrate Judge Young B. Kim |
| CITY OF CHICAGO, et al., | ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' MOTION TO COMPEL
PRODUCTION OF RECORDS AND FOR SANCTIONS**

Plaintiffs Michael Williams, Derick Scruggs, and Daniel Ortiz respectfully submit this motion to compel Defendant City of Chicago to produce requested documents and for sanctions pursuant to Rule 37(b)(2) for failure to produce some of those records in violation of a Court-ordered deadline. In support of this motion, Plaintiffs state as follows:

**Background**

1.      Plaintiffs await production of three categories of discovery from Defendant City of Chicago that are central to this case and highly relevant to the depositions of the Defendant Officers. Plaintiffs file this motion in order to compel production of these materials by a prompt deadline. Given that the Court previously ordered disclosure of some of these documents, Plaintiffs also seek sanctions for non-compliance with that Order.

2.      The three categories of discovery at issue in this Motion are:

 i.      **Inventoried Media Files:** Plaintiff seeks copies of electronic files that Defendant Officers obtained during their investigation of the Herring homicide. This includes numerous surveillance video files, photographs, a forensic image of Mr. Williams' cell phone, certain jail phone calls, and other

media files. According to the City, copies of these materials do not exist in CPD's investigative file because the Defendant Officers placed them into inventory. For this reason, the parties have been referring to these materials as "inventoried media files," though, to be clear, Plaintiff merely seeks copies of the media files, from wherever the City maintains possession, custody, or control of them. For reference, CPD lists of the inventoried evidence are attached as **Exhibit A** (Williams 672-674, 772-776).

ii. **ESI:** Email messages of all of the Defendant Officers regarding the incidents and events described in the Amended Complaint.

iii. **ShotSpottter Training Materials and Court/Hearing Notifications:** Records responsive to Plaintiffs' Supplemental Request for Documents Nos. 1-4 and 7, which were approved by the Court by Order dated May 17, 2023, and subject to a court-ordered deadline of June 9, 2023. ECF No. 99. These materials include training and guidance regarding ShotSpotter provided to Defendant Officers, as well as notifications of court and hearing dates provided to Defendant Officers.

3. Plaintiffs offer a brief account of their efforts to obtain each category of materials:[1]

## I. Inventoried Media Files

4. Plaintiff Williams' initial requests for production, served in February 2023, sought all documents related to his arrest and prosecution, including copies of inventoried digital evidence. In the parties' Joint Status Report filed on April 7, 2023, Plaintiffs reported that that much of the evidence was missing from the City's productions to date. *Id.* The City responded, in relevant part, that "[t]he City and CPD are diligently working to collect all of the responsive documents requested by Plaintiffs and produce them on a rolling basis." *Id.*

5. During the status hearing held by the Court on May 9, 2023, counsel for the City stated they were continuing to work on producing the evidence. Tr. at 42-43, ECF No. 98.

---

[1] Plaintiffs note that the parties continue to discuss a fourth category of records the Defendants have thus far not produced: images that show the ShotSpotter information that was available on the ShotSpotter application loaded on the mobile devices or patrol-car computers of the Defendant Officers who detained Plaintiffs Scruggs and Ortiz when responding to the ShotSpotter alerts. The parties have not yet reached an impasse on that matter, but Plaintiffs will file a further motion to compel if there is no agreement to produce responsive records in short order.

6.      On May 18, 2023, Plaintiff raised this issue in an email to Defendants' counsel, asking for a "timeframe for the production of outstanding materials" including "production of electronically stored materials referenced at Williams 672-674. We are not seeking production of physical evidence." **Exhibit B**, at 2 (email correspondence).

7.      The City did not respond to Plaintiff's inquiry.

8.      One June 14, 2023, Plaintiff's counsel wrote to Defendant's counsel again, pursuant to Local Rule 37.2, to put Defendants on notice of their intent to file a motion to compel. Plaintiffs noted that the City should have produced the materials three months earlier "when its initial discovery responses were due, or at the very latest by the Court's June 9, 2023 deadline for supplementing written discovery." **Exhibit C**, at 3 (email correspondence). Plaintiffs stated that if disclosure was not forthcoming by June 19, 2023 they would file a motion to compel and would "ask the Court to modify the deposition schedule so that Plaintiffs' counsel has sufficient time to review these materials before Plaintiff Williams is deposed." *Id*.

9.      On June 16, 2023, the City's counsel responded and reported, for the first time, that "CPD is not in custody and possession of the inventoried items" and that the materials "appear to be within the custody and possession of the SAO [State's Attorney's Office] based on the paperwork." Ex. C, at 2. The City stated that "[t]he SAO is in the process of searching for the inventoried items" and further stated that he "hoped to have additional information next week." *Id*.

10.     The City did not explain why it had taken nearly four months to determine that the materials were not in its possession.

11.     The City did not claim that the inventoried evidence was beyond its control—only that it was not in its "custody and possession." *Cf.* Rule 34(a)(1) (requiring production of materials in a party's "custody, possession, *or control*") (emphasis added).

12.     In response to a follow-up email from Plaintiffs, Counsel for the City informed Plaintiffs on June 20, 2023, that a CPD Lieutenant was in touch with a Sergeant from the Cook County State's Attorney's Office ("CCSAO") evidence squad to obtain possession of the inventoried evidence in order to produce it to Plaintiffs. Ex. C, at 1.

13.     The parties submitted a Joint Status Report on June 20, 2023. ECF No. 117. The City reported that the inventoried materials were in the possession and custody of the Cook County State Attorney's Office and that they were working on producing them. *Id.* Plaintiffs noted their intention to file a motion to compel production of these materials "if the City does not produce them in the very near future." *Id.*

14.     On June 29, 2023, counsel for the parties conferred again by telephone. Counsel for the City relayed that CPD was working to regain custody of the inventoried evidence from the State's Attorney's Office. Counsel for the City stated that he was in touch with ASA Patrick Waller, one of the attorneys involved in the underlying prosecution, who had placed a request for the inventoried evidence to be retrieved from a CCSAO warehouse.

15.     On July 1, 2023, the Cook County State's Attorney's Office made production of certain media files in response to Plaintiff's separate subpoena to that office. Those media files did not include many of the surveillance videos listed in the inventory of evidence, nor did they include the forensic image of Plaintiff Williams' cell phone or jail calls that were inventoried. While a review of the files suggests that they correspond to some of the inventoried evidence, the files were not produced with inventory numbers or other annotations that would allow the parties to know for certain which files correspond to particular items of inventoried evidence.

16.     During the status hearing on July 5, 2023, the City apprised the Court of its efforts to track down these materials at CCSAO, which, at the time, were still ongoing. Court directed Plaintiffs to file a Rule 37 motion with respect to the inventoried evidence. ECF No. 128.

17.     On July 10, 2023, counsel for the parties conferred again. The City remained unable to provide a date certain by which the materials would be produced. Counsel for the City relayed that he had spoken with counsel for the Cook County Assistant State's Attorney (ASA) Bill Ragen, who is one of the attorneys charged with responding to Plaintiff's subpoena to CCSAO. The City relayed that ASA Bill Ragen, rather than ASA Patrick Waller, is now the City's primary point of contact for issues related to disclosure of the inventoried evidence. By email dated July 11, 2023, counsel for the City stated that ASA Ragen "was handling the production of the documents that are in the possession and custody of the SAO." **Exhibit D** (email of July 11, 2023).

18.     In response, Plaintiffs reached out to ASA Ragen and the City, seeking a conference to get to the bottom of the matter, which is scheduled for July 13, 2023. **Exhibit E** (email of July 12, 2023).

## II.     Electronically Stored Information

19.     Plaintiffs first set of requests for production to the City, served on February 17, 2023, encompass "all email or other electronic communications" concerning the investigation leading to Mr. Williams' arrest and prosecution and the incidents that Plaintiffs Scruggs and Ortiz describe in the Amended Complaint. *See* Williams Request for Production 1-2, ECF No. 77-2; Scruggs Request for Production 1, ECF No. 77-4; Ortiz Request for Production 1, ECF No. 77-6.

20.     The City responded on March 20, 2023, by lodging certain objections to the breadth of the requests but stating that the City would produce non-privileged documents "pursuant to a search protocol to be agreed upon by the parties or otherwise ordered by the Court." *See* City Responses, ECF No. 77-8, at 2-3 ECF No. 77-10, at 2-3; ECF No. 77-12, at 2-3.

21.     The parties submitted a Joint Status Report to the Court on April 7, 2023, that updated the Court on the status of negotiations over ESI discovery. ECF No. 77 at 2-3.

22.     On April 17, 2023, following some back and forth between the parties about the particular prior ESI agreements that should be used as a template for an ESI agreement in this case, the parties agreed to start from the ESI protocol used in *Livingston v. City of Chicago*, No. 16-cv-10156, 2020 WL 5253848 (N.D. Ill. Sept. 3, 2020), which was overseen by this Court.

23.     On April 20, 2023, Plaintiffs emailed a proposed ESI agreement to Defendants and suggested a call to discuss issues, and the parties agreed to meet on May 5, 2023.

24.     Despite the meeting being scheduled over a week in advance, Defendants sent a counterproposal to Plaintiffs just as the meeting was scheduled to start. As a result, the parties were only able to have a preliminary discussion and agreed to set another date to discuss further.

25.     On May 9, 2023, the Court held a status conference at which the parties discussed the ongoing negotiations regarding ESI protocol. Parties informed the Court that they were continuing to negotiate on the ESI protocol. Tr. at 15-19, ECF No. 98.

26.     On May 24, 2023, Plaintiffs sent Defendants a revised draft of the ESI agreement. Notably, Plaintiffs narrowed their proposed search terms in response to Defendants' concerns.

27.     On May 25, 2023, Plaintiffs and Defendants met again to discuss the ESI protocol. In the course of these discussions, the parties agreed to focus discussions with respect to the City's outstanding ESI on the Defendant Officers' City-issued email accounts. The City represented that it had already searched and produced other electronically-stored information—such as documents stored on SharePoint—in the ordinary course of collecting and producing records.[2]

---

[22] The City's ESI searches encompass only the City-issued accounts of the Defendant Officers. Some of the Defendant Officers have stated in response to interrogatories that they may have also used personal mobile devices for certain purposes. Counsel for the Plaintiffs and the Individual Defendant Officers have reached a separate agreement as to search and production of ESI material on personal devices.

28.     The parties further agreed that the only custodians whose ESI would be subject to the City's ESI search were the Defendant Officers named in the Complaint.

29.     Following these agreements, the key issues over which the parties were negotiating were (1) the date range of ESI searches and (2) the keywords that would be used to identify the universe of potentially relevant materials.

30.     With respect to date ranges, the City's initial proposal, originally provided to Plaintiffs on May 5, 2023, was broad: from the date of the initial incidents (i.e., the shooting of Safarian Herring and the *Terry* stops of Plaintiffs Ortiz and Scruggs) up through the filing of this lawsuit. During the May 25, 2023, meet-and-confer, however, the City unilaterally retracted this proposal and proposed only to search from the date of the initial incidents through the date charges were dismissed against each one of them.

31.     With respect to keyword searches, the Individual Officer Defendants suggested during the May 25, 2023, meet-and-confer that they might have further objections to the already-narrowed search terms Plaintiffs had proposed in their May 24, 2023, proposal. However, Plaintiffs never received any comments or edits from the Individual Defendants on the search terms. The City, for its part, indicated that it would seek streamline the search terms to facilitate processing on its e-discovery platform. (As described below, it was not until July 5, 2023, that the City provided those streamlined search terms, which Plaintiffs promptly accepted in full).

32.     On June 2, 2023, Plaintiffs and Defendants were scheduled to meet and discuss the ESI issues again. Defendants stated they had been delayed on their end because of certain unexpected and tragic circumstances. **Exhibit F**, at 6 (email correspondence). The meeting was postponed until June 9, 2023. *Id.* at 4.

33.     Counsel for City represented in a phone call, and memorialized in an email, that once the parties agreed upon date ranges for the ESI searches, the City could begin collecting the relevant emails from the City in order to load it into their e-discovery platform where counsel would subsequently apply search terms and review for potential production. Ex. F, at 3.

34.     By email dated June 7, 2023, Plaintiffs stated that with respect to all of the Defendants, *except* for the five principal Williams Defendant Officers, Plaintiffs were willing to agree to the narrowed date range as proposed by City—*i.e.* from the initial incidents through dismissal of charges (or, in the case of Plaintiff Ortiz, the dismissal of the vehicle impoundment proceedings that accompanied the charges). Ex. F, at 4-5.

35.     With respect to the five principal Williams Defendants Officers (Evangelides, Potter, Rieff, Roney, and Kociolek), Plaintiffs offered a compromise date range calculated to encompass when those officers were mostly likely to be communicating about the case: the period proposed by the City plus one extra month after the charges were dropped and a 40-day period from when the lawsuit was filed until one month after the Defendants were served. Ex. F, at 4-5.

36.     During a telephone conference on June 9, 2023, Plaintiffs reiterated these positions. The parties confirmed partial agreement as to all but the five principal Williams Defendant Officers. The Individual Defendant Officers indicated that they were likely to disagree with Plaintiff's proposal with respect to those five officers.

37.     On June 13, 2023, Plaintiffs confirmed again via email the parties' agreement on date ranges with respect to all but the five principal Williams Defendant Officers and reiterated, again, their proposal with respect to those five. Ex. F, at 3-4.

38.     The Individual Defendant Officers did not respond to Plaintiff's proposed compromise with respect to the five Williams Defendant Officers, despite an email from Counsel for the City on June 27, 2023, inquiring on the matter. Ex. F, at 3.

39.     On June 29, 2023, during a telephone conference, the Individual Defendants rejected Plaintiffs' proposed compromise for the five principal Williams Defendant Officers to the extent that it included a period of time following the filing of this lawsuit. The Individual Defendants proposed instead including only the period from the date of the shooting until one month after charges were dropped against Mr. Williams.

40.     Plaintiff subsequently agreed to that date range in writing. Ex. F, at 2.[3]

41.     During the status conference on July 5, 2023, the parties discussed the ESI discovery and the Court directed Plaintiffs to file the present motion.

42.     On Wednesday, July 5, 2023, the City responded to Plaintiffs' proposed search terms.[4] The City's proposal did not significantly alter the keywords that Plaintiffs had communicated on May 25, 2023. Plaintiffs and the Individual Defendants agreed to the City's search terms on July 6, 2023 via email. Ex. F, at 1.

43.     During a telephone conference on July 10, 2023, the City relayed that it had so far obtained ESI from the City for only two of the Defendant Officers. The City explained that a prior effort to obtain the ESI materials for all but the five principal Williams Defendant was thwarted because the files were corrupted. The City has stated that they expect to obtain the emails from the City within one to two weeks, after which they must be loaded into discovery review software, searched by keywords, and then reviewed manually for potential production.

---

[3] Plaintiff's counsel believed he had sent that response to Defendants on Monday, July 3, but the email did not send properly and remained in counsel's email "Outbox." Counsel re-sent the email on July 5 after it became apparent during the status hearing in Court that morning that Defendants' counsel had not received it.
[4] Counsel for the City stated that they believed they had sent this email several days earlier but it was not delivered.

### III.     ShotSpotter Training Materials and Notifications of Court/Hearing Dates

44.     The Court previously resolved a motion in which Plaintiff sought leave to serve requests for production of documents from the City concerning the training and guidance provided to Defendant Officers about ShotSpotter, as well as notifications of court and administrative hearing dates. *See* ECF No. 98 (Tr. of May 9 status conference); ECF No. 88; ECF No. 90 (Plaintiffs' Motion for Leave to File Supplemental RFPs).

45.     On May 17, 2023, the Court entered an Order that states: "The motion is granted to the extent that Defendants are ordered to respond to Plaintiffs' Supplemental Request for Documents Nos. 1-4 and 7 (as if they have already been served by the noted Plaintiffs on the noted Defendants), (see R. 90-13). The court finds that the requested documents are relevant to the issues in this case." ECF No. 99.  The Order directed that "[p]arties are to comply with this order by June 9, 2023." *Id.*

46.     Defendants did not provide a response to Supplemental Requests by June 9, 2023.

47.     On June 16, 2023, the City served a written response to these Supplemental Requests. **Exhibit G** (City Response to Supplemental Requests for Production). With respect to Requests 1 through 4, which concern the ShotSpotter training materials the City lodged certain objections and identified only one responsive document—the City's official ShotSpotter directive, Special Order S03-19—but made clear that it was continuing "to investigate whether any further responsive documents exist." *Id.* at 2–3. With respect to Request 7, which sought court and hearing notifications, the City stated no objections but did not produce any documents. It stated that it was "in the process of collecting the responsive documents. Investigation continues." *Id.* at 4.

48.     On June 28, 2023 Plaintiffs emailed opposing counsel to note that they had still not received any documents beyond the City's official ShotSpotter Directive and to inform Defendants that they anticipated filing a motion to compel. **Exhibit H**, at 1 (email correspondence).

10

49.    On June 29, 2023, during a meet-and-confer between the parties, the City provided updates regarding its efforts to obtain and produce the requested materials. Based on these representations, Plaintiffs agreed to hold off on filing a motion and the parties agreed instead to flag the issue with the Court in a supplemental status report and at the upcoming status hearing.

50.    At the status conference on July 5, 2023, the Court directed Plaintiff to file a motion for sanctions with respect to these records by July 12, 2023. *See* ECF No. 128.

51.    The parties conferred telephonically on July 10, 2023. The following day, the City provided an email supplementing its response to Requests 1–4 concerning the ShotSpotter training materials, indicating that some had been produced and that it continued to investigate in order to provide a complete response. *See* Ex. D. Regarding Request 7 seeking court and hearing notifications, counsel stated that the City had still not provided records. *Id.* The City stated that it intended to resolve these outstanding issues prior to its deadline to respond to this Motion. *Id.*

**Argument**

Plaintiffs seek an order compelling production of the ESI and inventoried media by August 10, 2023; immediate disclosure in response to Supplemental Requests 1–4 and 7; and sanctions for Defendants' failure to comply with those supplemental requests by the Court-ordered deadline.

**I.    The Court Should Order the City to Promptly Complete Its Productions.**

Under Rule 37(a)(3)(B)(iv) the Court may issue an order compelling production if "a party fails to allow inspection" of documents requested under Rule 34. *See China Consulting Grp. LLC. v. Rubbermaid Com. Prod. LLC,* No. 10 CV 4825, 2010 WL 4977476, at *2 (N.D. Ill. Dec. 2, 2010). Rule 34, in turn, requires the party to whom a request is directed to "respond in writing within 30 days after being served." Fed. R. Civ. P. 34(b)(2)(A). In the absence of a specific objection, "production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response." Fed. R. Civ. P. 34(b)(2)(B).

"Thus, Rule 34 plainly requires the responding party to specify the end date by which it will complete its production of documents." *BioConvergence LLC v. Attariwala*, No. 1:19-cv-1745, 2023 WL 1859434, at *4 (S.D. Ind. Feb. 8, 2023) (internal quotation and alteration omitted). The Advisory Committee Notes to Rule 34 underscore that "[w]hen it is necessary to make the production in stages the response should specify the beginning and end dates of the production." Fed. R. Civ. P. 34(b)(2)(B), Advisory Cmte. Notes, 2015 amends. It is not sufficient to state that documents will be produced "at a mutually convenient time" or otherwise to provide a "unilateral, open-ended response" because "[t]his type of gamesmanship leaves the requesting party in a state of uncertainty, not knowing when a production is forthcoming or when it is complete." *BioConvergence LLC*, 2023 WL 1859434, at *4. Here, the City failed to provide a date by which it would produce responses to any of the three categories of documents at issue in this motion.

### A. Copies of Inventoried Media Files.

With respect to the copies of the inventoried media files, the City has not said when or whether it will produce the materials. These materials are centrally important to the facts of the case, but it was not until mid-June—nearly four months after Plaintiffs served their requests for production—that the City even informed Plaintiffs that CPD apparently turned its only copies of these files over to the CCSAO. The City has since then not indicated when it would regain possession of those materials or produce them.

Until recently, the City was attempting to retrieve these materials from CCSAO, an indication that the materials are still under the City's "control" for Rule 34 purposes. *See* Rule 34(a)(1). "It is . . . well settled that a party need not have actual possession of documents to be deemed in control of them. The test is whether the party has a legal right to control or obtain them." *In re Folding Carton Antitrust Litig.*, 76 F.R.D. 420, 423 (N.D. Ill. 1977) (internal quotation omitted). Here, all of the inventoried materials were gathered by Defendant Officers and belong to

the Chicago Police Department. CPD's directives provide that its inventoried materials can be "check[ed] out" for "Court or Investigation" and "turned over to the State's Attorney's Office" for those reasons. *See* Chicago Police Department, Processing Property Under Department Control, Special Order S07-01 § III.F. In this case, however, all court proceedings relating to the murder of Safarian Herring terminated in July 2021. Because there is no reason why CCSAO still needs the inventoried material, CPD (and, thus, the City) plainly has the legal right to demand the return of its property. For example, if the Defendant Officers had opted to reopen the investigation of the Herring murder after the State conceded that the evidence did not support charges against Mr. Williams, it could have demanded return of the evidence. Similarly, it has the ability to regain possession of the materials in order to respond to Plaintiff's discovery request.

As a practical matter, it does not matter to Plaintiff whether the inventoried materials are produced directly by CCSAO in response to the pending subpoena or by CPD in response to the Request for Production. Plaintiff will continue to confer with the City and ASA Ragen to obtain these materials. But the City cannot avoid its duty to produce the inventoried evidence in a timely fashion by offloading the matter to Plaintiffs to resolve against CCSAO, which is not a party to this case and should not be unduly burdened. The Court should impose a deadline of no later than August 10, 2023, for the City to complete productions, in order to permit the scheduled depositions of the Williams Defendant Officers to move forward as planned in late August. ECF No. 128.

**B.      ESI productions**

The City has been unable to provide any firm deadline by which it will complete disclosure of the officers' emails. This Court should impose a deadline no later than August 10, 2023. The City initially objected to disclosure on the grounds that agreement on an appropriate search protocol was a necessary prerequisite. ECF No. 77-8, 77-10, 77-12. But there is now an agreement among the parties as to the parameters of the search—and there has been an agreement with respect

to nearly all issues for more than a month. (By May 24, 2023, Plaintiff had proposed keyword search terms that remained substantially unchanged. And by mid-June the parties had agreed to date ranges for all but the five principal Williams Defendant Officers.) In the absence of any remaining basis to object to the ESI productions, the City is obligated to provide a date certain by which it will complete production, and yet it has not done so. *See* Rule 34(b)(2)(B); *BioConvergence LLC*, 2023 WL 1859434, at *4. The Court should impose a deadline of August 10, 2023, for the City to complete its production of the Defendant Officers' ESI in order to permit the scheduled depositions to move forward.

### C. ShotSpotter Training Materials and Court Notifications

Despite being under a court-ordered deadline to comply with Plaintiffs' Supplemental Requests 1-4 and 7 by June 9, *see* ECF No. 99, the City failed to provide a timely response or to make a complete production. The City's most recent communication suggests that it intends to complete its response and any productions prior to its deadline to respond to this Motion for Sanctions. Ex. H. The City is already in violation of a Court-ordered deadline, but if the City continues to remain in default the Court could issue a further order to compel immediate disclosure.

## II. The Court May Impose Proportionate Sanctions Against the City.

Rule 37(b)(2) "allows sanctions . . . where a party "fails to obey an order to provide or permit discovery." *LiiON LLC v. Vertiv Grp. Corp.*, No. 18-cv-6133, 2020 WL 6038055, at *2 (N.D. Ill. Feb. 28, 2020), *r&r adopted*, 2020 WL 2307488 (N.D. Ill. May 8, 2020). "[T]he court must ensure that whatever sanctions are imposed are 'proportionate to the circumstances.'" *Id.* (quoting *Donelson v. Hardy*, 931 F.3d 565, 569 (7th Cir. 2019). "Considerations relevant to proportionality include the extent of the misconduct, the ineffectiveness of lesser sanctions, the harm from the misconduct, and the weakness of the case." *Donelson*, 931 F.3d at 569.

The City has failed to obey the Court's Order to comply with Supplemental Requests 1-4 and 7 by June 9, 2023. ECF No. 99. It violated the Order by not filing any response until June 16 and by failing to provide a complete response even then. That failure contributed in part to the need to cancel scheduled depositions. ECF No. 128. It is now a week after the Court made the prospect of sanctions clear, ECF No. 128, yet the City has only partially complied with Supplemental Requests 1–4 and still has not produced a single document responsive to Supplemental Request 7. In these circumstances, "[l]imited sanctions such as costs and attorney's fees associated with defendant's failure to make timely production may be the appropriate response." *LiiON LLC*, 2020 WL 6038055, at *8 (quotation omitted).

Given that this case is likely to involve significantly more (and more complex) discovery from the City once Plaintiffs' class action claims are permitted to move forward, proportionate sanctions should also serve to ensure better compliance moving forward. *See Fautek v. Montgomery Ward & Co.*, 96 F.R.D. 141, 146–47(N.D. Ill. 1982) ("[C]lass action cases . . . are difficult enough to bring without plaintiffs having to confront obstructionist discovery tactics").

Separately, if the Court grants the motion to compel production of the inventoried evidence and ESI material—or "if the disclosure . . . is provided after the motion was filed"—the Court should order Defendant City "to pay [Plaintiffs'] reasonable expenses in making the motion, including attorney's fees" after giving Defendant an "opportunity to be heard." Rule 37(a)(5)(A).

### Conclusion

WHEREFORE, the Court should order prompt disclosure of the ESI and inventoried media files and should impose appropriate sanctions for Defendant's violation of the Court-ordered deadline to produce ShotSpotter training materials as well as court/hearing notifications.

Respectfully submitted,

/s/Jonathan Manes
Jonathan Manes
Alexa Van Brunt
MacArthur Justice Center
160 E. Grand Ave, 6th Fl.
Chicago, IL 60611
(312) 503-0012
jonathan.manes@macarthurjustice.org
alexa.vanbrunt@macarthurjustice.org

Daniel Massoglia
Joseph DiCola
Dan Lastres
First Defense Legal Aid
601 S. California Ave.
Chicago, IL 60612
daniel@first-defense.org
joseph@first-defense.org
lastres@first-defense.org

Elizabeth Mazur
Hughes Socol Piers Resnick & Dym, Ltd
70 W. Madison, Suite 4000
Chicago, Illinois 60603
312.580.0100
emazur@hsplegal.com

*Counsel for the Plaintiffs*

Dated: July 12, 2023
            Chicago, IL

## **CERTIFICATE OF SERVICE**

I, Jonathan Manes, an attorney, certify that on July 12, 2023, I served this Motion and accompanying exhibits on all counsel of record via the Court's CM/ECF system.


/s/ *Jonathan Manes*