IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL WILLIAMS, LUCY PARSONS LABS, DANIEL ORTIZ, and DERICK SCRUGGS, on behalf of himself and a class of similarly situated people, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 22-cv-3773 |
| v. | ) ) ) | Judge Lindsay C. Jenkins Magistrate Judge Young B. Kim |
| CITY OF CHICAGO, et al., | ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO QUASH AND FOR A PROTECTIVE ORDER AGAINST CERTAIN RULE 45 SUBPOENAS SERVED BY THE INDIVIDUAL DEFENDANTS**

Pursuant to the Court's Order of June 20, 2023 (ECF No. 119), Plaintiffs Derick Scruggs and Daniel Ortiz respectfully submit this reply in support of their motion to quash or obtain a protective order against seven subpoenas served by the individual Defendant Officers on non-parties demanding private records concerning these Plaintiffs. In further support of this motion, Plaintiffs state as follows:

**Introduction**

Plaintiffs Scruggs and Ortiz moved to quash seven subpoenas issued by the Defendant Officers on the grounds that they were irrelevant to any issues in this case, vastly overbroad, highly intrusive of Plaintiffs' privacy, and disproportionate to any needs of the case. ECF No. 95. Plaintiffs seek to quash five of the subpoenas outright and to narrow the scope of the other two. *See id.* at 15 (paras. 1–2). In response, the Defendant Officers argued that the scope of Plaintiffs' claims and damages are unclear to them and that the subpoenaed records may be relevant to various

supposed claims or injuries Plaintiffs may be seeking. The Court subsequently directed Plaintiffs to clarify for Defendants Officers the scope of their claims and damages and for the parties to determine whether they could resolve the motion through a stipulated agreement. Plaintiffs subsequently spelled out the scope of their claims and damages to Defendants, but the parties were unable to agree upon a stipulation memorializing those limits and withdrawing the subpoenas on that basis. Accordingly, Plaintiffs file this reply to "declare the scope of their claims and damages they seek in this case." ECF No. 119.

In light of the scope of Plaintiffs' claims and damages, detailed below, the subpoenas at issue here are improper and overbroad. None of the rationales offered by the Defendant Officers in response to Plaintiffs' Motion to Quash survive contact with the actual claims and damages that Plaintiffs are pursuing. The Court should accordingly grant Plaintiffs motion.

### Scope of Claims and Damages

Following the Court's Order of June 20, 2023 (ECF No. 119), the parties exchanged draft stipulations in which Plaintiffs specified the scope of their claims and damages. Those discussions focused on (1) precise conduct that Plaintiffs allege violated the law and (2) scope of Plaintiffs' claimed injuries and damages. With respect to the latter, the parties focused on the meaning of "garden variety" damages in this jurisdiction and the extent to which the damages Plaintiffs are seeking here fall within those parameters.

Although the precise formulations vary, "garden variety emotional damages" are generally understood by the courts as "'the distress that any healthy, well-adjusted person would likely feel as a result of being so victimized,'" *Flowers v. Owens*, 274 F.R.D. 218, 225 (N.D. Ill 2011) (quoting *Kunstler v. City of New York*, 2006 WL 2516625, 9 (S.D.N.Y.2006); the "'generalized insult, hurt feelings, and lingering resentment that does not involve a significant disruption of the

2

plaintiff's work life and rarely involves more than a temporary disruption of the claimant's personal life,'" *id.* (quoting *Ortiz v. Potter*, No. 08-CV-01326, 2010 WL 796960, at *3 (E.D. Cal. Mar. 5, 2010)); or "negative emotions that [a plaintiff] experienced as the intrinsic result of defendant's alleged conduct [such as] humiliation, embarrassment, and other similar emotions," *Santelli v. Electro-Motive*, 188 F.R.D. 306, 309 (N.D. Ill. 1999)).

With that understanding in mind, Plaintiffs declare the following scope of their claims and damages:

Plaintiff Ortiz's claims arise solely from the Ortiz Defendant Officers' investigatory stop and search of his person on April 19, 2021. Plaintiff Ortiz is not challenging his arrest on that day for possession of marijuana and prescription drugs. While Plaintiff Ortiz describes the arrest as "pretextual" in the Amended Complaint, he does not claim that it was made without probable cause or that it was otherwise illegal or actionable.

Plaintiff Ortiz does not claim damages for lost income or financial hardship. Plaintiff Ortiz only claims damages for garden variety emotional distress and an ongoing fear of interactions with police officers as a result of the illegal stop.[1]

---

[1] There is some unclarity in the case law as to when or whether a continuing fear of police comes within the scope of ordinary "garden variety" emotional harm. In *Flowers*, for example, the Court remarked that it is consistent with "garden variety" damages for a Plaintiff to testify "that he feels uncomfortable about going into a restaurant if a Will County police officer is there, and that if he did go in he wouldn't enjoy his dinner." 274 F.R.D. at 227 (quotation omitted). It is also consistent with "garden variety" emotional injuries for a plaintiff to "testify generally about his humiliation, embarrassment, anger, and feeling depressed, anxious and dejected as a result of his encounter with the defendants." *Id.* The *Flowers* court gives other examples of how fear of police may manifest in ways that go beyond "garden variety" damages, such as "testify[ing] about resulting symptoms or conditions such as his claimed persistent fear of retaliation" or "testify[ing] that he is afraid to leave his home . . . even to go fishing, unless he is with people that have never been in trouble . . . ." *Id.* (quotation omitted).
    Plaintiff believes that his injuries fall on the "garden-variety" side of this line, but the Court need not decide that in this context on the current record. For purposes of the present motion to quash, nothing turns on whether Plaintiff Ortiz's specific fear of police is "garden variety" or something more, because none of the subpoenaed records are plausibly relevant to Mr. Ortiz's fear of police, however it is characterized. Moreover, the nature of Mr. Ortiz's fear of police will undoubtedly be fleshed out in more depth during Plaintiff's deposition, which will be held next Monday, July 17, 2023.

Plaintiff Scruggs's claims arise solely from the Scruggs Defendant Officers' investigatory stops and searches of him on July 18 and 19, 2022. Plaintiff Scruggs alleges that the investigatory stop on July 18 rose to the level of an arrest requiring probable cause because of the nature of the restraints placed upon him. But Plaintiff Scruggs is not challenging his formal arrest on July 19, 2022, for working as an armed guard with an expired license.[2] While Plaintiff Scruggs describes the July 19 arrest as "pretextual" in the Amended Complaint, he does not claim that it was made without probable cause or that it was otherwise illegal or actionable.

Plaintiff Scruggs is seeking damages for "garden variety emotional distress" as well as ongoing fear, anxiety, nervousness, helplessness, and stress caused by the *Terry* stops and searches, and their escalation prior to formal arrest, at his place of employment. These injuries go beyond garden variety emotional damages.[3] In addition, at his deposition held yesterday, Plaintiff Scruggs stated that he is not seeking damages for lost income but that he seeks damages related to his eviction from his apartment following his encounter with the police.

---

[2] The scope of these claims has been clear to the Individual Defendant Officers since Plaintiffs filed their Response in Opposition to the Individual Officer Defendants' Motion to Dismiss on February 13, 2023, (which was well before the subpoenas at issue here were served in April). Plaintiffs' opposition to the motion to dismiss clarified and narrowed Mr. Scruggs' claims. ECF No. 65, at 30–31. In particular, Plaintiff Scruggs responded to the Defendants' motion to dismiss his claim of "unreasonable search and seizure" by explaining as follows: "Plaintiff clarifies that in Count XVIII he is only asserting a claim that he was subject to arrest without probable cause on July 18, 2022, when the *Terry* stop prompted by the ShotSpotter alert escalated into an arrest. With respect to the encounter the next day, July 19, Plaintiff does *not* contend that his pretextual misdemeanor arrest (for not carrying his Permanent Employee Registration Card) was illegal; he only contends that the *Terry* stop that preceded that arrest was unconstitutional." ECF No. 65, at 30 (emphasis in original).

[3] Plaintiff's counsel was incorrect when he stated at the status conference on May 17, 2023, that Plaintiff Scruggs was seeking only "garden variety" damages. After reviewing the case law interpreting "garden variety emotional distress" and after further consultations with Plaintiff Scruggs, it is apparent that his injuries go beyond "garden variety" as that is understood in this district.

4

**Argument**

In light of the scope of Plaintiffs' claims and damages, the seven disputed subpoenas should be quashed or, with respect to two of the Ortiz subpoenas, narrowed. *See* Mot. to Quash, ECF No. 95, at 15. The subpoenaed materials are not relevant to any claims or injuries, nor are they proportional to the needs of the case. *See Noble Roman's, Inc. v. Hattenhauer Distributing Company*, 314 F.R.D. 304, 307 (N.D. Ill. 2016). Even if the subpoenaed material were marginally relevant, they should still be quashed because they are highly intrusive and unlimited in scope. In other words, the "strength of the privacy interest" outweighs any "relevance of the information sought." *Bishop v. White*, No. 16 C 6040, 2020 WL 6149567, at *4 (N.D. Ill. Oct. 20, 2020).

**I.     The Court Should Quash the Ortiz Subpoenas (Cosmo Films, ClearStaff, LSG SkyChefs, and Rivers Casino)**

None of Defendants' arguments for its subpoenas to Mr. Ortiz's employers remotely justifies them. Defendants make three points. *First*, Defendants contend that if Plaintiff is challenging his arrest on drug charges, then records concerning his foot injury and treatment are relevant. *See* Defs' Resp. at 8. But Plaintiff is not challenging his arrest. And, in any case, Plaintiff has already agreed that the subpoenas to his two former employers can be carried out "to the extent that they seek records that directly concern the workplace injury that Mr. Ortiz suffered." ECF No. 95, at 15. That concession fully satisfies Defendants' rationale for the subpoena, yet Defendants fail even to mention it in their opposition (nor do they dispute the procedure that Plaintiff has proposed for reviewing the subpoenaed material to determine which portions concern the foot injury and should therefore be produced to Defendants). *See id.* Thus, Defendants' rationale fails to justify the massively overbroad subpoena for "any and all" records held by the former employers (Cosmo Films and ClearStaff) and subsequent employer, LSG SkyChefs.

5

*Second*, Defendants contend that employer records could be relevant to pain and emotional injuries that affected his ability to work or provide for his family. *See* Defs' Resp. at 8. But Plaintiff does not seek damages for lost income or his ability to care for his children, nor does he claim emotional injuries beyond "garden variety" harms and fear of police. Employer records will shed light on none of those injuries. That is especially true because Plaintiff was unemployed when the incident happened, and he did not start working for a year thereafter. Records from these employers can thus shed no light on the garden variety damages and fear of police Mr. Ortiz suffered.

*Third,* Defendants contend that the employer records are important to understand what kind of "pain" Mr. Ortiz was suffering and what he was doing to treat those injuries. Defs' Resp. at 9. This, too, misses the mark because Plaintiff Ortiz does not seek damages for physical pain, nor emotional injury beyond garden variety damages. Moreover, Defendants already have obtained extensive medical records from the MAPS Center, which specifically treated Mr. Ortiz for pain for several months before Mr. Ortiz's encounter with police. Plaintiff did not oppose that subpoena, and the responsive records include detailed doctor notes specifically documenting Mr. Ortiz's pain. Moreover, Plaintiff has agreed that Defendants may have access to the records of former employers concerning Mr. Ortiz's foot injury. Defendants' effort to obtain Mr. Ortiz's complete personnel file from the employers, therefore, cannot be justified on a "pain" rationale.

With respect to the Rivers Casino subpoena, it is even clearer that the subpoena is irrelevant. Defendants contend that the records may shed light on generalized emotional distress injuries or whether Mr. Ortiz's role as a primary caregiver was affected. Defs' Resp. at 7. But Plaintiff is not claiming (and has never claimed) damages relating in any way to his caregiving duties or income, nor is he claiming ongoing emotional distress except for a specific fear of police encounters. Records from the casino showing how much he won or lost, how often he attended, or

what he specifically did at the casino are utterly irrelevant to these injuries. Moreover, Plaintiff has a significant privacy interest in these details about whatever gaming and entertainment he may have participated in. Nothing about Mr. Ortiz's claims and damages, which center on Mr. Ortiz's interaction with police and subsequent feelings toward police, remotely opens the door for Defendants to invade Mr. Ortiz's privacy in this way. Moreover, Defendants' rationales for this subpoena have constantly shifted, beginning as an inquiry into Mr. Ortiz's finances and income, morphing into a supposed inquiry into his "mobility," and now recast as a window into his role as a caregiver for his children or his general emotional state. *See* Mot. to Quash, ECF No. 95 ¶¶ 21, 25, 49–50 (summarizing the shifting rationales); Exhibit C to Mot. to Quash, ECF No. 95-3; Defs' Resp. at 7. None of these rationales holds up, perhaps because the true rationale of the subpoena is simply to fish for information that could be used to embarrass the Plaintiff or impugn his character.

**II.   The Court Should Quash the Scruggs Subpoenas (G4S Secure Solutions, Allied Universal Security, Metro One Security)**

Defendants offer three theories regarding the relevance of their subpoenas for "any and all" records in the possession of Mr. Scruggs' former employers. None of these theories bear scrutiny. *First*, Defendants claim that the records may shed light on the extent to which Mr. Scruggs's financial earnings capacity has been impacted by Defendants' conduct. Defs' Resp. at 10. But Plaintiff Scruggs is not seeking damages for lost income. And even if he were seeking such injuries, the records of these former employers would not shed any light on his earning capacity at the time of the incidents. None of the three companies here employed Mr. Scruggs when the incidents at issue occurred, and none of them had employed him for well over a year beforehand. Notably, Mr. Scruggs has not objected to Defendants' obtaining complete employment records from the company that he worked for when the incident occurred, St. Mortiz Security Services.

7

That company had employed him for more than a year by the time of the incident. The old employment records thus shed no meaningful light on his earning capacity in 2022, which is, in any case, irrelevant to the damages Plaintiff Scruggs seeks.

*Second*, the Individual Defendants argue that to the extent that Mr. Scruggs is challenging his arrest for not having a valid employment license, the employment records would tend to show his familiarity with those requirements. Defs' Resp. at 10. But Plaintiff Scruggs is not challenging the legality of that arrest, something that Plaintiff made clear in his opposition to the Individual Defendants' Motion to Dismiss five months ago, ECF No. 65, at 30–31, and which he reiterates again today, *supra*. This rationale for the subpoenas therefore fails.

*Finally*, the Individual Defendants argue that the employment records might somehow shed light on Mr. Scruggs' habits regarding how he loads and unloads his weapon before and after work. Defs' Resp. at 10. But there is no reason to believe that any of these employers' records would contain any mention of how Mr. Scruggs undertakes such a routine activity. That is simply not the sort of detail that is recorded in employment records. (It is, however, the sort of detail that the Individual Defendants were able to explore under oath during Mr. Scruggs' deposition, held yesterday.)

Even if this were a valid rationale for the third-party subpoenas, which it is not, the subpoenas are vastly overbroad as written. They seek "any and all" information in the employers' hands, including payroll, financial, medical, benefits, familial, and other sensitive information. Such a request is extraordinarily broad and intrusive; it cannot be justified on such a narrow, attenuated rationale.[4] Plaintiffs note in this regard that the Court previously stated, in the context

---

[4] If the Court were to find this justification for the subpoena compelling, it should only permit Defendants to access employer records (if any exist) that relate to how Mr. Scruggs handles his firearm. In that case, the Court should order the parties to identify and produce any such records using the same procedure

8

of Plaintiffs' request for the CPD personnel files of the Defendant Officers, that it was an overreach to demand an entire personnel file—only more targeted disclosure was appropriate. *See* Tr. Of May 9, 2009, 44: 24–51:23, ECF No. 98.[5] The subpoenas here are entirely irrelevant and should be quashed in full, but even if the Court disagrees and finds, for example, that records concerning Plaintiff's loading/unloading of his gun would be relevant (in the unlikely event that they exist), the appropriate course is to limit the subpoenas only to those materials.

### Conclusion

For the foregoing reasons, Plaintiffs Ortiz and Scruggs respectfully ask the Court to grant their Motion to Quash or for a Protective Order and to enter the order they proposed in their Motion. ECF No. 95, at 15.

Respectfully submitted,

| | |
|---|---|
| Daniel Massoglia | */s/Jonathan Manes* |
| Joseph DiCola | Jonathan Manes |
| Dan Lastres | Alexa Van Brunt |
| First Defense Legal Aid | MacArthur Justice Center |
| 601 S. California Ave. | 160 E. Grand Ave, 6th Fl. |
| Chicago, IL 60612 | Chicago, IL 60611 |
| daniel@first-defense.org | (312) 503-0012 |
| joseph@first-defense.org | jonathan.manes@macarthurjustice.org |
| lastres@first-defense.org | alexa.vanbrunt@macarthurjustice.org |

Elizabeth Mazur
Hughes Socol Piers Resnick & Dym, Ltd
70 W. Madison, Suite 4000
Chicago, Illinois 60603
(312) 580-0100
emazur@hsplegal.com                *Counsel for the Plaintiffs*

---

proposed by Plaintiffs with respect to the Ortiz employer subpoenas. *See* Mot. to Quash, ECF No. 95, at 15 (paras. 2(b)–(c)).

[5] The Court explained as follows: "[T]o say that the entirety of personnel files is relevant, that's a misstatement. Not everything in the personnel file is relevant. For example, one's election of 401(k) beneficiaries, not relevant, but it's part of the personnel file. So, you know, when we talk about what is discoverable, it has to be relevant, and what you're asking for is way too much." Tr. Of May 9, 2023, at 47:1–8, ECF No. 98.

## CERTIFICATE OF SERVICE

    I, Jonathan Manes, an attorney, certify that on July 14, 2023, I served this Motion and accompanying exhibits on all counsel of record via the Court's CM/ECF system.

<u>/s/ *Jonathan Manes*</u>