UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL WILLIAMS, LUCY PARSONS LABS, DANIEL ORTIZ, and DERICK SCRUGGS, on behalf of himself and a class of similarly situated people,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF CHICAGO, *et al.*,<br><br>Defendants. | No. 22 CV 3773<br><br>Magistrate Judge Young B. Kim<br><br>September 25, 2023 |

**MEMORANDUM OPINION and ORDER**

Before the court is Subpoena Respondent Cook County State's Attorney's Office's ("CCSAO") motion for protection from having to produce documents to Plaintiffs that it has withheld under the deliberative process privilege (the "Privilege") and work product doctrine. For the following reasons, CCSAO's motion is denied in part and granted in part:

**Background**

Plaintiffs filed this action on behalf of themselves and a class of similarly situated individuals seeking declaratory and injunctive relief that would end the City of Chicago's use of ShotSpotter technology, which purports to detect gunshots and provide an estimated location of those shots. Additionally, Plaintiff Michael Williams seeks damages for having spent 11 months in detention on a murder charge that CCSAO later dropped, and Plaintiffs Daniel Ortiz and Derick Scruggs

seek damages for illegal—albeit brief—custodial stops. Each Plaintiff's claims are based on separate and distinct set of facts.

On February 17, 2023, Plaintiffs subpoenaed CCSAO for documents and communications generated and maintained in connection with CCSAO's prosecution of Williams in *People v. Williams*, No. 20 CR 0899601. (R. 135, CCSAO's Mot., Ex. A at 5-6.) CCSAO produced responsive documents to Plaintiffs but withheld certain documents as protected from disclosure under the Privilege and the work product doctrine. (Id. at 1-3.) CCSAO also provided Plaintiffs with privilege logs identifying the documents and emails withheld and the applicable privilege or immunity.[1] (Id. Exs. B & C.) CCSAO then filed this motion to shield the withheld documents from production. (Id. at 1.) Plaintiffs (primarily Williams) respond that neither the Privilege nor the work product doctrine applies here, but even if one or both could be asserted, CCSAO fails to meet the threshold showing to assert them in response to their subpoena. (R. 140, Pls.' Resp. at 2, 10-11.)

**Analysis**

A respondent withholding subpoenaed materials based on privilege "must (1) expressly make the claim and (2) describe the nature of the withheld documents

---

[1] CCSAO served Plaintiffs with two privilege logs, one for documents ("Document Log") and one for emails ("Email Log"). The Document Log shows that CCSAO withheld grand jury documents and the prosecutors' hand-written notes. The notes are marked and identified as CCSAO_000004, 000007, 000151, and 001279. The Email Log shows emails exchanged among the prosecutors assigned to the Williams case. These are marked and identified as CCSAO Email 0005, 0062, 0125-28, 0133-34, 0425, 0437, 0443, 0445, 0454, 0237-40, 0242-43, 0245-51, 0389-90, 0392-99, and 0401-06. Some of these emails include an attachment.

2

in a manner that will enable the parties to assess the claim." *Walls v. Vasselli*, No. 19 CV 06468, 2022 WL 1004248, at *2 (N.D. Ill. April 4, 2022) (citations omitted). "[E]videntiary privileges must be narrowly construed, with the court weigh[ing] the need for truth against the importance of the relationship or policy sought to be furthered by the privilege, and the likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of the case." *Murdock v. City of Chi.*, 565 F. Supp. 3d 1037, 1042 (N.D. Ill. 2021) (quotation and citations omitted). Having reviewed the submissions, the court finds that the work product doctrine does not apply to the withheld documents, but the Privilege shields some from production.

**A.     Work Product Doctrine**

Federal Rule of Civil Procedure 26(b)(3) governs the work product doctrine, and provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative" unless the party can demonstrate substantial need. Fed. R. Civ. P. 26(b)(3)(A). Where such a showing is made, the court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation," Fed. R. Civ. P. 26(b)(3)(B), as the rule's purpose "is to establish a zone of privacy in which lawyers can analyze and prepare their client's case free from scrutiny or interference by an adversary." *Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir. 2006) (citing *Hickman v. Taylor*, 67 S. Ct. 385, 393-94 (1947)).

Plaintiffs argue that CCSAO cannot assert the work product doctrine in response to their subpoena because it is not a party in this case. (R. 140, Pls.' Resp. at 10 (citing *DeLeon-Reyes v. Guevara*, No. 18 CV 1028, 2021 WL 3109662, at *2 (N.D. Ill. July 22, 2021) (further citations omitted)).) CCSAO disagrees, asserting that courts in this district have applied the doctrine "to protect the State's Attorney's file when it is not a party." (R. 135, CCSAO's Mot. at 3 (citing *Timmermann's Ranch & Saddle Shop, Inc. v. Pace*, No. 11 CV 1590, 2016 WL 1181792, at *2 (N.D. Ill. March 28, 2016)).)

CCSAO's reliance on *Timmermann's Ranch* is misplaced. The court in *Timmermann's Ranch* cites to *Hobley* and *Sandra T.E. v. South Berwyn School District 100*, 600 F.3d 612 (7th Cir. 2010), in support of its holding that the work product doctrine extends to nonparties. 2016 WL 1181792, at *2. However, *Hobley* did not establish a blanket rule shielding a nonparty's alleged work product from disclosure in litigation. Rather, it analyzes a nonparty's obligation to assert a privilege claim over documents in its possession. *Hobley*, 433 F.3d at 946. In *Hobley*, the Seventh Circuit held that former counsel to the *Hobley* defendants who was not a party to the ongoing suit could not be sanctioned under Rule 34 in the form of waiver for failing to provide relevant documents to the *Hobley* plaintiff. *Id.* at 949. The plaintiff sought documents from police board proceedings, some of which the defendants knew were in former counsel's possession. *Id.* at 947. Eventually, the defendants explained to the court that their former counsel held some of the relevant documents sought, and so the court ordered their production.

4

*Id.* at 948. When former counsel informed the court that they were unaware of the proceedings until the law firm received the discovery order, the court found the claim "not credible" and imposed the sanction of waiver and ordered production of the documents to the plaintiff. *Id.* at 949. On appeal, the Seventh Circuit held that Rule 34 sanctions were "not [] the correct discovery tool for gaining access to work product held by a [nonparty] attorney." *Id.* at 950. When vacating the trial court's discovery sanction, the Seventh Circuit noted that the nonparty's documents may be subpoenaed and, at that point, the nonparty's "privilege claims may be tested under the normal procedures for attorney work product." *Id.* at 949-50, 952. This is not the same as ruling that nonparties are entitled to assert the work product doctrine over subpoenaed materials in any situation. *See Walls*, 2022 WL 1004248, at *2 ("*Hobley* therefore does not stand for the general proposition that a non-party may assert work product protection over materials sought via subpoena.").

*Sandra T.E.* likewise does not support CCSAO's argument. There, a school board engaged a law firm to conduct an internal investigation of defendant school administrators' handling of sexual abuse complaints within the school district and to perform related legal work. *Sandra T.E.*, 600 F.3d at 616, 620. When the board later became a party defendant in a lawsuit, it retained separate lawyers to litigate the lawsuit. *Id.* at 616. The Seventh Circuit held that because the initial law firm "was hired to conduct the District 100 investigation not merely in anticipation of *likely* litigation but in response to the *actual* filing of this lawsuit," its "witness-interview notes and memoranda were plainly prepared with an eye toward this

5

pending litigation and therefore qualify for work-product protection." *Id.* at 622 (emphasis in original) (internal quotations omitted).

Unlike the circumstances in *Sandra T.E.*, here CCSAO prosecuted the criminal case out of which Williams's civil claims arise, but it is not a party to the instant action and did not have an attorney-client relationship with any of the parties in this civil case. As such, this court finds that in the present case, CCSAO is not entitled to assert this protection. Further, "because the CCSAO is not an adversarial party in this case and the criminal matter has long since resolved, the purposes of work product protection . . . are not of significant concern." *Walls*, 2022 WL 1004248, at *2 (citing *Hobley*, 433 F.3d at 949). This court thus declines to stray from the clear line of cases holding that "the work product doctrine does not protect a prosecutor's files in a subsequent, related civil action." *Hill v. City of Chi.*, No. 13 CV 4847, 2015 WL 12844948, at *2 (N.D. Ill. May 28, 2015) (collecting cases).

## B.  Deliberative Process Privilege

However, CCSAO's Privilege assertion has merit. The Privilege "allows an agency to withhold 'all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be.'" *Murdock*, 565 F. Supp. 3d at 1042 (citing *Nat'l Immigrant Justice Ctr. v. U.S. Dep't of Justice*, 953 F.3d 503, 508 (7th Cir. 2020) (further citations omitted)). But it applies only to those documents that are "predecisional—generated before the adoption of an agency policy—and deliberative—reflective of the give and take of the consultative process." *Saunders v. City of Chi.*, No. 12 CV 9158, 2015 WL 4765424, at *9 (N.D.

6

Ill. Aug. 12, 2015). The goal of the Privilege is "[t]o encourage candor, which improves agency decision making" and "blunts the chilling effect that accompanies the prospect of disclosure." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021).

To withhold subpoenaed documents based on the Privilege, the following must be met:

> (1) the department head with control over the matter must make a formal claim of privilege, after personal consideration of the problem; (2) the responsible official must demonstrate, typically by affidavit, precise and certain reasons for preserving the confidentiality of the documents in question; and (3) the official must specifically identify and describe the documents.

*Evans v. City of Chi.*, 231 F.R.D. 302, 316 (N.D. Ill. 2005) (citing *Ferrell v. U.S. Dep't of Housing & Urban Dev.*, 177 F.R.D. 425, 428 (N.D. Ill. 1998)). If this *prima facie* showing is made, the court then determines whether the Privilege should be recognized. If yes, the party seeking production has the burden of demonstrating a "particularized need for the documents." *Id.* (quotations and citations omitted). To determine whether a particularized need exists, the court balances the requesting party's:

> need for disclosure against the government's need for secrecy, considering such factors as (1) the relevance of the documents to the litigation; (2) the availability of other evidence that would serve the same purpose as the documents sought; (3) the government's role in the litigation; (4) the seriousness of the litigation and the issues involved in it; and (5) the degree to which disclosure of the documents sought would tend to chill future deliberations within government agencies, that is, would hinder frank and independent discussion about governmental policies and decisions.

*K.L.*, 964 F. Supp. 1206, 1209 (N.D. Ill. 1997).

7

The court finds that CCSAO adequately demonstrates that the Privilege applies and that it protects some of the documents withheld from production. First, the Cook County State's Attorney formally asserted the Privilege and signed the motion for protective order through counsel. *See Walls*, 2022 WL 1004248, at *4 (finding first prong satisfied where State's Attorney signed opposition filing through counsel). CCSAO also submitted privilege logs as exhibits to its motion and with its submission of documents and emails to the court for an *in camera* review, with the logs providing explanations as to why each document or email should be withheld. (See R. 135, CCSAO's Mot., Ex. 1-2; R. 148.) It is not evident that the logs were prepared by the "responsible official," but courts in this district have not rejected the assertion of the Privilege because the log lacks such an attestation. *See, e.g., Rodriguez v. City of Chi.*, 329 F.R.D. 182, 187 (N.D. Ill. 2019); *Walls*, 2022 WL 1004248, at *4.

But CCSAO did not submit an affidavit or a declaration from the prosecutors or their supervisors who worked on the Williams case as part of its *prima facie* showing. Nevertheless, this deficiency can be forgiven where "both parties appear to understand the nature of the materials withheld," such that requiring additional detail "may be a hollow exercise," *Walls*, 2022 WL 1004248, at *4, or where the documents are submitted for *in camera* inspection and "the court [is] able to determine the nature of the claim of privilege and the reasons for preserving the confidentiality of each document," *K.L.*, 964 F. Supp. at 1210. Given the robustness of Plaintiffs' response to CCSAO's motion for protective order and CCSAO's detailed

8

privilege logs, both parties appear to fully appreciate the nature of the withheld documents. Moreover, the court reviewed the withheld documents and emails *in camera* and can assess the nature of the Privilege claim. As such, the court finds that CCSAO makes the requisite *prima facie* showing in this case.

That said, not all of the documents and emails CCSAO withheld are eligible for protection under the Privilege. The Privilege does not apply to purely factual information unless it is "inextricably intertwined" with deliberations. *Enviro Tech Int'l Inc. v. United States. E.P.A.*, 371 F.3d 370, 374-75 (7th Cir. 2004). Several documents and emails CCSAO withheld reflect only factual updates regarding the Williams prosecution, and it is not always obvious that the facts conveyed are enmeshed with intra-agency deliberation. Accordingly, the court finds that the Privilege does not protect the following documents and emails: (1) CCSAO_000004, CCSAO_000007, and CCSAO_001279; and (2) CCSAO Email 0005 and its attached memorandum, 0062, 0126-28, 0133-34, 0248-51, and 0425. The court orders CCSAO to produce these documents in response to the subpoena. With respect to the remaining documents, because CCSAO's assertions—that they reflect at least some level of recommendations or strategy decisions—are borne out by this court's *in camera* review, the court finds that they are protected from production based on the Privilege.

Next, the court addresses the issues of whether the court should recognize the Privilege here and, if so, whether CCSAO waived the Privilege. Federal Rule of Evidence 501 provides that a privilege arising out of a federal lawsuit is governed

9

by the principles of federal common law, but where a state law claim or defense is at issue, state law governs. "A strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy." *Mem'l Hosp. for McHenry Cnty. v. Shadur,* 664 F.2d 1058, 1061 (7th Cir. 1981) (internal citation omitted).

Plaintiffs assert that in addition to bearing on Williams's Fourth Amendment claims, the documents they seek "may contain information that bears directly on . . . [Williams's state] malicious prosecution claims." (R. 140, Pls.' Resp. at 7.) They request that the court follow *Murdock* and refuse to recognize the Privilege under Illinois law, just as the Supreme Court of Illinois did in *People ex rel. Birkett v. City of Chicago,* 184 Ill.2d 521 (1998). (R. 140, Pls.' Resp. at 2.)

This court declines to follow *Murdock*. First, the *Murdock* court overstates the holding in *Birkett*. The *Birkett c*ourt did not state that the Privilege cannot be recognized in Illinois under any situation unless the legislature creates such privilege. Rather, the court based its decision on the breadth of the Privilege the municipal defendant sought in that particular case, pointing out that the municipality was a party defendant and was charged with "malfeasances." *Birkett*, 184 Ill.2d at 530. The court also declined to recognize the Privilege because the plaintiffs had "raised a colorable claim that the City engaged in a purposeful and covert scheme to circumvent the [statutory] requirements" and because the plaintiffs needed to show the municipality's "*intent* or *motives* in taking a particular

10

action, rather than upon the fact of the final action itself." *Id.* (emphasis in original). In other words, in *Birkett*, the deliberative process itself was at issue and, as such, the court declined to recognize the Privilege in that context. The facts pertaining to CCSAO in this case are very different.

Second, notwithstanding the general principle of comity, "the Seventh Circuit has held that federal common law (not state law) governs questions of privilege in a federal question case—even when [it] contains supplemental state law claims." *Evans*, 231 F.R.D. at 315 n.5 (citing *Mem'l Hosp.*, 664 F.2d at 1061 n.3). Indeed, the *Evans* court applied the Privilege after explicitly noting the *Birkett* court's decision refusing to recognize the Privilege under Illinois state law, emphasizing that the court "do[es] not believe that the [comity] principle permits—much less requires—federal courts to ignore federal common law privileges merely because they have not been recognized in state law." *Id.* This court finds no reason to stray from the progeny of cases within this district that have recognized the Privilege despite the inclusion of state claims with federal claims.

The court now turns to Plaintiffs' argument that even if the Privilege can apply here, CCSAO waived its ability to assert it over documents concerning "decisions about instituting, maintaining, or dismissing charges" when: (1) the state prosecutors assigned to the criminal case "made public comments on the record about their decision-making processes"; and (2) ShotSpotter's CEO made public comments to a BBC journalist about Williams's prosecution, suggesting that

11

CCSAO shared its deliberative process with a third party. (R. 140, Pls.' Resp. at 4, 6.)

"Privileges relating to governmental decision making may be waived." *Hobley*, 445 F. Supp. 2d at 998-99 (citing *Shell Oil Co. v. IRS*, 772 F. Supp. 202, 209 (D. Del. 1991)). However, a waiver of privilege "should not be lightly inferred," and where it is found to have occurred, the privilege is only waived "for the document or information specifically released, and not for related material." *Id.* at 999 (quotations and citations omitted). A waiver of the Privilege may occur where the party entitled to it makes public statements that detail the reasoning behind the decision ultimately made. *See id.* (finding waiver where former governor made public statements detailing rationale for offering pardons and discussed same on talk show); *DeLeon-Reyes*, 2021 WL 3109662, at *5 (ruling CCSAO waived privilege when it explained on record reasons behind seeking *nolle prosequi*); *Hood v. City of Chi.*, No. 16 CV 1970, Dkt. No. 247 at 8 (N.D. Ill. March 19, 2019) (holding former governor waived privilege by "detail[ing] his decision to commute [the plaintiff's sentence] in a variety of public forums").

Plaintiffs argue that *DeLeon-Reyes* established that a prosecutor's statements on the record divulging the reasoning behind *nolle prosequi* decisions operate as a waiver of the Privilege. There, during state court criminal proceedings, the prosecutor assigned to a double homicide case explained that CCSAO asked for *nolle prosequi* of the case because the lead investigator on the case "was found not to have testified truthfully." *DeLeon-Reyes*, 2021 WL 3109662, at *5. The prosecutor

12

further represented on the record that CCSAO believed that the defendants were guilty, but it had no choice but to dismiss the case against them because the detective had "eliminated the possibility of being considered a credible witness in any proceeding." *DeLeon-Reyes v. Guevara*, No. 18 CV 1028, Dkt. No. 441, Defs.' Ex. C at 3-4 (N.D. Ill. June 29, 2021). The *DeLeon-Reyes* court found that in making these statements, CCSAO "revealed pre-decisional and deliberative elements to the CCSAO's decision to dismiss" the criminal case against the plaintiffs in that civil case, namely that the comments: (1) eliminated the plaintiffs' innocence as a reason CCSAO dismissed the case; and (2) "exposed a deliberation" over the detective—"specifically that, without his truthful testimony, the CCSAO believed it had to abandon the prosecution." *DeLeon-Reyes*, 2021 WL 3109662, at *5.

Like in *DeLeon-Reyes*, Assistant State's Attorney ("ASA") Patrick Waller explained the reasons behind CCSAO's decision to *nolle* the murder charge against Williams in detail during court proceedings. (R. 140-2, Pls.' Resp. at 4-5.) Indeed, after reminding the state court that CCSAO had previously indicated they "would not use ShotSpotter evidence in this particular case," ASA Waller went on to describe the "thorough reevaluation of the evidence" CCSAO performed, including a review of "[a]ll the video that was collected by the Chicago Police Department, statements taken, circumstantial evidence," and "additional forensic testing." (Id. at 5.) He disclosed that this analysis led CCSAO to conclude that it "ha[d] insufficient evidence to proceed with the prosecution of Mr. Williams." (Id. at 4.) And when the state court asked if "one of the reasons, too . . . is that ShotSpotter

13

evidence was used before the Grand Jury in getting the indictment," he answered, "Yes." (Id.) In short, ASA Waller made public statements revealing the deliberations that formed the basis for CCSAO's decision to dismiss the case against Williams. *See DeLeon-Reyes*, 2021 WL 3109662, at *8. These in-court statements are enough to constitute a waiver of the Privilege on the topics discussed publicly. For that reason, the following emails and attachments described here must be produced to Plaintiffs:

| No. | Ruling |
|---|---|
| CCSAO Email 0125 | The email and the attached memorandum provide support for the recommendation the Williams case be dismissed. |
| CCSAO Email 0237-40, 0242-43 & 0245-47 | In these emails ASAs Natasha Toller, Waller, Renee Thibault, Andres Almendarez, and Christopher Martin, discuss gunshot residue ("GSR") testing and the decision to seek dismissal of the Williams case. |
| CCSAO Email 0454 | The email and the attached memorandum describe the reasons for seeking dismissal of the charges against Williams. |
| Michael Williams Memoranda | Versions of the memoranda entitled "Michael Williams Memo," attached to non-privileged CCSAO Emails 0126-27, which provide support for the recommendation that the Williams case be dismissed. |

Nonetheless, the waiver of the Privilege discussed does not affect the remaining documents withheld. The following documents and emails, or portions thereof, are protected from disclosure under the Privilege:

| No. | Ruling |
|---|---|
| CCSAO Email 0389-90, 0394-95, 0398-99 & 0404-06 | The portions of the emails in which ASA Waller updates ASA Lanier on the procedural status of Williams's case is not protected under the Privilege because it is factual in nature. However, the portions of the emails in which ASA Waller summarizes arguments he plans to make in response to Williams's defense may be redacted, as it |

14

| | |
|---|---|
| | discloses the government's position before it was adopted. *See Holmes v. Hernandez*, 221 F. Supp. 3d 1011, 1017 (N.D. Ill. Nov. 21, 2016) (explaining that "courts routinely find that the privilege applies to *individualized* governmental decisions" and is not limited to "governmental decisions reflect[ing] *broad-based* policymaking") (emphasis in original) (quotation and citation omitted); *see also Hill v. City of Chi.*, No. 13 CV 4847, 2015 WL 12844948, at *4 (N.D. Ill. May 28, 2015) (finding that notes on case's theory fall within scope of deliberative process privilege). |
| CCSAO Email 0392-93, 0396-97, 0401-03 & 0443 | These emails concern the deliberation of CCSAO strategy in addressing motions against the use of certain evidence in court. |
| CCSAO Email 0437 | This email and the attached memorandum are privileged because ASA Waller asks his supervisors about a strategy to be employed in connection with the prosecution of Williams that does not bear on the decision to dismiss the case. |
| CCSAO Email 0445 | This email reflects deliberation of CCSAO's strategy in an unrelated case. |
| CCSAO_000151 | These notes reflect topics for deliberation by CCSAO regarding their strategy in the Williams case. |

Finally, the fact that the Privilege attaches to these documents does not bar them from production if Plaintiffs can demonstrate a "particularized need" for the documents. *Evans*, 231 F.R.D. at 316 (citing *Ferrell*, 177 F.R.D. at 428). Plaintiffs argue that they have a particularized need "for any materials that relate to circumstances surrounding the decision to initiate criminal charges or seek an indictment of Mr. Williams, the decision to exclude ShotSpotter evidence, and the decisions to continue or *nolle* the murder charges against Mr. Williams," as such evidence would "bear directly on [Williams's] Fourth Amendment and malicious prosecution claims and the evidence is not available from any other source." (R. 140, Pls.' Resp. at 6-7.) More specifically, Plaintiffs seek information showing "the

15

defendant officers . . . commenced or continued criminal proceedings against [Williams]," there is an "absence of probable cause" that Williams committed the crimes alleged in the underlying suit, and "the proceeding terminated in favor of [Williams]." (Id. at 7-10.) But the court's *in camera* review of the remaining documents and emails reveals that none of them address Williams's stated particularized need.

## Conclusion

For the foregoing reasons, CCSAO's motion is granted in part and denied in part, and CCSAO must produce the following documents and emails: CCSAO_000004, CCSAO_000007, CCSAO_001279, CCSAO Email 0005 and attachment, 0062, 0125 and attachment, 0126 and attachment, 0127 and attachment, 0128 and attachment, 0133-34, 0237-40, 0242-43, 0245-47, 0248-51, 0425, and 0454 and attachment.

ENTER:

_____
**Young B. Kim**
**United States Magistrate Judge**