# Exhibit B

Defendant City's Objections to Plaintiffs Lucy Parsons Labs, Daniel Ortiz, and Derick Scruggs's Requests for Production

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MICHAEL WILLIAMS, *et al.*,<br>Plaintiffs,<br>v.<br>CITY OF CHICAGO, *et al.*,<br>Defendants. | Case No. 22-cv-3773<br><br>Judge Lindsay C. Jenkins<br>Magistrate Judge Young B. Kim |

**CITY OF CHICAGO'S OBJECTIONS TO PLAINTIFFS**
**LUCY PARSONS LABS, ORTIZ, AND SCRUGGS' REQUESTS FOR PRODUCTION**

Defendant City of Chicago (the "City"), by and through its undersigned counsel, and pursuant to the Court's October 19, 2023 Order [Dkt. 212], submits its objections to Plaintiffs Lucy Parsons Labs', Daniel Ortiz's and Derick Scruggs' (collectively, "Plaintiffs") Requests for Production ("Requests"), and states as follows:

## OBJECTIONS TO REQUESTS FOR PRODUCTION

**POLICIES AND PROCEDURES**

1. All written policies, procedures, practices, guidance, regulations, rules, orders, directives, memoranda or similar documents of the City of Chicago, Chicago Police Department, Office of Emergency Management and Communications, Public Buildings Commission, and Office of Public Safety Administration (or any predecessor agencies) that were in effect or that were written at any time since January 1, 2012 that concern ShotSpotter or that mention ShotSpotter. This request includes but is not limited to such documents that concern:

   a. how CPD officers should respond to ShotSpotter alerts, including but not limited to how ShotSpotter alerts may be used with respect to investigative stops and activities descrived[sic] in Section VII.C of CPD Special Order S03-19;

   b. activities of the Office of Emergency Management and Communications with respect to police dispatches in response to ShotSpotter alerts and recordkeeping in the City's computer-aided dispatch system or other systems, including activities described in Section VII.B of CPD Special Order S03-19;

c. activities of Strategic Decision Support Centers with respect to ShotSpotter alerts, including activities described in Sections VII.A and VII.E of CPD Special Order S03-19;

d. collection and reporting of information regarding any deficiencies with respect to ShotSpotter alerts, including missed gunshots, mislocated gunshots, and false alerts to non-gunshots.

e. cross-referencing or other use of ShotSpotter alerts in conjunction with other sources of information such as surveillance cameras, Briefcam, automated license plate readers, facial recognition technology, GPS information from electronic monitors worn by people as a condition of pretrial release, parole, probation or other forms of community supervision, or social media monitoring tools;

f. analysis of ShotSpotter alerts to identify gun violence trends, crime patterns, specific locations with a high number of ShotSpotter alerts

g. use of ShotSpotter alerts in crime analysis, Compstat, strategic response, ShotSpotter "missions," or allocation of public safety resources, including all activities described in Part VII.E of CPD Special Order S03-19.

**RESPONSE:** The City objects to this Request on the grounds that it is overly broad in time and scope and to the extent that it seeks information not relevant to any claims or defenses in this case, and therefore is unduly burdensome, not proportional to the needs of the case, and because the burden and expense of the proposed discovery outweighs any likely benefit. Plaintiffs' *Monell* claims against the City do not involve any allegations beginning in or around January 1, 2012. The City also objects to this Request on the grounds that it seeks documents and information not within the possession, custody, or control of the City because the Public Buildings Commission is not a City commission or department. Subject to and without waiver of the foregoing, the City will produce or make available for inspection at a mutually agreeable place and time responsive, non-privileged documents.

2. All documents and communications concerning the processes by which the City of Chicago developed its ShotSpotter policies, procedures, practices, guidelines, regulations, rules, orders, directives, memoranda or similar documents. This request includes but is not

limited to such documents that concern CPD Special Order S03-19 and the matters identified in paragraph 1(a)-(g) above.

**RESPONSE:** The City objects to this Request on the grounds that it is overly broad in time because it is not limited by a time scope, and therefore is unduly burdensome, not proportional to the needs of the case, and the burden and expense of the proposed discovery outweighs any likely benefit. The City further objects to this Request to the extent that it seeks documents and information protected by the deliberative process privilege or attorney-client privilege.

3. All documents and communications concerning review of or actual/potential changes to the City of Chicago's ShotSpotter policies, procedures, practices, guidelines, regulations, rules, orders, directives, memoranda or similar documents. This request includes but is not limited to such documents that concern CPD Special Order S03-19 and the matters identified in paragraph 1(a)-(g) above.

**RESPONSE:** The City objects to this Request on the grounds that it is overly broad in time because it is not limited by a time scope, and therefore is unduly burdensome, not proportional to the needs of the case, and the burden and expense of the proposed discovery outweighs any likely benefit. The City further objects to this Request to the extent that it seeks documents and information protected by the deliberative process privilege or attorney-client privilege.

4. For the period January 1, 2017 to present, Any communications regarding this lawsuit, regarding ShotSpotter, or regarding ShotSpotter-related policies, practices, or customs, that were sent to or from agents of the City of Chicago (including the Office of the Mayor, Chicago Police Department, Office of Public Safety Administration, and Office of Emergency Management and Communication) who have decisionmaking authority or significant input into the policies, practices, and customs with respect to ShotSpotter that are the subject of Counts I, II, and III of this lawsuit.

**RESPONSE:** The City objects to this Request on the grounds that it is overly broad in time, and therefore, is unduly burdensome, not proportional to the needs of the case, and the burden and expense of the proposed discovery outweighs any likely benefit. The City further objects to this

Request to the extent that it seeks documents and information protected by the attorney-client privilege or work product doctrine.

**GEOGRAPHICAL COVERAGE**

5. Documents sufficient to show the geographical boundaries of the ShotSpotter coverage area at different points in time form January 1, 2012 to present.

**RESPONSE:** The City objects to this Request on the grounds that it is overly broad in time because Plaintiffs' *Monell* claims against the City do not involve any allegations beginning in or around January 1, 2012, and therefore, is unduly burdensome, not proportional to the needs of the case, and the burden and expense of the proposed discovery outweighs any likely benefit. The City also objects to this Request as a matter of public safety to the extent that responsive documents would disclose information that identifies the specific locations of ShotSpotter sensors on the grounds that it will place certain individuals and businesses at harm and could jeopardize the sensors.

6. Documents describing, explaining, or memorializing all decisions about which geographical areas of the City to include (or not include) within the ShotSpotter coverage area.

**RESPONSE:** The City objects to this Request on the grounds that it is overly broad in time because it is not limited by a time scope, and therefore is unduly burdensome, not proportional to the needs of the case, and the burden and expense of the proposed discovery outweighs any likely benefit. The City further objects to this Request to the extent that it seeks documents and information protected by the deliberative process privilege or attorney-client privilege. The City also objects to this Request as a matter of public safety to the extent that responsive documents would disclose information that identifies the specific locations of ShotSpotter sensors on the

grounds that it will place certain individuals and businesses at harm and could jeopardize the sensors.

7. Communications to, from, or among agents of the City of Chicago (including the Chicago Police Department, Office of Emergency Management and Communication, Office of Public Safety Administration, Public Buildings Commission, or predecessors) that concern decisions about which geographical areas of the City to include (or not include) within the ShotSpotter coverage area. This request includes communications with agents, employees, representatives, or lobbyists for ShotSpotter as well as personnel of the University of Chicago Crime Lab.

**RESPONSE:** The City objects to this Request on the grounds that it is overly broad in scope and seeks information not relevant to any claims or defenses in this case, and therefore is unduly burdensome, not proportional to the needs of the case, and because the burden and expense of the proposed discovery outweighs any likely benefit. This Request is overly broad in time because it is not limited by a time scope. The City also objects to this Request on the grounds that it seeks documents and information not within the possession, custody, or control of the City because the Public Buildings Commission is not a City commission or department. The City further objects to this Request to the extent that it seeks documents and information protected by the deliberative process privilege or attorney-client privilege.

8. All documents, data, statistics, reports, or other information upon which the City or ShotSpotter relied in making decisions about which areas of the City to include (or not include) within the ShotSpotter coverage area.

**RESPONSE:** The City objects to this Request on the grounds that it is overly broad in time because it is not limited by a time scope, and therefore is unduly burdensome, not proportional to the needs of the case, and the burden and expense of the proposed discovery outweighs any likely benefit. The City further objects to this Request to the extent that it seeks documents and information protected by the deliberative process privilege or attorney-client privilege. The City

also objects to this Request to the extent that is seeks information outside of the possession, custody, and control of the City.

9. Any documents that concern the City's decisionmaking process(es) to determine the ShotSpotter coverage area.

**RESPONSE:** The City objects to this Request on the grounds that it is overly broad in time because it is not limited by a time scope, and therefore is unduly burdensome, not proportional to the needs of the case, and the burden and expense of the proposed discovery outweighs any likely benefit. The City further objects to this Request to the extent that it seeks documents and information protected by the deliberative process privilege or attorney-client privilege.

**CONTRACTUAL REQUIREMENTS**

10. All contracts, agreements and related documents exchanged between the City of Chicago and ShotSpotter with respect to the ShotSpotter gunshot detection system, to the extent such documents relate to the nature of the services provided; geographic coverage area of services provided; performance standards or service-level standards for the system; guarantees, representations, or disclaimers regarding the system's performance, outcomes, or results; representations or requirements regarding testing, validation, or reliability; or other operational aspects of the ShotSpotter system.

**RESPONSE:** The City objects to this Request on the grounds that it is overly broad in time because it is not limited by a time scope, and therefore is unduly burdensome, not proportional to the needs of the case, and the burden and expense of the proposed discovery outweighs any likely benefit. The City also objects to this Request as a matter of public safety to the extent that responsive documents would disclose information that identifies the specific locations of ShotSpotter sensors on the grounds that it will place certain individuals and businesses at harm and could jeopardize the sensors. The City objects to this Request to the extent that it seeks documents protected by the common interest doctrine.

11. Documents relating to the procurement or contracting process used with respect to ShotSpotter gunshot detection system to the extent such documents concern the nature of the services provided; geographic coverage area of services provided; performance standards or service-level standards for the system; guarantees, representations, or disclaimers regarding the system's performance, outcomes, or results; representations or requirements regarding testing, validation, or reliability; or other operational aspects of the ShotSpotter system.

**RESPONSE:** The City objects to this Request on the grounds that it is overly broad in time and scope and seeks information not relevant to any claims or defenses in this case, and therefore is unduly burdensome, not proportional to the needs of the case, and because the burden and expense of the proposed discovery outweighs any likely benefit. Plaintiffs' *Monell* claims against the City do not involve any allegations regarding the "procurement or contracting process" relating to ShotSpotter. The City further objects to this Request to the extent that it seeks documents and information protected by the deliberative process privilege or attorney-client privilege.

12. All documents or communications that concern decisions or deliberations by City of Chicago officials to enter into, approve, renew, extend, change, continue, discontinue or otherwise affect any agreements between the City of Chicago and ShotSpotter, including but not limited to the agreements in December 2020 and October 2022 to extend the ShotSpotter contracts through August 2023 and February 2024, respectively; the agreements in June 2022 and June 2023 to modify the terms of the ShotSpotter contract; and the decision in October 2023 to make payment on the ShotSpotter contract. This request includes communications with agents, employees, representatives or lobbyists for ShotSpotter.

**RESPONSE:** The City objects to this Request on the grounds that it is overly broad in scope and seeks information not relevant to any claims or defenses in this case, and therefore is unduly burdensome, not proportional to the needs of the case, and because the burden and expense of the proposed discovery outweighs any likely benefit. The City further objects to this Request to the extent that it seeks documents and information protected by the deliberative process privilege, attorney-client privilege, and/or work product doctrine.

13. All communications between any agent for the City of Chicago employees and agents, employees, representatives or lobbyists for ShotSpotter since April 5, 2023 that concern the City's contract for ShotSpotter technology or the City's decision about whether to continue or extend its contract for ShotSpotter technology beyond February 2024.

**RESPONSE:** The City objects to this Request on the grounds that it is overly broad in scope and seeks information not relevant to any claims or defenses in this case, and therefore is unduly burdensome, not proportional to the needs of the case, and because the burden and expense of the proposed discovery outweighs any likely benefit. The City further objects to this Request to the extent that it seeks documents and information protected by the common interest doctrine, deliberative process privilege, attorney-client privilege, and/or work product doctrine.

14. All documents of the Chicago Emergency Telephone Systems Board that relate to ShotSpotter, including any agendas, minutes, recordings of meetings, or documents disseminated to or considered by members of the Board.

**RESPONSE:** The City objects to this Request on the grounds that it is overly broad in time and scope and to the extent that it seeks information not relevant to any claims or defenses in this case, and therefore is unduly burdensome, not proportional to the needs of the case, and because the burden and expense of the proposed discovery outweighs any likely benefit. This Request is overly broad in time because it is not limited by a time scope. Plaintiffs' *Monell* claims against the City do not involve any allegation relating to "the Chicago Emergency Telephone Systems Board."

**TRAINING**

15. All Documents from January 1, 2012 to the present relating to training of City employees with respect to ShotSpotter and/or its use in the City of Chicago. This request includes, but is not limited to, training provided to CPD patrol officers, CPD detectives, CPD civilian employees, other CPD personnel (including supervisions, members of specialized units including SDSC rooms, gang units, and CPIC, and department leadership), as well as employees of OEMC and the Department of Public Safety Administration. This request includes but is not limited to training on:

a. how ShotSpotter works, its capabilities, and its functions.

b. the precision, accuracy, or reliability of ShotSpotter, including with respect to distinguishing gunshots from other loud noises and determining the location of actual or possible gunshots.

c. training provided to CPD officers about the use of ShotSpotter technology in investigatory stops or in police dispatches/calls for service;

d. whether and how CPD officers may use ShotSpotter alerts as a basis for an investigatory stop or any other search or seizure;

e. ShotSpotter's use in crime analysis, strategic responses to crime, deployment or allocation of CPD resources, CPD performance metrics, or Compstat;

f. any other functions related to ShotSpotter described in CPD Special Order S03-19;

g. OEMC personnel responsibilities with respect to ShotSpotter alerts;

h. SDSC personnel responsibilities with respect to ShotSpotter alerts.

i. training provided to members of the Fourth Amendment Street Stop Review Unit, Force Review Unit, or Tactical Review and Evaluation Division (or equivalent internal CPD units) with respect to ShotSpotter;

j. gathering and reporting data regarding ShotSpotter errors, including missed gunshots, mislocated gunshots, and false alerts.

**RESPONSE:** The City objects to this Request on the grounds that it is overly broad in time and because Plaintiffs' *Monell* claims against the City do not involve any allegations beginning in or around January 1, 2012, and therefore, is unduly burdensome, not proportional to the needs of the case, and the burden and expense of the proposed discovery outweighs any likely benefit. The City further objects to this Request to the extent that it seeks documents and information protected by the deliberative process privilege or attorney-client privilege.

16. All documents or communications since January 1, 2017, that concern the development, review, or actual/potential changes to the training of City employees with respect to ShotSpotter and/or its use in the City of Chicago. This request includes but is not limited to such document concerning training on the matters identified in this preceding paragraph.

**RESPONSE:** The City further objects to this Request to the extent that it seeks documents and information protected by the deliberative process privilege or attorney-client privilege.

**TECHNOLOGY, RELIABILITY, AND TESTING**

17. Any and all documents from January 1, 2017 to the present that concern ShotSpotter's technology and methods for distinguishing gunfire from other noises and determining its location, including ShotSpotter's computer algorithms/software and the review of noises by ShotSpotter employees prior to publishing an alert to CPD.

**RESPONSE:** The City objects to this Request to the extent that it seeks documents and information protected by the deliberative process privilege or attorney-client privilege. The City also objects to this Request to the extent that is seeks information outside of the possession, custody, and control of the City.

18. If you contend that ShotSpotter reliably or accurately identifies the sound of gunfire, distinguishes gunfire from other noises, and/or determines the location of gunshots or other loud noises, produce all documents that support such contention(s) and all documents that reflect the City's knowledge or evaluation of the reliability or accuracy of ShotSpotter in these regards.

**RESPONSE:** The City objects to the form and foundation of this Request. The City also objects to this Request as vague and ambiguous as to the phrase "[i]f you contend . . ." The City further objects to this Request to the extent that it seeks documents and information protected by the deliberative process privilege, attorney-client privilege, and/or work product doctrine.

19. If you contend that the City has made any effort to test, validate, investigate, review, or otherwise assess ShotSpotter for its accuracy or reliability, including with respect to distinguishing gunfire from other loud noises, detecting actual gunshots, or determining the location of actual or possible gunshots including, produce all documents relating to all such efforts.

**RESPONSE:** The City objects to the form and foundation of this Request. The City also objects to this Request as vague and ambiguous as to the phrase "[i]f you contend . . ." The City further

objects to this Request to the extent that it seeks documents and information protected by the deliberative process privilege, attorney-client privilege, and/or work product doctrine.

20. All Documents that reflect any testing or validation of ShotSpotter in the City of Chicago or anywhere else, including with respect to ShotSpotter's ability to detect actual gunshots, to distinguish gunfire from other loud noises, and to determine the location of actual or possible gunshots.

**RESPONSE:** The City objects to this Request on the grounds that it is overly broad in time and scope and to the extent that it seeks information not relevant to any claims or defenses in this case, and therefore is unduly burdensome, not proportional to the needs of the case, and because the burden and expense of the proposed discovery outweighs any likely benefit. This Request is overly broad in time because it is not limited by a time scope. The City further objects to this Request to the extent that it seeks documents and information protected by the deliberative process privilege, attorney-client privilege, and/or work product doctrine. The City also objects to this Request to the extent that is seeks information outside of the possession, custody, and control of the City.

21. All documents or communications concerning the decision not to conduct deployment qualification testing or other validation testing of the ShotSpotter system in Chicago, as reflected in the document disclosed by Plaintiffs at Williams 5126.

**RESPONSE:** The City objects to the form and foundation of this Request. The City further objects to this Request to the extent that it seeks documents and information protected by the deliberative process privilege or attorney-client privilege.

**PURPOSES AND EFFICACY**

22. If you contend that the City's use of ShotSpotter has a "manifest relationship" to a legitimate non-discriminatory policy objective and is necessary to the attainment of that objective,[1] then produce all documents that support your contention.

**RESPONSE:** The City objects to the form and foundation of this Request. The City also objects to this Request as vague and ambiguous to the extent that the phrases "manifest relationship" and "[i]f you contend . . ." are not defined in Plaintiffs' Requests. The City objects to this Request on the grounds that it is overly broad in scope and seeks information not relevant to any claims or defenses in this case, and therefore is unduly burdensome, not proportional to the needs of the case, and the burden and expense of the proposed discovery outweighs any likely benefit. Plaintiffs' *Monell* claims against the City do not involve any allegations regarding any "manifest relationship."

23. If you contend that the geographical coverage of ShotSpotter in the City of Chicago has a "manifest relationship" to a legitimate non-discriminatory policy objective and is necessary to the attainment of that objective,[2] then produce all documents that support your contention.

**RESPONSE:** The City objects to the form and foundation of this Request. The City also objects to this Request as vague and ambiguous to the extent that the phrases "manifest relationship" and "[i]f you contend . . ." are not defined in Plaintiffs' Requests. The City objects to this Request on the grounds that it is overly broad in scope and seeks information not relevant to any claims or defenses in this case, and therefore is unduly burdensome, not proportional to the needs of the case, and the burden and expense of the proposed discovery outweighs any likely benefit.

[1] *See Central Austin Neighborhood Ass'n v. City of Chicago*, 2013 IL App (1st) 123041, ¶ 10 (internal quotation omitted).

[2] *Id.*

Plaintiffs' *Monell* claims against the City do not involve any allegations regarding any "manifest relationship."

24. If you contend that ShotSpotter has played a role in saving lives of one or more shooting victims, produce all Documents that support your contention. For any/all particular shooting incident(s) where you contend that ShotSpotter played a role in saving a life, produce:

a. all OEMC event queries relating to each such shooting incident, including 9-1-1 calls or other notifications regarding the shooting;

b. all CPD or OEMC radio transmissions relating to each such shooting incident;

c. all body-worn camera footage relating to each such shooting incident;

d. incident reports, case reports, arrest reports, and other reports prepared in connection with police, fire, or ambulance response to each such shooting incident;

e. any records regarding medical treatment or medical outcomes that were relied on by the City to determine that ShotSpotter played a role in saving a life;

f. any other documents that reflect or were relied on by the City of Chicago to determine that ShotSpotter played a role in saving a life.

**RESPONSE:** The City objects to the form and foundation of this Request. The City also objects to this Request as vague and ambiguous as to the phrase "[i]f you contend . . ." The City also objects to this Request on the grounds that it is overly broad in scope and seeks information not relevant to any claims or defenses in this case, and therefore is unduly burdensome, not proportional to the needs of the case, and the burden and expense of the proposed discovery outweighs any likely benefit. The City further objects to this Request to the extent that it seeks documents and information protected by the attorney-client privilege.

25. If you contend that ShotSpotter has improved public safety or community safety, then produce all documents that support your contention.

**RESPONSE:** The City objects to the form and foundation of this Request. The City also objects to this Request as vague and ambiguous as to the phrase "[i]f you contend . . ." The City further objects to this Request to the extent that it seeks documents and information protected by the attorney-client privilege

26. If you dispute any of the following propositions, then produce all documents upon which you rely to dispute them:

a. that there there[sic] is "clear evidence ShotSpotter is unreliable and overly susceptible to human error;"[3]

b. that Shotspotter "played a pivotal role in the police killing of 13-year-old Adam Toledo;"[4]

c. that "there are better ways in which we can use those dollars" currently paying for ShotSpotter;[5]

d. that ShotSpotter "has not yielded the results"[6]

**RESPONSE:** The City objects to the form and foundation of this Request. The City also objects to this Request as vague and ambiguous as to the phrase "[i]f you dispute . . ." The City also objects to this Request on the grounds that it is overly broad in scope and seeks information not relevant to any claims or defenses in this case, and therefore is unduly burdensome, not proportional to the needs of the case, and the burden and expense of the proposed discovery outweighs any likely benefit. The City further objects to this Request to the extent that it seeks documents and information protected by attorney-client privilege

---

[3] Public Safety and Police Reform, Brandon Johnson Campaign Website, https://web.archive.org/web/20230522181524/https://www.brandonforchicago.com/issues/public-safety.

[4] *Id.*

[5] Quinn Myers, Will ShotSpotter Stay?, BLOCK CLUB CHICAGO (April 12, 2023), available at https://blockclubchicago.org/2023/04/12/will-shotspotter-stay-mayor-elect-brandon-johnson-says-better-ways-to-spend-money-but-stops-short-of-pledging-to-dump-it.

[6] *Id.*

27. Any and all documents, data, analysis, studies, audits, technical papers, white papers, or other reports regarding ShotSpotter, including but not limited to its accuracy, reliability, and efficacy.

**RESPONSE:** The City objects to this Request on the grounds that it is overly broad in time because it is not limited by a time scope, and therefore is unduly burdensome, not proportional to the needs of the case, and the burden and expense of the proposed discovery outweighs any likely benefit. The City further objects to this Request to the extent that it seeks documents and information protected by the deliberative process privilege, attorney-client privilege, and/or work product doctrine. The City also objects to this Request to the extent that is seeks information outside of the possession, custody, and control of the City.

28. All Documents from January 1, 2012 to the present that concern assessments or evaluations of ShotSpotter's usefulness or performance in the City of Chicago, including:

a. ShotSpotter's impact on homicide, shooting, and other gun crime rates;

b. the frequency with which ShotSpotter alerts lead officers to find corroboration of a gunshot;

c. the frequency with which ShotSpotter leads to the recovery of evidence;

d. the frequency with which ShotSpotter leads to gun-related arrests;

e. the frequency with which ShotSpotter leads officers to identify victims of shootings and/or provide assistance to people who have been shot;

f. the impact of ShotSpotter on case clearance rates;

g. the impact of ShotSpotter on police stops, uses of force, or other police actions;

h. whether ShotSpotter is meeting its contractual requirements and service-level commitments;

i. any other purported benefit, drawback, or harms of the ShotSpotter system;

j. any cost/benefit analysis of ShotSpotter;

k. any comparisons of ShotSpotter to other, alternative public safety or community safety interventions or tools.

**RESPONSE:** The City objects to this Request on the grounds that it is overly broad in time and scope and to the extent that it seeks information not relevant to any claims or defenses in this case, and therefore is unduly burdensome, not proportional to the needs of the case, and because the burden and expense of the proposed discovery outweighs any likely benefit. Plaintiffs' *Monell* claims against the City do not involve any allegations beginning in or around January 1, 2012, or any allegations relating to a "cost/benefit analysis of ShotSpotter" or "other, alternative public safety or community safety interventions or tools." The City further objects to this Request to the extent that it seeks documents and information protected by the deliberative process privilege or attorney-client privilege..

29. All documents or communications relating to empirical studies or assessments of ShotSpotter in the City of Chicago, including communications with Prof. Eric Piza concerning his National Institute of Justice-funded study of ShotSpotter in the City of Chicago or with Michael Topper or Toshio Ferrazares concerning their empirical research.

**RESPONSE:** The City objects to this Request on the grounds that it is overly broad in time and scope and to the extent that it seeks information not relevant to any claims or defenses in this case, and therefore is unduly burdensome, not proportional to the needs of the case, and because the burden and expense of the proposed discovery outweighs any likely benefit. This Request is overly broad in time because it is not limited by a time scope. The City further objects to this Request to the extent that it seeks documents and information protected by the deliberative process privilege, attorney-client privilege, and/or work product doctrine.

30. All briefings, reports, talking points, or similar documents prepared since January 1, 2016, for individuals with policy making authority with respect to ShotSpotter or for leadership of the City of Chicago (including the Mayor and his/her senior advisors), Chicago Police Department (including the Superintendent, Chiefs, and Deputy Chiefs), Office of

Emergency Management and Communications or Department of Public Safety Administration concerning ShotSpotter, including such documents that were:

a. prepared in response to (or otherwise concerning) media reports or questions from the press;

b. prepared in response to (or otherwise concerning) the Office of Inspector General's August 2021 report concerning the CPD's use of ShotSpotter technology;

c. prepared in response to (or otherwise concerning) criticisms by members of the public of ShotSpotter or its use in Chicago;

d. prepared in response to (or otherwise concerning) questions or criticisms from members of the City Council

e. prepared in advance of or in response to (or otherwise concerning) actual or potential City Council hearings, including the meeting of the Public Safety Committee held on November 12, 2021; and

f. prepared in connection with the City's budget process or hearings.

**RESPONSE:** The City further objects to this Request as vague and ambiguous to the extent that the phrase "talking points" is not defined in Plaintiffs' Requests. The City objects to this Request on the grounds that it is overly broad in time and scope and seeks information not relevant to any claims or defenses in this case, and therefore is unduly burdensome, not proportional to the needs of the case, and the burden and expense of the proposed discovery outweighs any likely benefit. The City further objects to this Request to the extent that it seeks documents and information protected by the deliberative process privilege or attorney-client privilege.

31. All communications between any agent for the City of Chicago and any employee, agent, representative or lobbyist for ShotSpotter concerning:

a. testing, validation, or similar examination of ShotSpotter

b. the methods and processes ShotSpotter uses to detect gun violence

c. claims that ShotSpotter makes regarding its products, including its claim of "97% accuracy," its claim to "save lives," its claim to reduce gun violence, and its claim to improve police-community relations.

d. the accuracy or reliability of ShotSpotter;

e. ShotSpotter's performance in the City of Chicago

f. the impact of ShotSpotter on homicides, shootings, gun crimes, or other public safety measures.

g. the impact of ShotSpotter on case clearance rates for fatal shootings or other gun crimes.

h. the impact of ShotSpotter in recovering evidence.

i. the frequency with which ShotSpotter leads officers to identify victims of shootings and/or provide assistance to people who have been shot.

j. any other purported benefit, drawback, or harms of the ShotSpotter system.

**RESPONSE:** The City objects to this Request on the grounds that it is overly broad in time and scope and seeks information not relevant to any claims or defenses in this case, and therefore is unduly burdensome, not proportional to the needs of the case, and the burden and expense of the proposed discovery outweighs any likely benefit. This Request is overly broad in time because it is not limited by a time scope.

**STRUCTURED DATA**[7]

32. Any and all reports, data, statistics, information, and documents from January 1, 2017 to the present prepared, compiled, or produced by or for the City of Chicago and pertaining to the Chicago Police Department's use of ShotSpotter.

**RESPONSE:** The City objects to this Request on the grounds that it is overly broad in time and scope and seeks information not relevant to any claims or defenses in this case, and therefore is

[7] Plaintiffs seek the datasets identified in paragraphs 33-37, and 40-42 below in order to establish, statistically and qualitatively, their claims regarding investigatory stops and other harms that result from ShotSpotter alerts, including the racial disparity in such effects. Some of these datasets are also relevant to questions regarding class certification and other issues. Plaintiff anticipates engaging in discussions with the Defendant to determine whether it is possible and appropriate to narrow the data fields to be disclosed from each of these datasets in order to eliminate data that is not necessary or relevant. Because Plaintiff does not currently know what data fields are contained in the relevant databases, it is not possible at this time to specify the scope of the requested data with more precision.

unduly burdensome, not proportional to the needs of the case, and the burden and expense of the proposed discovery outweighs any likely benefit. The City further objects to this Request to the extent that it seeks documents and information protected by the deliberative process privilege or attorney-client privilege. The City further objects to the term "Chicago Police Department's use of ShotSpotter" as vague, ambiguous, and undefined.

33. A complete set of data, including all data fields available to the City, of ShotSpotter alerts in the City of Chicago from January 1, 2011 to the present.

**RESPONSE:** The City objects to this Request as vague and ambiguous to the extent that the phrase "data fields" is not defined in Plaintiffs' Requests. The City further objects to this Request on the grounds that it is overly broad in time and scope and to the extent that it seeks information not relevant to any claims or defenses in this case, and therefore is unduly burdensome, not proportional to the needs of the case, and because the burden and expense of the proposed discovery outweighs any likely benefit. Plaintiffs' *Monell* claims against the City do not involve any allegations beginning in or around January 1, 2011. The City also objects to this Request to the extent that is seeks information outside of the possession, custody, and control of the City.

34. A complete set of data, including all data fields (including full-text narrative), of investigatory stop reports from January 1, 2015 to the present.

**RESPONSE:** The City objects to this Request as vague and ambiguous to the extent that the phrases "data fields" are not defined in Plaintiffs' Requests. The City further objects to this Request on the grounds that it is overly broad in time and scope and to the extent that it seeks information not relevant to any claims or defenses in this case, and therefore is unduly burdensome, not proportional to the needs of the case, and because the burden and expense of the proposed discovery outweighs any likely benefit. Plaintiffs' *Monell* claims against the City do

not involve any allegations involving investigatory stop reports in or around. The City further objects to this Request to the extent that it seeks documents and information related to investigatory stops with no connection to ShotSpotter alerts.

35. A complete set of data, including all data fields (including full-text narratives) of traffic stop reports from January 1, 2015 to the present.

**RESPONSE:** The City objects to this Request as vague and ambiguous to the extent that the phrases "data fields" and "traffic stop reports" are not defined in Plaintiffs' Requests. The City further objects to this Request on the grounds that it is overly broad in time and scope and to the extent that it seeks information not relevant to any claims or defenses in this case, and therefore is unduly burdensome, not proportional to the needs of the case, and because the burden and expense of the proposed discovery outweighs any likely benefit. Plaintiffs' *Monell* claims against the City do not place traffic stop reports at issue.

36. A complete set of data, including all data fields (including full-text narratives) of tactical response reports from January 1, 2015 to the present.

**RESPONSE:** The City objects to this Request as vague and ambiguous to the extent that the phrases "data fields" are not defined in Plaintiffs' Requests. The City further objects to this Request on the grounds that it is overly broad in time and scope and to the extent that it seeks information not relevant to any claims or defenses in this case, and therefore is unduly burdensome, not proportional to the needs of the case, and because the burden and expense of the proposed discovery outweighs any likely benefit. The City further objects to this Request to the extent that it seeks documents and information related to tactical response stops with no connection to ShotSpotter alerts.

37. A complete set of data from the City of Chicago's computer-aided dispatch ("CAD")/9-1-1 system, including all data fields recorded by OEMC, of all events/dispatches from January 1, 2015 to the present.

**RESPONSE:** The City objects to this Request as vague and ambiguous to the extent that the phrase "data fields" is not defined in Plaintiffs' Requests. The City further objects to this Request on the grounds that it is overly broad in time and scope and to the extent that it seeks information not relevant to any claims or defenses in this case, and is unduly burdensome, not proportional to the needs of the case, and because the burden and expense of the proposed discovery outweighs any likely benefit. A request for "a complete set of data" for all events/dispatches from January 1, 2015 will necessarily include information unrelated to ShotSpotter and Plaintiffs' *Monell* claims against the City, and therefore it. Moreover, Plaintiffs' *Monell* claims against the City do not involve any allegations regarding such information beginning in or around January 1, 2015.

38. A set of data from OEMC and/or CPD that includes each police dispatch in response to a ShotSpotter alert from January 1, 2017 to the present to which any of the following officers responded: any Williams Defendant Officer, Ortiz Defendant Officer, or other officer disclosed as witness to the police stops of Plaintiffs Williams and Ortiz described in the Second Amended Complaint. This set of data should include all data fields available to OEMC and/or CPD, including at minimum those corresponding to the date, time, dispatch type, location (including address and/or GPS coordinates), disposition (including any IUCR code, miscellaneous incident code, or other description of what officers reported finding at the scene), beat number, district number, responding officer beat numbers (or star number or other officer-identifying information), RD number, and event number.

**RESPONSE:** The City objects to this Request as vague and ambiguous to the extent that the phrase "data fields" is not defined in Plaintiffs' Requests. The City objects to this Request on the grounds that it is overly broad in time and scope and to the extent that it seeks information not relevant to any claims or defenses in this case, and is unduly burdensome, not proportional to the needs of the case, and because the burden and expense of the proposed discovery outweighs any likely benefit. A request for data regarding dispatches regarding the Individual Officer Defendant

will necessarily include information unrelated to ShotSpotter and Plaintiffs' *Monell* claims against the City. Moreover, Plaintiffs' *Monell* claims against the City do not involve any allegations regarding such information beginning in January 1, 2017.

39. Data sufficient to show the beat number, star number, and other identifying numbers assigned[sic] to each Williams Defendant Officer, Ortiz Defendant Officer, or other officer disclosed as witness to the police stops of Plaintiffs Williams and Ortiz described in the Second Amended Complaint on each day from January 1, 2017 to the present, This request is intended to obtain information sufficient to permit Plaintiffs to discern which officers responded to which ShotSpotter alerts contained in the datasets requested above.

**RESPONSE:** The City objects to this Request to the extent that a less intrusive and burdensome means of response may be sufficient to identify the beat number, star number, and other identifying numbers assigned to each Williams Defendant Officer, Ortiz Defendant Officer, and reasonably identify officer witnesses for a relevant period of time.

40. A complete set of data showing attendance and assignment of police officers for January 1, 2015 to the present, including shift start/end times, district/beat assignment, and identifying information or each officer, including rank and title.

**RESPONSE:** The City objects to this Request on the grounds that it is overly broad in time and scope and to the extent that it seeks information not relevant to any claims or defenses in this case, and is unduly burdensome, not proportional to the needs of the case, and because the burden and expense of the proposed discovery outweighs any likely benefit. This request bears no reasonable relationship to any of Plaintiffs' *Monell* claims. Plaintiffs' *Monell* claims against the City also do not involve any allegations regarding officers' attendance or shift times. Moreover, Plaintiffs' *Monell* claims against the City do not involve any allegations regarding such information beginning in January 1, 2017.

41. A complete set of data reflecting all complaints or error reports submitted to ShotSpotter that concern missed gunshots, mislocated gunshots, false alerts to non-gunshots,

ShotSpotter alerts for which corroboration of gunfire could not be found, or any other errors or potential errors with respect to ShotSpotter.

**RESPONSE:** The City objects to this Request on the grounds that it is overly broad in time because it is not limited by a time scope, and therefore is unduly burdensome, not proportional to the needs of the case, and the burden and expense of the proposed discovery outweighs any likely benefit.

42. All data showing the racial or ethnic demographics of the City of Chicago by census block, police beat, police district, police area, or other geographical unit, from January 1, 2010 to the present.

**RESPONSE:** The City objects to this Request as overbroad, vague, and ambiguous to the extent that the phrase "census block" is not defined in Plaintiffs' Requests. The City objects to this Request on the grounds that it is overly broad in time and scope and to the extent that it seeks information not relevant to any claims or defenses in this case, and is unduly burdensome, not proportional to the needs of the case, and because the burden and expense of the proposed discovery outweighs any likely benefit. Plaintiffs' *Monell* claims against the City do not involve any allegations regarding such information beginning in January 1, 2010. The City also objects to this Request to the extent that is seeks information outside of the possession, custody, and control of the City.

43. With respect to each database, spreadsheet, or similar data source from which Defendant discloses information in response to these Requests, please disclose the "data dictionary," key, legend, guide, manual, or similar documents that describe the data fields and information contained therein.

**RESPONSE:** Subject to and without waiver of any objections noted above, the City will produce or make available for inspection at a mutually agreeable place and time responsive, non-privileged documents, if any exist.

44. Body-worn camera footage for all investigatory stops that (1) have an event number or RD number that corresponds to a call-for-service for which there was an associated ShotSpotter alert; (2) list a time and location that is within 15 minutes and 500 feet of a ShotSpotter alert; or (3) mention "ShotSpotter" "Shot Spotter" "SpotShotter" "Spot Shotter" or "SST" anywhere in the investigatory stop report, including in the narrative or other free-text fields. Alternatively, body-worn camera footage for a sample of investigatory stops associated with ShotSpotter alerts. The sample will be specified by Plaintiffs (or, if possible, through means agreeable to Plaintiffs and Defendant) after obtaining disclosure of the datasets concerning investigatory stop reports, ShotSpotter alerts, and OEMC CAD/9-1-1 dispatch records that are requested in paragraphs 33, 34, and 37 above.

**RESPONSE:** The City objects to this Request on the grounds that a request for body worn camera footage for "all investigatory stops," regardless of district, CPD officer, or time period, is overly broad in time and scope and seeks information not relevant to any claims or defenses in this case, and is unduly burdensome, not proportional to the needs of the case, and because the burden and expense of the proposed discovery outweighs any likely benefit. This Request will necessarily include body worn camera footage for CPD matters unrelated to Plaintiffs' case.

45. For all police uses of force (or other incidents that required the completion of a Tactical Response Report) that occurred in the course of a police response to a ShotSpotter alert since January 1, 2017, please disclose the completed "Tactical Response Review – Investigation" form and "Tactical Response Report – Review" form associated with each such incident. Plaintiff anticipates being able to identify such incidents with particularity after obtaining disclosure of the datasets regarding ShotSpotter alerts, OEMC CAD/9-1-1 dispatch records, and tactical response reports that are requested in paragraphs 33, 36 and 37 above.

**RESPONSE:** The City objects to the term "police uses of force" as vague and ambiguous. The City objects to this Request on the grounds that a request "Tactical Response Report – Review" forms for all police responses to a ShotSpotter alert, regardless of district, CPD officer, or type of CPD matter, is overly broad in time and scope and seeks information not relevant to any claims or defenses in this case, and is unduly burdensome, not proportional to the needs of the case, and because the burden and expense of the proposed discovery outweighs any likely benefit.

46. All complaints filed with the City of Chicago, Chicago Police Department, or Civilian Office of Police Accountability that concern or mention the use of ShotSpotter, as well as the investigative file and disposition for each such complaint.

**RESPONSE:** The City objects to this Request on the grounds that it is overly broad in time and scope and seeks information not relevant to any claims or defenses in this case, and therefore is unduly burdensome, not proportional to the needs of the case, and because the burden and expense of the proposed discovery outweighs any likely benefit. This Request is overly broad in time because it is not limited by a time scope. The City also objects to the scope of this request to the extent is seeks all complaints and investigative files that "concern or mention" the use of ShotSpotter as covering matters not reasonably related to the claims in this case. The City further objects to production of all investigative files and dispositions as being unduly burdensome and time consuming.

**GENERAL REQUESTS**

47. All documents identified in your Rule 26(a)(1) disclosures.

**RESPONSE:** The City objects to reproducing any documents responsive to this Request that have already been produced in this litigation.

48. For the period January 1, 2017 to present, all Communications concerning ShotSpotter to/from all City employees listed in your Rule 26(a)(1) disclosures.

**RESPONSE:** The City objects to this Request on the grounds that it is overly broad in time and scope and to the extent that it seeks information not relevant to any claims or defenses in this case, and therefore is unduly burdensome, not proportional to the needs of the case, and the burden and expense of the proposed discovery outweighs any likely benefit. The City objects to this Request to the extent that it seeks documents and information protected by the deliberative

process privilege, attorney client privilege, and/or work doctrine. Subject to and without waiver of the foregoing, the City will discuss a reasonable ESI collection process with plaintiffs.

49. All documents or communications that you may rely on in support of your claims or defenses in this action, including solely for impeachment.

**RESPONSE:** The City objects to this Request as premature. Subject to and without waiver of the foregoing, the City will supplement its response to this Request in accordance with the Federal Rules of Civil Procedure, and any hearing or trial scheduling Order issued in this matter.

50. All documents or communications prepared by City of Chicago officials concerning the *Monell*, ICRA, injunctive, or putative class claims in this lawsuit and related allegations in this lawsuit.

**RESPONSE:** The City objects to this Request on the grounds that it seeks documents and information protected by the deliberative process privilege, attorney client privilege, and/or work doctrine.

51. All documents tendered to any member of the news media in reference to this case.

**RESPONSE:** The City objects to this Request on the grounds that it seeks information not relevant to any claims or defenses in this case, and therefore is unduly burdensome, not proportional to the needs of the case, and the burden and expense of the proposed discovery outweighs any likely benefit.

52. All demonstrative aids or summaries of evidence prepared for use in this matter by the City of Chicago or its employees, agents or attorneys.

**RESPONSE:** The City objects to this Request to the extent that it is premature at this this time. Subject to and without waiver of the foregoing, the City will supplement its response to this

Request in accordance with the Federal Rules of Civil Procedure, and any hearing or trial scheduling Order issued in this matter.

53. For any experts you disclose pursuant to Rule 26, produce (a) all documents examined or relied upon by the expert; (b) all reports or opinions prepared by the expert;(c) a curriculum vitae for the expert, and (d) and copies of all articles, reports, or professional papers published by the expert.

**RESPONSE:** The City objects to this Request as premature because it has not yet identified expert witnesses under Rule 26. Subject to and without waiver of the foregoing, the City will supplement its response to this Request in accordance with the Federal Rules of Civil Procedure, and any hearing or trial scheduling Order issued in this matter.

54. All documents obtained from non-parties to this action concerning ShotSpotter or the *Monell*, ICRA, injunctive, or putative class claims in this action, including but not limited to documents obtained by subpoena or FOIA request.

**RESPONSE:** The City objects to this Request on the grounds that it is overly broad in time and scope and to the extent that it seeks information not relevant to any claims or defenses in this case, and therefore is unduly burdensome, not proportional to the needs of the case, and the burden and expense of the proposed discovery outweighs any likely benefit. This Request is overly broad in time because it is not limited by a time scope. The City objects to this Request to the extent that it seeks documents and information protected by a common interest doctrine, joint defense privilege, or work product doctrine.

55. All documents, statements, or communications reflecting contacts or communications your attorneys or other agents, including anyone working at the direction of your attorneys, have had with any witnesses in this matter.

**RESPONSE:** The City objects to this Request on the grounds that it is overly broad in time and scope and to the extent that it seeks information not relevant to any claims or defenses in this

case, and therefore is unduly burdensome, not proportional to the needs of the case, and the burden and expense of the proposed discovery outweighs any likely benefit. This Request is overly broad in time because it is not limited by a time scope. The City objects to this Request to the extent that it seeks documents and information protected by the attorney client privilege and/or work product doctrine.

56. Any and all communications by Defendant's attorneys or their agents with non-parties that concern the *Monell*, ICRA, injunctive, or putative class claims alleged in the Second Amended Complaint.

**RESPONSE:** The City objects to this Request on the grounds that it is overly broad in time and scope and to the extent that it seeks information not relevant to any claims or defenses in this case, and therefore is unduly burdensome, not proportional to the needs of the case, and the burden and expense of the proposed discovery outweighs any likely benefit. This Request is overly broad in time because it is not limited by a time scope. The City objects to this Request to the extent that it seeks documents protected by the common interest doctrine. The City further objects to the extent that this Request seeks discovery upon discovery.

57. All documents referred to, identified, relied upon, or related to any of your answers to any of Plaintiff's Interrogatories.

**RESPONSE:** The City objects to this Request to the extent that it seeks documents and information protected by the deliberative process privilege, attorney client privilege, and/or work product doctrine. Subject to and without waiver of the foregoing, the City will produce or make available for inspection at a mutually agreeable place and time responsive, non-privileged documents referenced in the City's answers to Plaintiffs' Interrogatories.

Dated: December 15, 2023

Respectfully submitted,

**CITY OF CHICAGO**

By: */s/Michael P. Sheehan*
One of Its Attorneys

Michael P. Sheehan
Allan T. Slagel
Barton O'Brien
Ioana M. Guset
Yeoeun C. Yoon
TAFT STETTINIUS AND HOLLISTER LLP
111 East Wacker Drive
Suite 2600
Chicago, Illinois 60601
Telephone: (312) 527-4000
Email: msheehan@taftlaw.com
aslagel@taftlaw.com
bobrien@taftlaw.com
iguset@taftlaw.com
yyoon@taftlaw.com

130060827v4

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing ***City of Chicago's Objections to Plaintiffs Lucy Parsons Labs, Ortiz, and Scruggs' Requests for Production***, was served on all counsel of record by electronic mail on December 15, 2023.

*/s/Yeoeun Yoon*